UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| CHRISTOPHER GEORGE PABLE, ) ) Plaintiff, ) ) v. ) ) CHICAGO TRANSIT AUTHORITY ) and CLEVER DEVICES LTD., ) ) Defendants. ) | Case No. 1:19-cv-7868 Judge Elaine E. Bucklo Magistrate Judge Sidney I. Schenkier |

**JOINT INITIAL PLANNING REPORT**

Counsel for all parties having met as required by Rule 26(f) and having conducted a planning meeting with respect to the issues listed in the Court's standing order for cases in the Mandatory Initial Discovery Pilot Project, they hereby submit the following report:

**1. The Nature of the Case**

    **A. Attorneys of Record**

Timothy A. Duffy
Law Office of Timothy A. Duffy, P.C.
290 Shadowood Ln
Northfield, IL 60093
847-530-4920
tduffy@tduffylaw.com

*Lead Trial Attorney for Plaintiff Christopher George Pable*

John F. Kennedy
Elizabeth E. Babbitt
Allison E. Czerniak
Nicollette L. Khuans
Taft Stettinius & Hollister LLP
111 E. Wacker Drive
Suite 2800
Chicago, IL 60601
312-527-4000
ebabbitt@taftlaw.com
jkennedy@taftlaw.com
aczerniak@taftlaw.com
nkhuans@taftlaw.com

*Trial Counsel for Defendant Chicago Transit Authority*

Steven W. Jados
SmithAmundsen LLC
3815 E. Main Street, Suite A-1
St. Charles, IL 60174
(630)587-7934
sjados@salawus.com

*Lead Trial Attorney for Defendant Clever Devices, Ltd.*

**B.     Basis for Federal Jurisdiction**

Federal jurisdiction exists pursuant to 28 U.S.C. § 1331, as Plaintiff's claim arises under 6 U.S.C. § 1142(c)(7), the Public Transportation Employee Protections provision of the National Transit Systems Security Act ("NTSSA").

**C.     Nature of the Claims/Counterclaims**

**Plaintiff alleges the following:**

In the course of his work for the Chicago Transit Authority (the "CTA"), Mr. Pable discovered a security vulnerability in the "BusTime" system developed by Clever Devices and used by the CTA. The BusTime system provides communications between the CTA and its buses as well as providing information to the public regarding bus service. Mr. Pable discovered that a "Skeleton Key" was being used by the BusTime system over unsecured networks. This Skeleton

Key could easily be exploited to gain unauthorized access to the BusTime system, which would allow the user to disrupt the system and issue unauthorized messages and alerts to the public.

Mr. Pable reported this vulnerability to his supervisor, Mr. Haynes. Mr. Haynes decided to conduct a test of the vulnerability to determine if the same vulnerability existed in other transit agencies' BusTime systems by accessing the Dayton, Ohio BusTime system. The Skeleton Key did allow access to the Dayton system. Mr. Haynes reported this issue to Clever Devices, and, in response, Clever Devices alleged that Mr. Pable and Mr. Haynes had violated the terms of the BusTime licensing agreement between the CTA and Clever Devices and (unspecified) state and federal laws by using the Skeleton Key to access the Dayton system. After receiving Clever Devices's allegations, the CTA terminated Mr. Pable and Mr. Haynes.

Clever Device's allegations against and the CTA's termination of Mr. Pable violated the "whistleblower" provision of the National Transit Systems Security Act ("NTSSA"). 6 U.S.C. §1142 Mr. Pable's reporting of the Skeleton Key was a protected activity under 6 U.S.C. § 1142(b), and his report of this vulnerability was a contributing factor in the adverse actions taken against him by Clever Devices and the CTA, which would not have occurred had he not reported the security vulnerability. Clever Devices and the CTA are therefore liable to Mr. Pable for damages as provided for in 6 U.S.C. § 1142(d).

**In response to Plaintiff's allegations, the CTA states as follows:**

The CTA has raised the following affirmative defenses to Plaintiff's claim:

1. Plaintiff's claim fails under 6 U.S.C. §1142(b)(1)(A) because the Skeleton Key in the BusTime Application was not a hazardous safety or security condition.

2. Plaintiff did not engage in protected activity as defined under the NTSSA because he did not report the existence of the Skeleton Key in the BusTime application. Instead, Plaintiff

shared the Skeleton Key with Mr. Haynes and then acted in concert with Mr. Haynes in using the Skeleton Key to hack into the Dayton Ohio BusTime system.

3. Even if the Skeleton Key constituted a hazardous safety or security condition (it did not), and Plaintiff properly reported this condition (he did not), this conduct was not a contributing factor in Plaintiff's resignation in lieu of termination from the CTA. Rather, Plaintiff was asked to resign in lieu of termination due to his poor work performance, poor judgment and poor communication displayed when he acted in concert with Mr. Haynes to use the Skeleton Key to access the Dayton Ohio BusTime system, did not immediately alert CTA upper management of the existence of the Skeleton Key or the use of the Skeleton Key on another transit agency's system, and then failed to fully disclose the details of his conduct when the CTA was made aware of these actions by Clever Devices.

