UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| CHRISTOPHER GEORGE PABLE, ) ) Plaintiff, ) ) v. ) ) CHICAGO TRANSIT AUTHORITY ) and CLEVER DEVICES LTD., ) ) Defendants. ) _____) ) CHICAGO TRANSIT AUTHORITY, ) ) Counter-Plaintiff, ) ) v. ) ) CHRISTOPHER GEORGE PABLE, ) ) Counter-Defendant. ) | Case No. 1:19-cv-7868<br><br>Judge Elaine E. Bucklo<br><br>Magistrate Judge Sidney I. Schenkier |

**PABEL'S ANSWER TO CHICAGO TRANSIT AUTHORITY'S COUNTERCLAIM**

Counter-Defendant Christopher George Pable answers Counter-Plaintiff the Chicago Transit Authority's Counterclaim as follows:

**INTRODUCTION**

1. This Counterclaim relates to the same transactions or occurrences that are the subject matter of Complaint of Pable, as it may be amended or superseded from time to time (the "Complaint"). (Dkt. No. 1).

**Answer to Paragraph No. 1**

Admitted.

2. The CTA has filed an Answer and Affirmative Defenses denying all substantive allegations of its purported violation of the public transportation protections provision, 6 U.S.C. 1142, of the National Transit Systems Security Act ("NTSSA") as set forth in the Complaint. (Dkt. o. 8).

**Answer to Paragraph No. 2**

Admitted.

### PARTIES, JURISDICTION, AND VENUE

3. The CTA is an independent governmental agency established by the State of Illinois under the Metropolitan Transit Authority Act, 70 ILCS 3605 et seq., and the sole operator of the nation's second largest public transportation system, providing transit services to the City of Chicago and 35 surrounding suburbs. The CTA is headquartered at 567 West Lake Street, Chicago, Illinois 60661.

**Answer to Paragraph No. 3**

Admitted.

4. Pable was employed by the CTA as a Programmer/Analyst III from May 7, 2012 through November 8, 2018. Upon information and belief, Pable is a citizen of Illinois and resides at 5306 West Hanson Avenue in Chicago, Illinois 60639.

**Answer to Paragraph No. 4**

Admitted.

5. Subject matter jurisdiction in this Court is founded upon federal question jurisdiction under 28 U.S.C. § 1331 because the CTA brings this action for relief pursuant to the CFAA.

**Answer to Paragraph No. 5**

Admitted.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the wrongful acts complained of herein arise out of, and are related to, the acts that Pable has committed within this District.

**Answer to Paragraph No. 6**

Admitted.

## FACTS RELEVANT TO ALL COUNTS

7. During the course of his employment, the CTA provided Pable with access to a CTA computer with internet connectivity for Pable's use in performing the duties and responsibilities associated with his role as a CTA Programmer/Analyst III (the "Computer").

**Answer to Paragraph No. 7**

Admitted.

8. The Computer as it was initially provided to Pable was equipped with one (1) internal hard drive (the "Primary Drive").

**Answer to Paragraph No. 8**

Admitted.

9. During the course of his employment with the CTA, Pable was at all times required to comply with CTA rules, regulations, and policies applicable to CTA employees, including those rules, regulations, and policies governing CTA employees' technology usage.

**Answer to Paragraph No. 9**

Pable admits that during the course of his employment with the CTA, he was subject to the requirements of various CTA rules, regulations, and policies applicable to CTA employees, including those rules, regulations, and policies governing CTA employees' technology usage. Pable denies that he was at all times required to comply with such policies because, as is common with such policies, there were occasions where, because of a conflict between policies, a conflict between a policy and a directive from a superior, a conflict between a policy and the requirements of his job and/or the fulfillment of his responsibilities, and/or a conflict between a policy and another law, regulation, and/or principle, he was not required to comply with a particular policy.

10. In his role as a CTA Programmer/Analyst III, Pable worked on certain information technology systems utilized by the CTA, including the "BusTime" mobile application developed by Clever Devices Ltd. ("Clever Devices").

**Answer to Paragraph No. 10**

Admitted.

11. During the course of his work within the BusTime application, Pable discovered a "Skeleton Key" that allowed the user to access and manipulate the BusTime system without the knowledge or authorization of Clever Devices or the CTA.

**Answer to Paragraph No. 11**

Admitted.

12. Pable failed or otherwise refused to promptly disclose his discovery of the Skeleton Key to appropriate CTA personnel, in violation of CTA rules, regulations, and policies.

**Answer to Paragraph No. 12**

Denied.

13. On or about August 17, 2018, Pable deliberately used the Skeleton Key to access the Dayton RTA BusTime application (the "Dayton Test") without the knowledge or authorization of Clever Devices, CTA, or Dayton RTA.

