UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| CHRISTOPHER GEORGE PABLE,<br><br>Plaintiff,<br><br>v.<br><br>CHICAGO TRANSIT AUTHORITY<br>and CLEVER DEVICES LTD.,<br><br>Defendants.<br><br>CHICAGO TRANSIT AUTHORITY,<br><br>Counter-Plaintiff,<br><br>v.<br><br>CHRISTOPHER GEORGE PABLE,<br><br>Counter-Defendant. | Case No. 1:19-cv-7868<br><br>Judge Elaine E. Bucklo |

**JOINT STATUS REPORT**

In accordance with the Court's Minute Order of June 23, 2020, counsel for the parties submit the following status report.

**1.      Recent Activity**

Since the parties' last report:

a.      The Parties exchanged their initial disclosures pursuant to the Mandatory Initial Discovery Pilot Program in March 2020.

b. The CTA and Clever Devices produced the ESI identified in their MIDP initial disclosures on June 29, 2020.

c. Mr. Pable made an ESI production on July 30, 2020. The CTA believes Pable's production was deficient. Pable disagrees.

d. On August 3, 2020, the CTA filed a Counterclaim and Additional Affirmative Defense. Mr. Pable filed an Answer to the CTA's counterclaim on August 24, 2020.

e. On August 12, 2020, Clever Devices served additional written discovery on Mr. Pable, to which Mr. Pable served responses on September 11, 2020.

f. On August 28, 2020, Mr. Pable served additional written discovery on the CTA, to which responses are due September 29, 2020.

g. On September 15, 2020, the CTA served additional written discovery on Mr. Pable. As discussed below, Pable maintains the requests were not timely propounded on the grounds the written discovery cut-off date of September 30, 2020, which renders the CTA's written discovery to Mr. Pable untimely. The CTA disagrees.

h. The CTA has proposed an agreed motion to extend written discovery for 60 days. Clever Devices does not oppose the CTA's request. Mr. Pable opposes the request.

**2.** **The CTA's Counterclaim**

As the CTA's counterclaim against Mr. Pable had not been filed as of the Parties' Initial Status Report, the Parties provide the following summaries of the counterclaim and defenses to it.

### A. The CTA's Counterclaim

The CTA filed a counterclaim against Plaintiff on August 3, 2020, pursuant to the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq*. (the "CFAA"). *See* Dkt. 32, CTA's Counterclaim. The counterclaim relates to the same transactions or occurrences that are the subject matter of Plaintiff's complaint and asserts that Plaintiff acted without CTA's authorization and/or exceeded CTA's authorization in taking certain actions on the CTA computer he used during the course of his employment, which constitutes a protected computer within the meaning of the CFAA. Specifically, the counterclaim alleges that Plaintiff damaged and caused loss to the CTA computer he used during the course of his employment in excess of $5,000.00 by violating certain CTA rules, policies, and procedures, including by: (i) installing and/or partitioning an unauthorized secondary drive on the CTA computer; (ii) intentionally utilizing an unauthorized encryption mechanism designed to automatically delete the information needed to decrypt the unauthorized secondary drive upon his departure in order to prevent the CTA from accessing its contents; (iii) intentionally transmitting a command or code into the unauthorized encryption mechanism that Plaintiff knew would cause the information needed to decrypt the secondary drive to be deleted in order to prevent the CTA from accessing its contents; and/or (iv) refusing to provide the CTA with the information required to decrypt the secondary drive in order to prevent the CTA from accessing its contents. The CTA's investigation into Plaintiff's alleged unauthorized computer activities is ongoing and the CTA reserves its rights against Plaintiff, accordingly.

### B. Mr. Pable's Answer and Defenses to the CTA's Counterclaim

The CTA's counterclaim is factually inaccurate. (Among other things, Mr. Pable did not partition the hard drive on his computer, did not improperly encrypt that hard drive, and certainly did not do so for any improper purpose.) At all times, Mr. Pable used and managed his CTA computer within the scope of his employment, in accordance with the policies and practices of the

3

CTA, and in his best judgment for the benefit of the CTA. Such conduct does not constitute a violation of the Computer Fraud and Abuse Act. Moreover, the difficulties the CTA claims to have had in accessing Mr. Pable's computer were entirely of its own making as a result of its decision, without any warning to Mr. Pable, to disable his access to information on his mobile phone that would have allowed him to access the encrypted information on the computer. And the CTA has not claimed (and cannot claim) that its inability to access a portion of Mr. Pable's computer has resulted in any consequences other than to give rise to the CTA's unfounded suspicion that the encrypted portion of his hard drive contains something nefarious.

