UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER GEORGE PABLE, *Plaintiff*, v. CHICAGO TRANSIT AUTHORITY and CLEVER DEVICES LTD., *Defendants*. | Case No. 19-cv-7868 Judge Elaine E. Bucklo JURY DEMAND |
| CHICAGO TRANSIT AUTHORITY, Counter-Plaintiff, v. CHRISTOPHER GEORGE PABLE, Counter-Defendant. | |

**DEFENDANT/COUNTER-PLAINTIFF CHICAGO TRANSIT AUTHORITY'S MOTION TO EXTEND THE CLOSE OF WRITTEN DISCOVERY AND ADJUST THE REMAINING DISCOVERY SCHEDULE ACCORDINGLY**

Defendant/Counter-Plaintiff Chicago Transit Authority ("CTA"), by its undersigned counsel, respectfully requests that this Court enter an Order extending the close of written discovery by 60 days, to November 30, 2020, and adjust the remaining discovery schedule accordingly (as set forth below). In support of this motion, CTA states:

**FACTUAL BACKGROUND**

**I.      The Parties Initially Agreed to Close Written Discovery on September 30, 2020.**

Plaintiff filed a single-count complaint against the CTA and Defendant Clever Devices on December 2, 2019, alleging a violation of the National Transit Systems Security Act ("NTSSA").

(Dkt. 1.) The Parties filed an Initial Joint Planning Report on June 18, 2020, providing for, *inter alia*, a written discovery cutoff of September 30, 2020, and a fact discovery cutoff of February 1, 2021. (Dkt. 27.) The Court entered a minute order on June 23, 2020, stating that it "adopts the report of parties' planning meeting," but then ordering "[f]act discovery" to close on September 30, 2020. (Dkt. 28.) The Parties respectfully submit (and agree) that the Court intended to order "Written Discovery" to close by September 30, 2020 and "Fact Discovery" to close by February 1, 2021, as originally agreed to and proposed by the Parties. (*See* Dkt. 35.) The Parties have conducted themselves according to this mutual understanding that only written discovery would close by September 30, 2020. Assuming that mutual understanding is correct, the CTA now requests an additional 60 days to complete written discovery. Clever Devices supports this request. (*See* Dkt. 35.) Plaintiff does not. (*Id.*)

The CTA has been working diligently over the course of the past several months to investigate and complete written discovery of Plaintiff's NTSSA claim and the CTA's counterclaim under the Computer Fraud and Abuse Act, which it filed on August 3, 2020.[1] (Dkt. 32.) Despite its diligence, as detailed below, the CTA requires additional time beyond September 30, 2020 to complete written discovery. The discovery at issue is complicated, the data at issue is voluminous, and the CTA's ability to complete written discovery has been challenged by certain actions by Plaintiff: namely, (1) Plaintiff's own deficiencies in his production; and (2) the fact that Plaintiff encrypted a hard drive on his CTA computer which the CTA was only recently able to

---

[1] The CTA filed a counterclaim against Plaintiff under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.*, relating to the same transactions or occurrences that are the subject matter of Plaintiff's complaint, as well as, among other things, Plaintiff's unauthorized use of the Skeleton Key and unauthorized encryption of the CTA computer he used during the course of his employment with the CTA.

decrypt, access, and review. Specifically, Plaintiff created and applied the password to encrypt his CTA computer at various points of access, depriving the CTA of its ability to access in furtherance of the litigation an entire hard drive upon which its records created in the normal course of business were stored. (*See* also Parties' Joint Status Report, Dkt. 35, regarding the extent of the efforts the CTA engaged in to ultimately decrypt Plaintiff's computer hard drive.) Plaintiff has an extraordinary facility with computers and the use of informational technologies that resulted in these challenges to the CTA.