4. In light of the forgoing facts, the CTA would have taken the same personnel action against Plaintiff in the absence of Plaintiff's alleged reporting of the existence of the Skeleton Key in the BusTime application.

5. The CTA is immune from liability for punitive damages under the Illinois Tort Immunity Act, 745 ILCS 10/2-102.

6. To the extent the CTA is found liable, any recovery must be reduced to the extent Plaintiff has failed to properly mitigate his damages.

The CTA is preparing to file an Amended Answer, Affirmative Defenses and Counterclaim, which will allege the following additional affirmative defenses:

7. Plaintiff's claim is barred, in whole or in part, by the doctrine of unclean hands/*in pari delicto* due to Plaintiff's own misconduct during the course of his employment with the CTA, including the following representative acts and omissions of Plaintiff, all of which violated CTA

rules, policies, and procedures governing CTA employees and/or Illinois law: (i) Plaintiff's failure to timely report the discovery of the Skeleton Key to the appropriate CTA personnel; (ii) Plaintiff's unauthorized use of the Skeleton Key on Dayton RTA's BusTime system; and (iii) Plaintiff's violation of the Illinois Eavesdropping Act, 720 ILCS 5/14, *et seq.*, wherein Plaintiff unlawfully recorded the November 8, 2018 meeting by and between himself and two other CTA personnel during which he resigned in lieu of termination.

8. To the extent the CTA is found liable, any recovery by Plaintiff must be limited by the doctrine of after-acquired evidence. Specifically, the following evidence acquired by the CTA during its investigation into Plaintiff's conduct relating to his discovery and unauthorized use of the Skeleton Key would have resulted in the same personnel action against Plaintiff: (i) that Plaintiff violated CTA rules, policies, and procedures when he encrypted the primary drive and installed and encrypted a secondary drive on his CTA computer without CTA's knowledge or authorization such that the CTA remains unable to access the contents of the secondary drive; and (ii) that Plaintiff violated CTA rules, policies, and procedures governing CTA employees and Illinois law when he unlawfully recorded the November 8, 2018 meeting by and between himself and two other CTA personnel, which constitutes a felony pursuant to the Illinois Eavesdropping Act, 720 ILCS 5/14, *et seq.*

The CTA also anticipates asserting a Counterclaim against Plaintiff under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.* (the "CFAA"). Specifically, the CTA will allege that Plaintiff exceeded the scope of his authority and/or acted without authorization in: (i) installing a Secondary Drive on his CTA computer (the "Computer") without the CTA's knowledge or consent; (ii) encrypting the Primary Drive and/or Secondary Drive on the Computer without the CTA's knowledge or consent; and (iii) purposefully deleting, or causing the deletion of, the

decryption key for the Secondary Drive of the Computer upon his departure from the CTA in order to permanently prevent the CTA from accessing the contents of this encrypted drive. The CTA suffered damages in excess of $5,000 as a result of Plaintiff's actions as required under the CFAA, including expenses incurred by the CTA in investigating Plaintiff's encryption efforts and in attempting to restore the CTA's access to its data stored on the Computer.

**In response to Plaintiff's allegations, Clever Devices states as follows:**

In addition to the issues raised by the CTA, above, Clever Devices asserts that it played no role in the CTA's decision to terminate Plaintiff's employment, so there is no basis for any finding of liability against Clever Devices in this lawsuit.

**2.      Pending Motions and Case Plan**

    **A.      Pending motions**

Both defendants filed timely answers to Plaintiff's complaint, and no motions to dismiss were filed. The Court has entered the parties' proposed agreed Confidentiality Order.

    **B.      MIDP Program Compliance**

All parties have read the district court's standing order for the MIDP program. Counsel for the parties have conducted several telephone conferences to discuss issues related to the MIDP program and their obligations under Rule 26(f), including this Joint Initial Planning Report.

All parties served timely Mandatory Initial Disclosures and made available certain documents and other information in connection therewith. Counsel for the parties have agreed to and are undertaking the collection and preparation for production of additional hard-copy documents and ESI, including electronic documents and e-mails from the persons identified in the parties' mandatory initial discovery responses using a time frame of June 1, 2018 through December 31, 2018. Potential issues with respect to ESI are discussed below.

At this time there are no discovery disputes ripe for presentation to the Court.