**Answer to Paragraph No. 13**

Denied.

14. Pable's use of the Skeleton Key to conduct the Dayton Test violated CTA rules, regulations, and policies.

**Answer to Paragraph No. 14**

Denied.

15. Pable failed or otherwise refused to promptly disclose the Dayton Test to appropriate CTA personnel, in violation of CTA rules, regulations, and policies.

**Answer to Paragraph No. 15**

Denied.

16. The CTA conducted an investigation of Pable's acts and omissions pertaining to the discovery of the Skeleton Key and the Dayton Test (the "CTA Investigation").

**Answer to Paragraph No. 16**

Admitted.

17. After the CTA concluded the CTA Investigation, Pable resigned from the CTA in lieu of termination on November 8, 2018 during a meeting by and between Pable and two (2) other CTA personnel (the "Meeting").

**Answer to Paragraph No. 17**

Pable denies there were only two CTA personnel in the Meeting. Pable admits the remaining allegations of this paragraph.

18. At that time, Pable secretly recorded all or part of the Meeting without the knowledge or consent of the two (2) other CTA personnel that participated in the Meeting.

**Answer to Paragraph No. 18**

Pable denies there were only two CTA personnel in the Meeting. Pable admits the remaining allegations of this paragraph.

19. Through the CTA Investigation, the CTA learned that, during the course of his employment, Pable impermissibly encrypted the Primary Drive of the CTA Computer.

**Answer to Paragraph No. 19**

Pable admits that he encrypted the Primary Drive of the CTA Computer. Pable denies that he did so impermissibly. Pable lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

20. Pable encrypted the Primary Drive without the CTA's knowledge or authorization, in violation of CTA rules, regulations, and policies.

**Answer to Paragraph No. 20**

Denied.

21. Ultimately, the CTA was able to decrypt the Primary Drive on the Computer.

**Answer to Paragraph No. 21**

Pable lacks knowledge or information sufficient to form a belief about the truth of this allegation.

22. Upon decrypting the Primary Drive on the Computer, the CTA learned that, during the course of his employment, Pable also impermissibly partitioned the Primary Drive and/or installed a secondary drive on the Computer (the "Secondary Drive"). Pable also encrypted the Secondary Drive by using Microsoft Bitlocker, an encryption program.

**Answer to Paragraph No. 22**

Pable admits that, during the course of his employment, he encrypted the Primary Drive as defined above in Paragraph 8 using Microsoft Bitlocker, an encryption program. Pable denies that he did so impermissibly. Pable also denies that he partitioned the Primary Drive or installed a secondary drive. Pable lacks knowledge or information sufficient to form a belief as to what the CTA learned, and denied the remaining allegations of this paragraph.

23. Pable installed and encrypted the Secondary Drive without the CTA's knowledge or authorization, in violation of CTA rules, regulations, and policies.

**Answer to Paragraph No. 23**

Denied.

24. Upon information and belief, Pable implemented his unauthorized encryption of the Secondary Drive through an encryption mechanism designed to automatically delete the information needed to decrypt the Secondary Drive at Pable's command and/or upon his departure from the CTA.

**Answer to Paragraph No. 24**

Denied.

25. Pable failed or otherwise refused to provide the CTA with the information needed to decrypt and access the Secondary Drive.

**Answer to Paragraph No. 25**

Pable denies that he refused to provide the CTA with any information regarding the decryption of or access to any partition on the Computer. Pable admits he failed to provide such information only to the extent that such information was rendered inaccessible to him by the actions of the CTA. Pable denies all remaining allegations of this paragraph.

26. The CTA was unable to decrypt the Secondary Drive and was thus unable to access and investigate the contents of its own Computer.

**Answer to Paragraph No. 26**

Pable lacks knowledge or information sufficient to form a belief about the truth of the allegations of this Paragraph.

27. As a result of the CTA's inability to unlock Pable's encryption of the Secondary Drive and access the contents of the Secondary Drive, the CTA has been forced to retain the services of a third-party expert to investigate, assess, and decrypt the Secondary Drive.

**Answer to Paragraph No. 27**

Pable denies that the CTA has been forced to do anything. Pable lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

28. Upon information and belief, Pable used the Secondary Drive to engage in certain activities that violated CTA rules, regulations, and policies without the CTA's knowledge or authorization. The CTA's investigation as to the contents of the Secondary Drive is ongoing.

**Answer to Paragraph No. 28**

Denied.

29. After Pable filed his Complaint against the CTA in this matter, the CTA learned through the course of discovery that Pable unlawfully recorded the Meeting.

**Answer to Paragraph No. 29**

Pable admits that the CTA learned that he recorded the Meeting after Pable's Complaint was filed and in the course of discovery. Pable denies that he unlawfully recorded the Meeting.