**3.** **Case Schedule**

In their Initial Status Report, the parties proposed a schedule that, among other things, provided for a written discovery cutoff of September 30, 2020, fact depositions to take place from October 1, 2020 – February 1, 2021, and, assuming experts were needed, for dispositive motions to be filed by August 1, 2021.

The Court's June 23, 2020 Minute Order, however, stated that "Fact Discovery" be closed as of September 30, 2020 and that dispositive motions be filed by August 1, 2021. The Parties respectfully submit that the Court intended to order "Written Discovery" close by September 30th and that "Fact Discovery" close by February 1, 2021 – as originally proposed by the Parties – and they have conducted themselves according to that understanding in the anticipation of clarifying this issue with the Court via this Joint Status Report.

Assuming the current schedule calls for written discovery to close on September 30, 2020 and for fact discovery to close on February 1, 2020, the parties disagree as to whether that schedule should be maintained or modified.

4

### A. Mr. Pable's Position

Mr. Pable believes that the current schedule (clarified as noted above) should stand. All parties completed their initial document productions well in advance of the September 30th deadline, Clever Devices has served and Mr. Pable has responded to, additional document requests and interrogatories, and Mr. Pable has served additional document requests (relevant to the CTA's counterclaim) on the CTA to which responses are due prior to September 30th. The parties have yet to exchange their privilege logs, but Mr. Pable has proposed they do so prior to September 30th. While there is always the chance that an issue will arise in depositions that will necessitate that some additional documents be provided, the parties should be ready to proceed with fact depositions.

As noted above, the CTA served document requests and interrogatories on Mr. Pable on September 15, 2020, which Mr. Pable considers untimely under the current schedule as they were not served at least 30 days prior to the close of written discovery. *See*, *e.g.*, *Thomas v. Pacificorp*, 324 F.3d 1176, 1179 (10th Cir. 2003) ("requests must be served at least thirty days prior to a completion of discovery deadline"). There was nothing that prevented the CTA from serving this discovery earlier; no new information was provided by any party that could arguably justify their untimely issuance, nor did the CTA request any consent to or seek and extension of the deadline prior to serving these requests. And even if there were some justification for requiring Mr. Pable to respond to this discovery, that is no reason to delay the entire case for two months.

In support of its request for an extension, the CTA alleges it needs to address deficiencies in Mr. Pable's document productions, but the CTA has not raised any such deficiencies with Mr. Pable since his last document production on July 30, 2020. The CTA also states that additional time is needed in order to finish its investigation of Mr. Pable's hard drive and to serve third-party subpoenas and written discovery on Clever Devices. The CTA has been investigating Mr. Pable's

5

hard drive since October of 2018, and has identified no information that could have led it to identify previously unknown third parties only in the last two months. All of the discovery the CTA claims it needs additional time to complete could have been started months ago.

Mr. Pable offered to agree the CTA could take additional time to complete its productions beyond the September 30, 2020 deadline if needed, but does not agree a general extension of written discovery is necessary or appropriate. Mr. Pable also has no objection to this issue being resolved by the Court via the upcoming status date (as opposed to the CTA filing a motion, which will likely only delay resolution of the issue).

### B. The CTA's Position

Plaintiff's position unfairly prejudices the CTA. The CTA requires additional time to complete written discovery and has met and conferred with counsel for Plaintiff and Clever Devices about filing an agreed motion for a 60-day extension of the September 30, 2020 written discovery deadline originally proposed by the Parties. This additional time is required because the CTA has encountered difficulties and delays in accessing the materials on CTA's computer. This is because: (1) Plaintiff left his CTA computer partially inaccessible with an encrypted hard drive that only Plaintiff controlled; (2) Plaintiff refused to provide the CTA with the decryption key to open and access the hard drive; (3) Plaintiff blamed the CTA for his failure to decrypt the hard drive because, according to Plaintiff, he stored the decryption key on his phone and when the CTA terminated Plaintiff's access to its computer network, unbeknownst to the CTA, a software trigger inserted by Plaintiff in his phone deleted the decryption key; and (4) Plaintiff claimed he forgot or no longer had access to the decryption key. As a result of these actions by Plaintiff, which were taken without the CTA's knowledge or permission, the CTA was obligated to undergo the lengthy and expensive process of attempting to decrypt the Plaintiff's hard drive on his CTA computer, by engaging a third-party forensic computer technician to undertake the work as a consulting expert.

The CTA has only recently obtained access to the materials on that hard drive, and the forensic consultant's work on this device continues.

Plaintiff asserts that it has been investigating Plaintiff's hard drive since October 2018. This is not accurate. The CTA has preserved the integrity of Plaintiff's work computer from the time Plaintiff resigned from the CTA in lieu of termination on November 8, 2018 to protect the litigation process and maintain the chain of custody. Plaintiff filed his lawsuit on December 2, 2019. After Plaintiff filed the lawsuit in December 2019, counsel for the CTA sought to obtain the necessary decryption password from counsel for Plaintiff without success.