**II. Deficiencies in Plaintiff's Initial Production Delayed the CTA's Ability to Assess the Completeness of Discovery and Propound Additional Discovery.**

This case is part of the Mandatory Initial Discovery Pilot Program ("MIDPP"), under which the Parties were required to file their MIDPP initial disclosures (and did file) by March 2, 2020. (*See* Dkts. 14, 15 and 16.) Plaintiff's initial MIDPP initial disclosure was limited to 167 pages of PDF documents, consisting of 14 PDFs of various email strings; an audio file containing a recording Plaintiff had surreptitiously taken during his CTA resignation meeting; a photograph of his Notice of Discharge from the CTA; a photograph of his written statement to the CTA regarding his resignation in lieu of termination; a photograph of his signed notice of resignation; and two coding developer guides from Defendant Clever Devices. The CTA identified various deficiencies with Plaintiff's initial MIDPP production, which the Parties discussed at length during two Rule 26 teleconferences on March 5, 2020 and March 12, 2020.

On March 18, 2020, the CTA sent Plaintiff a letter pursuant to Local Rule 37.2, detailing the deficiencies in Plaintiff's initial document production and memorializing the Parties' discussions to date on those issues. (*See* March 18, 2020 Rule 37.2 Letter from E. Babbitt, attached hereto as <u>Exhibit A</u>.) For example, Plaintiff's production only contained one email actually sent by Plaintiff relating to the matters asserted in the Complaint. (*Id.* at 2.) The CTA also noted that

3

Plaintiff's production referenced the existence of relevant text messages that had not been produced. (*Id.* at 1.) Plaintiff had also produced incomplete email chains and emails from others' email accounts with no indication as to how Plaintiff came to possess those emails. (*Id.* at 2.) In addition, while the CTA requested that Plaintiff produce all ESI in native format with the relevant metadata included, Plaintiff's initial MIDPP production was not produced natively. (*Id.*)

In response, Plaintiff agreed to conduct a further search of his emails based on search terms proposed by the CTA, and to produce all relevant emails in their native format. (*See* March 25, 2020 Rule 37.2 Letter from T. Duffy attached hereto as Exhibit B.) On May 4, 2020, the CTA inquired as to when it could expect to receive Plaintiff's supplemental production as agreed to by Plaintiff on March 25, 2020. (May 4, 2020 Email Correspondence between A. Czerniak and T. Duffy, attached hereto as Exhibit C.) Plaintiff stated he did not intend to undertake any additional discovery until the Parties had a schedule for discovery that included production deadlines. (*Id.*)

The Parties filed their Joint Initial Planning Report pursuant to Rule 26(f) and their obligations under the MIDPP on June 18, 2020. (Dkt. 27.) That Report memorialized the Parties' obligations under the MIDPP to produce all of the ESI identified in their MIDPP initial disclosures by June 29, 2020. (*Id.* at 7.) The CTA and Clever Devices each made substantial ESI productions on June 29, 2020, in compliance with the Joint Initial Planning Report and their obligations under the MIDPP. Plaintiff did not make a production on June 29, 2020. Plaintiff took the position that the initial, deficient production he made as part of his MIDPP disclosures already satisfied his obligations to produce ESI under the MIDPP by June 29, 2020. (June 17, 2020 Email Correspondence from T. Duffy, attached hereto as Exhibit D.)

The deficiencies in the production Plaintiff made with his MIDPP disclosures remained unresolved, despite Plaintiff being on notice of, and agreeing to attempt to cure, these deficiencies

4

in March 2020. The CTA noted these deficiencies in the Joint Initial Planning Report and stated that if the deficiencies were not corrected, motion practice may become necessary. (Dkt. 27 at 7.)

Under the Joint Initial Planning Report, the Parties were permitted to issue additional written discovery, if necessary, beginning on July 1, 2020. The CTA, however, was not in a position to issue additional written discovery until after it received Plaintiff's promised supplemental production so that it could assess what remained outstanding, and also investigate the electronic devices/computers used by Plaintiff and the CTA. Plaintiff made a supplemental MIDPP production a month later, on July 30, 2020. The supplemental production consisted of 2,450 images, including: 252 emails from Plaintiff's personal email account in their native format; an Excel spreadsheet containing only portions of Plaintiff's extracted message threads that were sent and received in the messaging application Google Hangouts, along with accompanying images and videos send and received by Plaintiff through Google Hangouts; and 73 individual photographs[2] of only portions of Plaintiff's message threads that were sent and received on a Motorola cell phone via either Google Hangouts or Signal, an encrypted messaging application.