The CTA identified the following deficiencies with Plaintiff's Mandatory Initial Disclosures, including: (i) Plaintiff failed to produce any text messages or other communications (aside from emails), despite evidence that he used text messaging and other means to communicate regarding the subject matter of this lawsuit; (ii) Plaintiff's email production from his personal Gmail is deficient as it contains incomplete emails threads, emails from Mr. Haynes's email inbox with no evidence as to how Plaintiff received them, and almost no emails from Plaintiff, himself; and (iii) Plaintiff failed to produce emails from his personal Gmail account in native form, as requested by the CTA, with the underlying metadata intact. Based on the parties' discussions to date, the CTA expects these issues will be rectified in Plaintiff's supplemental MIDP ESI production. Specifically, with respect to his personal Gmail account, Plaintiff has agreed to conduct additional searches for relevant messages using search terms agreed upon by the parties and provide hit counts for such searches. Plaintiff has also agreed to a supplemental production of responsive emails and to produce his emails in native format. If the above-identified deficiencies are not corrected, motion practice may become necessary.

Defendants will produce ESI identified in their MIDP Initial Disclosures by June 29, 2020, in accordance with the MIDP standing order. Accordingly, Plaintiff reserves its right to raise any issues with respect to Defendants' compliance with respect to their MIDP productions following receipt and review thereof.

### C. Proposed Discovery Plan

- MIDP ESI produced by **June 29, 2020**
- Additional written discovery, if necessary, may commence **July 1, 2020**
- Supplemental MIDP ESI produced by **August 1, 2020**

- Defendants to file amended answer(s) or counterclaim(s) by **August 1, 2020**
- Written fact discovery cutoff **September 30, 2020**
- Fact witness depositions **October 1, 2020 – February 1, 2021**
- *If experts are needed*:
  - Expert disclosures by **March 1, 2021**
  - Expert discovery complete by **April 1, 2021**
  - Responsive expert disclosures by **May 1, 2021**
  - Responsive expert discovery complete by **June 1, 2021**
  - Final supplementation of all discovery responses by **July 1, 2021**
  - Dispositive Motions filed by **August 1, 2021**, with responses and replies due 30 and 15 days thereafter, respectively
  - Pretrial submissions complete by **October 1, 2021**
- If experts are not required:
  - Final supplementation of all discovery responses by March 1, 2021
  - Dispositive Motions filed by April 1, 2021, with responses and replies due 30 and 15 days thereafter, respectively
  - Pretrial submissions complete by June 1, 2021

**D.     Anticipated Scope of ESI**

<u>Generally.</u>  The parties have agreed to work toward an agreement on search terms to be applied to the computer systems and databases accessed by the identified individuals in the course of their work for the relevant time period, including their email accounts.

<u>Additional ESI in the possession or control of Plaintiff.</u>  Plaintiff no longer has access to any CTA systems, but has agreed to a forensic search his personal cell phone and personal e-mail

(using the date restrictions and search terms proposed by defense counsel) and produce the documents, along with any data or "native files" corresponding thereto to the extent such exists.

<u>Additional ESI in the possession or control of defendants or their employees</u>. Plaintiff is not seeking the wholesale collection and searching of any of the defendants' employees' personal cell phones, computers, or other devices. Plaintiff expects, however, that defendants' employees will be asked if any relevant information exists on such devices and, if so, that information will be included within the scope of defendants' ESI collections and productions.

**E. Trial**

Plaintiff has demanded a jury trial. The parties currently anticipate that a trial will take 5-7 days. As outline above, the earliest possible date the case will be ready for trial is June, 2021 (without experts, but October 1, 2021 with experts).

**3. Consent to Proceed Before a Magistrate Judge**

The parties do no unanimously consent to proceed before a Magistrate Judge.

**4. Status of Settlement Discussions**

The parties have not conducted any settlement discussions. The parties do not request a settlement conference.

June 18, 2020 Respectfully submitted,

/s/ Timothy A. Duffy
Timothy A. Duffy (ARDC #6224836)
Law Office of Timothy A. Duffy, P.C.
290 Shadowood Ln
Northfield, IL 60093
847-530-4920
tduffy@tduffylaw.com

*Attorney for Plaintiff*
*Christopher George Pable*

/s/   Elizabeth E. Babbitt

John F. Kennedy
Elizabeth E. Babbitt
Allison E. Czerniak
Nicollette L. Khuans
Taft Stettinius & Hollister LLP
111 E. Wacker Drive
Suite 2800
Chicago, IL 60601
312-527-4000
ebabbitt@taftlaw.com
jkennedy@taftlaw.com
aczerniak@taftlaw.com
nkhuans@taftlaw.com

*Attorneys for Defendant Chicago Transit Authority*

/s/   Steven W. Jados

Steven W. Jados
SmithAmundsen LLC
3815 E. Main Street, Suite A-1
St. Charles, IL 60174
(630)587-7934
sjados@salawus.com

*Attorney for Defendant Clever Devices, Ltd.*