30. Pable secretly recorded the Meeting without the CTA's knowledge or authorization, in violation of CTA rules, regulations, and policies.

**Answer to Paragraph No. 30**

Denied.

31. Pable's secret recording of the Meeting further constitutes a felony pursuant to the Illinois Eavesdropping Act, 720 ILCS 5/14, et seq.

**Answer to Paragraph No. 31**

Denied.

## COUNT I
### Violation of the CFAA

32. The CTA restates and realleges Paragraphs 1 thorough 31 as if fully restated herein.

**Answer to Paragraph No. 32**

Pable incorporates his answers to Paragraphs 1 through 31 as if fully restated herein.

33. The Computer was used in interstate commerce and is a "protected computer" within the meaning of the CFAA. 18 U.S.C. § 1030(e)(2).

**Answer to Paragraph No. 33**

Denied.

34. Without authorization and/or by exceeding authorized access, Pable intentionally accessed the Computer and damaged and caused loss to it, including by: (i) installing and/or partitioning the unauthorized Secondary Drive on the Computer; (ii) intentionally utilizing an unauthorized encryption mechanism designed to automatically delete the information needed to decrypt the Secondary Drive upon his departure in order to prevent the CTA from accessing its contents; (iii) intentionally transmitting a command or code into the unauthorized encryption mechanism that Pable knew would cause the information needed to decrypt the Secondary Drive to be deleted in order to prevent the CTA from accessing its contents; and/or (iv) refusing to provide the CTA with the information required to decrypt the Secondary Drive in order to prevent the CTA from accessing its contents.

**Answer to Paragraph No. 34**

Denied.

35. By engaging in the foregoing actions, Pable intentionally or recklessly caused – and continues to cause – damage and loss to the CTA in excess of $5,000.00. Specifically, Pable's conduct impaired the integrity of the Computer such that the CTA was prevented from fully accessing its contents. As a consequence, the CTA has been forced to expend resources in excess of $5,000.00 to investigate Pable's misconduct, decrypt the Secondary Drive, and recoup the CTA's property, including through bringing this Counterclaim.

**Answer to Paragraph No. 35**

Denied.

WHEREFORE, Counter-Plaintiff, the CTA, respectfully prays that this Court enter an Order finding and declaring the following relief:

A. A judgment for compensatory damages against Christopher Pable pursuant to 18 U.S.C. § 1030(g) in an amount to be determined at trial, including CTA's attorney's fees and costs; and

B. Such other and further relief as the Court deems just and proper.

**Answer to Prayer for Relief**

Pable denies that the CTA is entitled to any relief whatsoever.

## AFFIRMATIVE DEFENSES

Pable asserts the following affirmative defenses to the CTA's counterclaim:

1. **Failure to State a Claim under the CFAA.** The CFAA should not be read to render encompass violations of a computer use policy by an employee otherwise given authorized access to a computer, particularly where, as here, the CTA has failed to plead either: (a) any basis for its speculation that the unrecovered data somehow reflects nefarious conduct by Pable, or (b) any basis for its speculation that Pable somehow mysteriously caused data on the Computer to be rendered inaccessible after his access to the Computer was terminated by the CTA.

2. **Contributory Negligence, Intervening Cause, Estoppel, and Unclean Hands.** Any inability or other difficulties associated with accessing data on Pable's computer is the direct result of the CTA's conduct, not Pable's. Specifically, the CTA's unilateral decision, enacted with no notice or warning to Pable, to disable access to certain data stored on Pable's phone, eliminated the ability to access the encrypted data on the Computer in the normal and customary manner.

3. **License, Waiver, and Laches.** At all times, the data security measures Pable took with respect to the Computer were within the scope of his duties and authority as an employee of the CTA and were undertaken in the interests of the CTA. Other CTA personnel, including Mr.

Pable's supervisors, knew of these measures and approved and/or never disapproved of them. The CTA's allegations were all generated after the CTA had already (erroneously) concluded Pable had engaged in misconduct and that he should be terminated as a result of his conduct related to the Skeleton Key, including his reporting thereof, in a after-the-fact attempt to justify the adverse actions taken against him.

   4.  **Impermissible Attempt to Avoid the "American Rule."** The CTA's counterclaim is nothing more than an attempt to impermissibly shift the usual and customary costs incurred in the course of investigating and defending litigation to Pable.

August 24, 2020                 Respectfully submitted,

                      /s/ Timothy A. Duffy
                      Timothy A. Duffy (ARDC #6224836)
                      Law Office of Timothy A. Duffy, P.C.
                      290 Shadowood Ln
                      Northfield, IL 60093
                      847-530-4920
                      tduffy@tduffylaw.com

                      *Attorney for Plaintiff*
                      *Christopher George Pable*