Based on the evidence the CTA has identified on Pable's recently decrypted and analyzed drives, the CTA determined it needed to review additional hard drives relevant to Plaintiff's conduct including that of Michael Haynes, Plaintiff's former boss at the CTA. Like Plaintiff's computer, Mr. Hayne's computer and other drives also contain a substantial amount of data to be analyzed. Altogether, the CTA has identified over 5TB of data to analyze, the rough equivalent of 6,500 physical filing cabinets of data. *See, e.g.*, How Much is 1 TB of Storage? available at https://www.dropbox.com/features/cloud-storage/how-much-is-1tb. The CTA is working diligently to review these materials and determine what is responsive to this litigation. That forensic process is ongoing and costly.

Importantly, the CTA's decryption and review of the hard drives used by Plaintiff on the CTA computer informed the CTA's written discovery requests propounded upon Plaintiff well within the deadline for written discovery, on September 15, 2020, including detailed interrogatories. *See, e.g.*, *Gray v. Monical Pizza Corp.*, 13-cv-2113, 2014 WL 1308343, at *2 (C.D. Ill. Apr. 1, 2014) (granting written discovery extension motion where the court's discovery order had nothing requiring "that written discovery requests had to be filed more than 30 days

prior to the discovery deadline. Further, Rules 33 and 34 of the Federal Rules of Civil Procedure, which relate to written discovery requests, include no such requirement.").

The CTA is also preparing to serve record subpoenas to third parties in light of its analysis of Plaintiff's and Mr. Haynes's CTA devices, as well as Plaintiff's production of documents. In addition, based on the evidence the CTA has reviewed thus far, the CTA also intends to issue Requests to Admit to Plaintiff and limited written discovery to Clever Devices.

Lastly, the CTA previously identified various deficiencies in Plaintiff's initial document production, which were not all cured through Plaintiff's supplemental document production made on July 30, 2020. Unlike Clever Devices and the CTA, Plaintiff did not make a production on June 29, 2020; he asserted the production he had made in conjunction with his initial disclosures satisfied his MIDP ESI production obligations. Pursuant to Rule 37.2, the CTA identified to Plaintiff numerous deficiencies in Plaintiff's initial production. Thereafter, Plaintiff made a production of ESI on July 30, 2020, one month after the CTA and Clever Devices produced the ESI identified in in their MIDP initial disclosures. The deficiencies that the CTA previously identified in Plaintiff's MIDP disclosures and production have not been fully cured to date. *See* Dkt. 27, Rule 26(f) Joint Report at 7 (highlighting deficiencies in Plaintiff's production). The CTA thus sought to address many of those deficiencies through its written discovery requests issued to Plaintiff on September 15, 2020, responses to which are due on October 13, 2020. If Plaintiff again fails to cure the deficiencies through his document production, or propounds similarly deficient responses to the CTA's interrogatories, motion practice may become necessary.

The CTA believes its requested 60-day extension is appropriate and reasonable under the circumstances and well supported by good cause. This would be the first requested extension of written discovery in this case. The request is not being made to cause undue delay, and no party

8

will suffer unfair prejudice as a result of this extension. In fact, the extension will give all the parties sufficient time to process and review the discovery and take additional measures as necessary. The CTA therefore intends to file a motion for a 60-day extension of written discovery.

### C. Clever Devices' Position

Clever Devices supports the CTA's position.

September 23, 2020                                   Respectfully submitted,


                                              /s/ Timothy A. Duffy
Timothy A. Duffy (ARDC #6224836)
Law Office of Timothy A. Duffy, P.C.
290 Shadowood Ln
Northfield, IL 60093
847-530-4920
tduffy@tduffylaw.com

*Attorney for Plaintiff*
*Christopher George Pable*

/s/    Elizabeth E. Babbitt

John F. Kennedy
Elizabeth E. Babbitt
Allison E. Czerniak
Nicollette L. Khuans
Taft Stettinius & Hollister LLP
111 E. Wacker Drive
Suite 2800
Chicago, IL 60601
312-527-4000
ebabbitt@taftlaw.com
jkennedy@taftlaw.com
aczerniak@taftlaw.com
nkhuans@taftlaw.com

*Attorneys for Defendant Chicago Transit Authority*

/s/   Steven W. Jados

Steven W. Jados
SmithAmundsen LLC
3815 E. Main Street, Suite A-1
St. Charles, IL 60174
(630)587-7934
sjados@salawus.com

*Attorney for Defendant Clever Devices, Ltd.*

27917321.5