In reviewing Plaintiff's July 30 supplemental MIDPP production, the CTA has identified a number of additional or otherwise unresolved deficiencies. For instance, Plaintiff failed or otherwise refused to produce any emails from his personal email account prior to August 20, 2018, even though a substantial portion of the events relevant to both Plaintiff's complaint and the CTA's counterclaim occurred on or before August 17, 2018 (the date upon which Plaintiff used the Skeleton Key to access the Dayton RTA BusTime system). Additionally, and even though the

---

[2] For the sake of clarity, the CTA emphasizes that these images are not *screenshots* of portions of messages sent and received on a Motorola cell phone; rather, these images are *photographs* of a cell phone depicting portions of various messages on its screen.

CTA specifically alerted Plaintiff that his initial MIDPP production failed to include any text messages relative to this litigation in both of the Rule 26 teleconferences and in its Rule 37.2 letter of March 18, 2020,[3] Plaintiff still failed to produce any text messages in his supplemental MIDPP production, in any format. The repercussions of Plaintiff's failure to produce relevant text messages in his MIDPP disclosures are amplified by the fact that such information undoubtedly exists: for instance, even though the images exchanged in Plaintiff's Google Hangouts messages included a screenshot of am SMS text message by and between Plaintiff and Sarah Cochran, a CTA employee, that related to the subject matter of this litigation, Plaintiff has still failed or otherwise refused to produce any text messages in its supplemental MIDPP production. Finally, Plaintiff only produced those messages exchanged in the Signal application via photographs, and not in their native format as CTA requested, rendering it impossible for CTA to determine the dates and times on which the Signal messages were sent.

The CTA worked diligently to review Plaintiff's supplemental production in order to identify any gaps in the production, as well as these new or unresolved deficiencies, and tailored its subsequent written discovery requests to Plaintiff based on this review. The CTA propounded its written discovery to Plaintiff just 47 days after receiving Plaintiff's supplemental production. *See* Exhibit E, CTA's First Set of Requests for Production to Plaintiff (September 15, 2020), and

---

[3] The CTA's Rule 37.2 letter specifically noted Plaintiff's production of an August 24, 2018 email sent by Plaintiff's former boss, Michael Haynes ("Haynes") to Haynes' wife and to Plaintiff that discusses whether Mr. Haynes and Plaintiff should inform the CTA of the unauthorized use of the Skeleton Key on the Dayton RTA BusTime System wherein Mr. Haynes writes, "(Just got your text Chris…)." Ex. A at 1. Despite this clear reference to an August 24, 2018 text message from Mr. Haynes to Plaintiff regarding the facts at the heart of this litigation, and even though Plaintiff agreed to search for and produce relevant text messages during the March 12, 2020 Rule 26 conference, Plaintiff failed to produce any such text messages in either his initial MIDPP disclosures or in his supplemental MIDPP disclosures.

Exhibit F, CTA's First Interrogatories to Plaintiff (September 15, 2020). If Plaintiff again fails to cure his MIDPP production deficiencies through his document production, or propounds similarly deficient responses to the CTA's Interrogatories, motion practice may become necessary.

These issues with Plaintiff's production alone necessitate the extension of written discovery. However, additional actions taken by Plaintiff during his employment with the CTA further complicate written discovery in this matter, requiring additional time for its completion.

### III. The CTA has Also Spent Months Decrypting and Analyzing the Data on Plaintiff's CTA Hard Drive Due to Plaintiff's Unauthorized Encryption of this Hard Drive and Inability to Assist the CTA in Accessing these Materials.

Throughout discovery, the CTA simultaneously faced an additional, significant hurdle in its investigation of the claims and defenses: Plaintiff encrypted both hard drives on the CTA computer he used during the course of his employment prior to his departure from the CTA and without the CTA's knowledge or consent, thereby preventing the CTA from accessing the data contained on the CTA computer used by Plaintiff. Although the CTA successfully decrypted one of the hard drives on the computer, it was initially unable to decrypt the other drive.

The CTA raised the issue of encryption with Plaintiff in the Parties' Rule 26 conferences in March, as well as in its March correspondence pursuant to Rule 37.2. (*See* Ex. A at 2.) The CTA requested that Plaintiff provide additional information about the steps taken to encrypt his computer and the "steps, passwords, and any code necessary for the CTA to decrypt this drive" to assist the CTA in accessing the encrypted data. (*Id.* at 3.) Plaintiff did not provide the CTA with any method of decrypting his encrypted CTA hard drive. (*See* Ex. B.) Without this information, the CTA was unable to access the data on Plaintiff's encrypted CTA hard drive, forcing it to undergo the lengthy and expensive process of manually attempting to decrypt the hard drive.

The CTA engaged a third-party forensic computer technician to further the decryption efforts and to undertake the work as a consulting expert. The forensic consultant only recently

gained access to Plaintiff's encrypted hard drive. Upon obtaining access to this data, the CTA has worked diligently with its third-party vendor to review and analyze the contents of the decrypted hard drive, and the forensic consultant's work on this device continues. Through this process, the CTA determined that it needed to review additional hard drives, including that of Mr. Haynes, Plaintiff's former boss at the CTA. Altogether, the data contained on the various drives the CTA has identified for review exceed 5 TB, the rough equivalent of 6,500 physical filing cabinets of data. *See, e.g.*, How Much is 1 TB of Storage? available at https://www.dropbox.com/features/cloud-storage/how-much-is-1tb. The CTA is currently in the process of reviewing those materials and determining what is responsive to this litigation, which is an ongoing and costly process.

The CTA's decryption and review of the hard drives on the CTA computers used by Plaintiff and Mr. Haynes informed the CTA's written discovery needs. Certain of the CTA's discovery requests were prompted by information the CTA learned through this process. Plaintiff must answer this discovery by October 13. Plaintiff objects to answering any of it on the grounds this Court's last order relieves him of the obligation to do so. By way of example, CTA's First Requests for Production to Plaintiff seek documents and communications relating to Plaintiff's use of his CTA computer for certain purposes unrelated to the scope of his employment, including without limitation Plaintiff's activities relating to: mining, buying, and/or selling Bitcoin; gaming and/or video games; and "hacking" or otherwise gaining unauthorized access to other software, computer systems, and/or networks. Ex. E, Request for Production No. 19. The CTA first learned that Plaintiff was engaging in these types of unauthorized activities based upon its review of the decrypted CTA computer used by Plaintiff.

The CTA's analysis of the information on Plaintiff's and Mr. Haynes' CTA computers is

ongoing, and the CTA continues to learn new information from its third-party vendor regarding the contents of these machines, specifically relating to Plaintiff's actions as alleged in the Complaint and the CTA's counterclaim. The CTA requires additional time to complete its analysis of these materials, and it anticipates that it will need to propound additional written discovery and third-party subpoenas based on its ongoing investigation.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(f) "allows the court to amend discovery orders where justice so requires." *Reytblatt v. Nuclear Regulatory Com'n*, 86 C 385, 1991 WL 140920 at *2 (N.D. Ill. July 22, 1991). The decision to extend discovery is "within the court's broad discretion." *Id.*

Plaintiff appears to oppose the CTA's request for an extension of time, in part, because the CTA propounded written discovery on Plaintiff on September 15, 2020. (Dkt. 35.) Plaintiff maintains he should not be obligated to respond to that written discovery, though it was issued before the close of written discovery, because his written responses would be due after the current close of discovery. But that is not the rule. For example, in *Gray v. Monical Pizza Corp.,* the court granted a written discovery motion where the discovery order, like the one here, had nothing requiring "that written discovery requests had to be filed more than 30 days prior to the discovery deadline." 13-cv-2113, 2014 WL 1308343, at *2 (C.D. Ill. Apr. 1, 2014). That court further held that "Rules 33 and 34 of the Federal Rules of Civil Procedure, which relate to written discovery requests, include no such requirement" regarding the issuance of written discovery more than 30 days prior to the close of written discovery.

For these reasons, the CTA submits that the issuance of its written discovery is not late in the first instance. Moreover, the extension of discovery the CTA seeks would allay any issue and provide Plaintiff with sufficient time to prepare his responses.

**ARGUMENT**

Because of the challenges presented by Plaintiff's own deficiencies in production, as well as the CTA's inability to access Plaintiff's CTA computer due to Plaintiff's own encryption of it, the CTA requires additional time to complete written discovery. This is the first request for an extension of written discovery in this case.

As detailed herein, the CTA has been diligent in its investigation into Plaintiff's claims and Plaintiff's actions as they relate to the CTA's counterclaim. In addition to these aforementioned efforts, the CTA has also reviewed over 25,000 files and produced over 1,400 documents and files as part of its MIDPP ESI production. The CTA is also in the process of reviewing additional documents and preparing its responses Plaintiff's written discovery requests, which are due on September 28, 2020.

The CTA's request for an additional 60 days to complete written discovery would enable the CTA to complete its analysis of the data on Plaintiff's and Haynes' CTA computers, receive and analyze Plaintiffs' responses to its written discovery requests (and engage in any necessary motion practice to address remaining deficiencies in Plaintiff's production and/or interrogatory responses), and propound any additional written discovery and/or third party subpoenas in line with the CTA's ongoing investigation.

The extension would also provide all of the Parties with ample time to digest the voluminous and technologically complex discovery that has been, or will soon be, produced in this case prior to initiating fact witness depositions.

The CTA does not make this request to cause undue delay, and no party will suffer unfair prejudice as a result of this extension. However, the CTA may suffer unfair prejudice if discovery is not extended to allow the CTA ample time to adequately address, among other matters, the complications presented by Plaintiff's encryption of the CTA's computer.

WHEREFORE, Defendant/Counter-Plaintiff, the CTA, respectfully prays that this Court grant its Motion for an Extension of Time on Written Discovery, extend the written discovery cutoff date to November 30, 2020, and adjust the remaining discovery schedule as follows:

- Written Fact Discovery cutoff **November 30, 2020**
- Fact witness depositions **December 1, 2020 – April 1, 2021**
- *If experts are needed*:
    - Expert disclosures by **May 1, 2021**
    - Expert discovery complete by **June 1, 2021**
    - Responsive Expert disclosures by **July 1, 2021**
    - Responsive Expert discovery complete by **August 1, 2021**
    - Final supplementation of all discovery responses by **September 1, 2021**
    - Dispositive Motions filed by **October 1, 2021**, with responses and replies due 30 and 15 days thereafter, respectively
    - Pretrial submissions complete by **December 1, 2021**
- *If experts are not required*:
    - Final supplementation of all discovery responses by **May 1, 2021**
    - Dispositive Motions filed by **June 1, 2021**, with responses and replies due 30 and 15 days thereafter, respectively
    - Pretrial submissions by **August 1, 2021**

Dated: September 23, 2020

Respectfully submitted,

CHICAGO TRANSIT AUTHORITY

By: _s/ John F. Kennedy_
One of Its Attorneys

John F. Kennedy
jkennedy@taftlaw.com
Elizabeth E. Babbitt

ebabbitt@taftlaw.com
Allison E. Czerniak
aczerniak@taftlaw.com
Nicollette L. Khuans
nkhuans@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker, Suite 2800
Chicago, Illinois 60601
(312) 527-4000
Attorney No. 29143

27921797.4