**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CHRISTOPHER GEORGE PABLE, | |
| *Plaintiff*, | Case No. 19-cv-7868 |
| v. | Judge Elaine E. Bucklo |
| CHICAGO TRANSIT AUTHORITY and CLEVER DEVICES LTD., | Magistrate Judge Sidney I. Schenkier |
| *Defendants*. | JURY DEMAND |
| | |
| CHICAGO TRANSIT AUTHORITY, | |
| Counter-Plaintiff, | |
| v. | |
| CHRISTOPHER GEORGE PABLE, | |
| Counter-Defendant. | |

**EXHIBIT LIST**

Exhibit A:   March 18, 2020 Rule 37.2 Letter from E. Babbitt

Exhibit B:   March 25, 2020 Rule 37.2 Letter from T. Duffy

Exhibit C:   May 4, 2020 Email Correspondence between A. Czerniak and T. Duffy

Exhibit D:   June 17, 2020 Email Correspondence from T. Duffy

Exhibit E:   CTA's First Set of Requests for Production to Plaintiff (September 15, 2020)

Exhibit F:   CTA's First Interrogatories to Plaintiff (September 15, 2020)

# EXHIBIT A

**Elizabeth E. Babbitt**
Direct Dial: (312) 836-4116
*e*-Facsimile: (312) 966-8556
E-Mail: ebabbitt@taftlaw.com

**Taft/**

111 East Wacker, Suite 2800 / Chicago, Illinois 60601
Tel: 312.527.4000 / Fax: 312.527.4011
www.taftlaw.com

Reference No.: CTA03-GN007

March 18, 2020

**VIA EMAIL**
Timothy A. Duffy
Law Office of Timothy A. Duffy, P.C.
290 Shadowood Lane
Northfield, IL 60093
tduffy@tduffylaw.com

> **Re:** *Christopher Pable v. CTA | Case No. 17 cv 7868*

Dear Counsel:

This letter seeks to resolve numerous outstanding discovery issues pursuant to Local Rule 37.2. As an initial matter, and as discussed during the parties' Rule 26 teleconferences on March 5, 2020 ("March 5 conference") and on March 12, 2020 ("March 12 conference"), the CTA has identified certain deficiencies with Plaintiff's initial production made pursuant to the Mandatory Initial Discovery Pilot Program ("MIDPP"). The deficiencies in Plaintiff's MIDPP production indicate that Plaintiff has failed to preserve potentially relevant evidence. This is especially troubling given that Plaintiff has been under a duty to preserve all since the day he resigned from the CTA, as it was clear at that time that he was anticipating litigation against the CTA. *See* Fed. R. Civ. P. 37(e); *Cohn v. Guaranteed Rate, Inc.*, 318 F.R.D. 350, 354 (N.D. Ill. 2016). The CTA therefore reminds Plaintiff, once again, of his preservation obligations, which extends to all: (1) documents; (2) electronically stored information ("ESI"), including emails, shared files, cloud-based files, social media messages, and data sources; and (3) other tangible evidence, including any personal devices Plaintiff was using at the time of his resignation.

**Deficiencies in Plaintiff's MIDPP Production**

Plaintiff's MIDPP production consisted of fourteen PDFs of various email strings and an audio file containing a recording Plaintiff apparently took during his resignation meeting. Based upon its initial review of the PDF documents provided by Plaintiff, the CTA believes this production is incomplete. By way of example, in P0000033, an email from Michael Haynes to Plaintiff and Trinity Haynes, Mr. Haynes states: "Just got your text Chris . . . ." Plaintiff has not produced any text messages relative to this litigation. During the March 12 conference, you stated that Plaintiff would search and produce any and all such text messages still in existence (*i.e.* not deleted by Plaintiff) and preserve the device on which any such messages would have been sent or received.

Timothy A. Duffy
March 18, 2020
Page 2

As another example of the deficiencies in Plaintiff's MIDPP production, P000032 is an email apparently sent to Ms. Haynes from Mr. Haynes's Gmail account. Plaintiff is nowhere copied or included on the email. It is unclear from the face of this document where the email came from or how it came to be in Plaintiff's possession (P000001 is another example of this). In this email, Mr. Haynes' includes an email from Tim Harrington that was sent to Mr. Haynes' CTA email account. Yet, a piece of the chain is missing—how did the email get from Mr. Haynes' CTA email account to his personal Gmail account? P000032 does not provide the information necessary to answer this question.

The CTA previously requested that Plaintiff produce all ESI in native format so as to allow the CTA access to the relevant metadata. The CTA renews this request. Native files are necessary for the CTA to determine the authenticity of these emails and assess the completeness of Plaintiff's production. The metadata contained in the native email files will also indicate whether there are replies or forwarded emails that Plaintiff has failed to produce. Plaintiff cannot simply "cherry-pick" those messages he deems responsive and not provide the CTA the full universe of potentially relevant evidence. Further, the native files are necessary to explain how Plaintiff came to be in possession of the emails, cited above, which only appear to have been sent to Mr. Haynes. Per the March 12 conference, Plaintiff has agreed to produce native files of Plaintiff's emails.

Finally, Plaintiff's MIDPP production contains only one email, P000053, actually sent by Plaintiff relating to the matters asserted in the Complaint. That only a single transmittal from Plaintiff exists strains credibility, particularly in light of the messages he received. The CTA has asked that Plaintiff conduct additional searches of his personal email account(s). As discussed during the March 12 conference, Plaintiff is willing to conduct another search of his email account(s) for the time period of June 1, 2018 through December 31, 2018. The CTA proposes the following terms for this search: "CTA" "BusTime" "BusTracker" "Clever" "CleverDevices" "Haynes" "Psomas" "Dayton" "Skeleton" "Key" "Silvestri" "Transit" "Coppoletta" and "Johnston". The CTA asks that, in addition to producing any and all email correspondence responsive to these searches (in native form), Plaintiff also describe the results, including hit counts, of these searches.

## Encryption of Plaintiff's CTA Hard Drive

As detailed in my March 4, 2020 email, and discussed during the March 5 conference, it has come to the CTA's attention that Plaintiff encrypted both drives on his CTA computer without the CTA's knowledge or consent, thereby preventing the CTA from accessing the data contained on its computer. It is our understanding that the CTA ultimately was able to decrypt Plaintiff's primary drive through a decryption key contained on a flash drive Plaintiff had left at his work station. Plaintiff never mentioned the encryption of his primary hard drive to the CTA, nor informed the CTA that the drive could be decrypted and accessed through use of the flash drive. Instead, Plaintiff demanded that the flash drive be returned to him following his resignation, without any indication as to its significance. *See* P000053.

Timothy A. Duffy
March 18, 2020
Page 3

Upon obtaining access to Plaintiff's primary drive, the CTA discovered that Plaintiff had further encrypted his secondary drive using an unknown software. To date, the CTA has been unable to decrypt Plaintiff's secondary drive and therefore cannot access the data stored there. The CTA has asked Plaintiff to immediately disclose the steps, passwords and any other code necessary to decrypt this drive, so that the CTA may have full access to its computer. During the March 5 conference, you explained that, according to Plaintiff, the decryption key for Plaintiff's secondary drive was saved on Plaintiff's cell phone. You further stated that when Plaintiff resigned from the CTA, the CTA "wiped" his cell phone and, in the process, deleted the decryption key. You were unclear as to whether the cell phone in question was a CTA-issued device or Plaintiff's personal cell phone. The CTA has since confirmed that Plaintiff was not issued a CTA phone. The CTA denies that it ever "wiped" Plaintiff's personal cell phone, or that Plaintiff ever informed it of the decryption key saved on this phone. In fact, the message Plaintiff produced (P000053) suggests that Plaintiff, himself, arranged for such information to be "wiped," again without the knowledge or consent of the CTA.

This remains an open issue. In order to more fully understand the circumstances surrounding Plaintiff's encryption of this secondary drive and to enable the CTA to access the data on this drive, the CTA requests that Plaintiff provide a written explanation of:

- The steps he used to encrypt his secondary drive, including by identifying the type of encryption he used and the devices utilized in the process;
- The steps, passwords, and any code necessary for the CTA to decrypt this drive;
- The materials Plaintiff stored on this secondary, encrypted drive;
- The reason this drive was encrypted by Plaintiff.

The CTA further requests that the cell phone Plaintiff alleges contained the decryption key be located and preserved for imaging.

**Imaging of Plaintiff's Personal Devices**

In light of the aforementioned deficiencies in Plaintiff's MIDPP production and your assertion that the decryption key for the secondary hard drive on Plaintiff's CTA computer was stored on Plaintiff's personal cell phone, the CTA believes imaging of Plaintiff's cell phone is necessary. Plaintiff's actions implicate concerns of spoliation of evidence. Imaging of Plaintiff's personal devices is required for the CTA to gain a complete picture of what occurred and to have full access over the data Plaintiff surreptitiously encrypted on the CTA's own computer. Moreover, imaging would be handled by a third-party vendor who would segregate Plaintiff's private information and limit the CTA's access only to information related to this litigation; therefore, Plaintiff would not be unduly prejudiced by this process.

Per our discussion during the March 12 conference, Plaintiff is amenable to this process relative to his "work profile" on his phone. The CTA maintains that it is entitled to an image of Plaintiff's entire cell phone, including his non-work related profile. Plaintiff's own production to date reflects the fact that he used his personal, non-CTA system to communicate about the facts of this case. Because the parties have already agreed to imaging a portion of the phone, the CTA's

Timothy A. Duffy
March 18, 2020
Page 4

request to image the complete phone does not unreasonably expand this request, nor does it burden Plaintiff. The parties can work with a third party vendor to protect Plaintiff's privacy interests relative to materials on his phone which have no bearing on this case. Accordingly, the CTA requests that Plaintiff cooperate with having the entirety of his personal cell phone imaged and search in accordance with the time frame and search terms detailed above.

To summarize, the CTA's understanding of the status of the above-identified issues, based on the parties' discussions, is as follows:

1. Preservation of Plaintiff's personal devices – Agreed.
2. Production of native files of Plaintiff's emails – Agreed.
3. Additional search of Plaintiff's emails – Agreed; search terms proposed here by CTA pending agreement by Plaintiff.
4. Detailed written explanation of manner in which Plaintiff decrypted the CTA computer and the secondary drive located on that computer – Pending.
5. Imaging of "work profile" on Plaintiff's personal cell phone – Agreed; parties to agree on a vendor and appropriate search parameters.
6. Imaging of Plaintiff's personal cell phone in its entirety – Pending.

We look forward to your prompt response to the above issues.

Sincerely,

TAFT STETTINIUS & HOLLISTER LLP

Elizabeth E. Babbitt

cc: Via Email
  John F. Kennedy
  Allison E. Czerniak
  Nicollette Khuans
  Steven Jados

# EXHIBIT B

# Law Office of Timothy A. Duffy, P.C.

March 25, 2020

<u>**Via Email**</u>

Elizabeth E. Babbitt
Taft Stettinius & Hollister LLP
111 East Wacker Drive, Suite 2800
Chicago, Illinois 60601

Re:     *Pable v. CTA, et al.*, Case No. 17-cv-7868

Dear Elizabeth,

I write in response to your letter of March 18, 2020. With respect to the issues listed at the end of your letter, we are agreed as to items 1, 2, and 5, as you indicate. With respect to Item 3, we are also agreed and will plan on using the search terms you have listed. That leaves two items, numbered 4 and 6.

In item 4 you ask for a "detailed written explanation of [the] manner in which Plaintiff decrypted the CTA computer and secondary drive located on that computer." I think you meant to say "encrypted," but regardless I do not see the point of this request. The fact is that the Mr. Pable used standard tools to encrypt the hard drive, pursuant to CTA policy. His ability to access that information was compromised when the CTA, without any notice to or consultation with Mr. Pable, disabled his access to his "work" profile on his phone, wherein was stored the password that would allow access to the encrypted data. Mr. Pable has been, and remains, willing and able to discuss the technical details of this with the CTA or its designee if they think it would be helpful in restoring access to the data, which he doubts. The most efficient way to resolve this alleged issue is to have people who know what they are talking about have a conversation, not to have lawyers engaging in a game of "grapevine."

In Item 6 you seek the imaging of the "personal" profile on Mr. Pable's cell phone (in addition to the "work" profile). As an initial matter, let me say that it may not be feasible to image and search one profile and not the other. If that is the case, we will image and search the entire phone, so in that sense, this matter is perhaps not ripe for dispute. Assuming the distinction between the two profiles can be respected, however, Mr. Pable does not agree to the imaging and search of his "personal" profile. There is no reason to suspect that this effort will yield any relevant information. Mr. Pable did not use his personal profile for communications related to the issues in this case, and all of the indications you cite only implicate information that may have existed in the "work" profile, not the "personal" profile. I submit that the appropriate approach, for Mr. Pable (and any other person whose phone might have information relevant to the case) is that we need not collect, image, and search cell phones absent some indication, whether revealed in our respective collection efforts or in deposition testimony, that such efforts would likely yield relevant information.

Timothy A. Duffy
290 Shadowood Lane
Northfield, Illinois 60093
+1-847-530-4920
tduffy@tduffylaw.com

## Law Office of Timothy A. Duffy, P.C.

I am not going to undertake a detailed response to the numerous unsupported assertions, or the rhetoric and argument, in your letter, as most of it is irrelevant to the issues outlined in your final paragraph and above.

I will, however, address the wholly erroneous claim that Mr. Pable failed to preserve relevant evidence. To the contrary, the reason we cannot access the data you seek on the CTA hard drive and his cell phone is because the CTA unilaterally – and contrary to *its* obligation to preserve evidence in connection with its "investigation" into the events that led to Mr. Pable's termination – disabled all access to the cell phone data, which included the password to the hard drive.

Finally, the notion that Mr. Pable's MIDPP production was deficient is likewise baseless. Mr. Pable produced copies of the few relevant emails he had copies of on his personal Gmail account. He no longer has access to his CTA email, all of which is presumably available to the CTA, and none of which was produced in its MIDPP production. In any event, you have asked for another search and for the native files, to which Mr. Pable has agreed, so there is no issue here.

I remain available to discuss any of these issues prior to our status conference if you think it might be helpful.

Very truly yours,

Timothy A. Duffy

cc:    via Email
John F. Kennedy
Allison E. Czerniak
Nicollette Khuans
Steven Jados

# EXHIBIT C

**From:** Timothy Duffy <tduffy@tduffylaw.com>
**Sent:** Tuesday, May 5, 2020 9:50 AM
**To:** Czerniak, Allison E.
**Cc:** Babbitt, Elizabeth E.; Kennedy, John; Khuans, Nicollette L.; Jados, Steven
**Subject:** Re: Pable v. CTA - Rule 37.2 Correspondence

**Follow Up Flag:** Follow up
**Flag Status:** Completed

Allie,

Thank you and I hope the same for you.

We do not intend to undertake additional discovery efforts until we have resolved all of our issues with regard to the discovery plan for the case, whether by agreement or court order, and have a new schedule for discovery that includes deadlines for productions for all parties.

I think the next steps are: (1) anything further in terms of our Rule 37.2 correspondence; (2) comments or edits to the draft report for the court to reflect our discussions or any other items; (3) updating our agreed schedule as necessary, in which I suggest we include deadlines for productions all around, which I suspect will need to await the setting of a status date that we have some confidence will stick.

Best,

Tim

Timothy A. Duffy
Timothy A. Duffy, P.C.
290 Shadowood Ln
Northfield, IL 60093
+1-847-530-4920
tduffy@tduffylaw.com

On May 4, 2020, at 14:46, Czerniak, Allison E. <aczerniak@taftlaw.com> wrote:

Tim,

I hope you and your family are well.

In your March 25 letter sent pursuant to Rule 37.2, you stated that, although Plaintiff disagreed with the CTA's assertion that his MIDP production was deficient, he had agreed to conduct another search of his personal files (emails, texts, social media, etc.) and provide the results of his search, as well as provide native files of the materials previously produced. Please advise as to when we can expect to receive Plaintiff's supplemental production and the results of Plaintiff's supplemental search.

Thank you,
Allie

**Taft /**

**Allison E. Czerniak**
Attorney
aczerniak@taftlaw.com
Dir: 312.840.4487
Tel: 312.527.4000  |  Fax: 312.966.8584
111 E. Wacker Drive, Suite 2800
Chicago, Illinois 60601-3713

**taftlaw.com**

To receive regular COVID-19 updates from Taft, subscribe here. For additional resources, visit Taft's COVID-19 Resource Toolkit.

This message may contain information that is attorney-client privileged, attorney work product or otherwise confidential. If you are not an intended recipient, use and disclosure of this message are prohibited. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

**From:** Timothy Duffy <tduffy@tduffylaw.com>
**Sent:** Wednesday, March 25, 2020 5:36 PM
**To:** Babbitt, Elizabeth E. <ebabbitt@taftlaw.com>
**Cc:** Czerniak, Allison E. <aczerniak@taftlaw.com>; Kennedy, John <jkennedy@taftlaw.com>; Khuans, Nicollette L. <NKhuans@taftlaw.com>; Jados, Steven <SJados@salawus.com>
**Subject:** Re: Pable v. CTA - Rule 37.2 Correspondence

Elizabeth,

Hope all of you and your families are healthy.  Please see the attached letter.

Thanks,

Tim

# EXHIBIT D

| | |
|---|---|
| **From:** | Timothy Duffy <tduffy@tduffylaw.com> |
| **Sent:** | Wednesday, June 17, 2020 2:45 PM |
| **To:** | Babbitt, Elizabeth E. |
| **Cc:** | Jados, Steven; Czerniak, Allison E.; Kennedy, John; Khuans, Nicolette L. |
| **Subject:** | Re: Pable v. CTA & Clever Devices -- Revised Draft Status Report [IWOV-Active.FID920631] |

Counsel,

As I explained, there is no issue because plaintiff has already made his production and we are now simply talking about supplementing it, not the 40-day deadline. But we don't need to see eye to eye on that; we just need to agree with the document being filed. Do you have any additional changes?

Thanks,

Tim


Timothy A. Duffy
Timothy A. Duffy, P.C.
290 Shadowood Ln
Northfield, IL 60093
+1-847-530-4920
tduffy@tduffylaw.com


On Jun 17, 2020, at 15:37, Babbitt, Elizabeth E. <ebabbitt@taftlaw.com> wrote:

Counsel: the deadline could be moved by an order of the Court. The MIDP provides for the deadlines we have included in this status report. If Plaintiff wishes for the Court to extend the deadline, the Plaintiff must so move the Court. That is one of the primary distinctions between an MIDP case and traditional Rule 26 scheduling reports. Simply sliding in a new deadline that is not consistent with what is mandated by the MIDP Standing Order without providing sufficient notice to the Court is not acceptable to CTA. And, while Plaintiff has mentioned moving the date previously, CTA has never agreed to such an extension, and certainly not without leave of Court.

Elizabeth

**From:** Timothy Duffy <tduffy@tduffylaw.com>
**Sent:** Wednesday, June 17, 2020 2:25 PM
**To:** Babbitt, Elizabeth E. <ebabbitt@taftlaw.com>
**Cc:** Jados, Steven <SJados@salawus.com>; Czerniak, Allison E. <aczerniak@taftlaw.com>; Kennedy, John <jkennedy@taftlaw.com>; Khuans, Nicolette L. <NKhuans@taftlaw.com>
**Subject:** Re: Pable v. CTA & Clever Devices -- Revised Draft Status Report [IWOV-Active.FID920631]

Counsel,

The 40-day deadline is not immovable. If we propose, and the Court enters, a schedule that provides for a different date, there is no issue.

If you want to produce on June 29th, that's great, but I am also fine with August 1.

Plaintiff has already made an ESI production, and has agreed to supplement at your request, and will do so by August 1. If that's not quick enough for you, you can raise that with the Court (though I would note that that date has been on the table for some time without objection from you).

Regardless, it does not make sense to have two entries on the schedule that say the same thing. If we keep both dates, I suggest we insert the word "initial" in the first and "supplemental" in the second, as I've done on the current draft showing non-formatting changes since the last comments by Steve.

Thanks,

Tim

Timothy A. Duffy
Timothy A. Duffy, P.C.
290 Shadowood Ln
Northfield, IL 60093
+1-847-530-4920
tduffy@tduffylaw.com

On Jun 17, 2020, at 14:20, Babbitt, Elizabeth E. <ebabbitt@taftlaw.com> wrote:

Counsel:

The Court's standing order on the MIDPP requires "[u]nless the Court orders otherwise, a party must produce the ESI . . . within 40 days after serving its initial written responses. (Am. Standing Order Regarding MIDPP ¶ C(2)(c).) CTA served its written responses (as did Plaintiff and Clever Devices), and in light of the court's COVID-19 orders, the current deadline to produce ESI required under the MIDPP is June 29, 2020, hence the inclusion of that date in the proposed discovery schedule.

CTA will produce the ESI it identified in its MIDPP initial disclosures on June 29, 2020, as required under the order. In short, the CTA is not delinquent on any production of ESI.

As the MIDPP is "mandatory," it does not provide for extensions to the deadlines set therein (the only discussion of an extension in the order refers to deferring initial discovery responses "one time, for 30 days if the parties jointly certify to the Court that they are seeking to settle the case and have a good faith belief that it will be resolved

within 30 days of the due date of their responses" – something inapplicable here). If Plaintiff requires an extension he should move the Court for leave to extend.

The CTA will add a counterclaim on or before August 1, 2020.

The CTA agrees that the employees contemplated in 2(B) are the same individuals identified in 2(D).

Elizabeth

---

**From:** Timothy Duffy <tduffy@tduffylaw.com>
**Sent:** Wednesday, June 17, 2020 12:46 PM
**To:** Babbitt, Elizabeth E. <ebabbitt@taftlaw.com>
**Cc:** Jados, Steven <SJados@salawus.com>; Czerniak, Allison E. <aczerniak@taftlaw.com>; Kennedy, John <jkennedy@taftlaw.com>; Khuans, Nicollette L. <NKhuans@taftlaw.com>
**Subject:** Re: Pable v. CTA & Clever Devices -- Revised Draft Status Report [IWOV-Active.FID920631]

Counsel:

1. I agree that the "employees" discussed in 2D are, like the individuals discussed in 2B, the persons listed on anyone's initial disclosures. I don't think we need to add any words to that effect in either place, as we have confirmed our understanding of the scope via these emails.

2. I don't think the paragraph about potential discovery issues is appropriate, but if you want to keep it in, I need to add the following: "Defendants failed to produce any ESI in connection with their Mandatory Initial Disclosures. Accordingly, Plaintiff reserves its right to raise any issues with respect to Defendants' compliance with respect to their MIDP productions following receipt and review thereof."

3. Given the CTA's statement that it intends to amend its answer and assert a counterclaim, we should put a date for that in the schedule. You can pick it, but if it is later than August 1, we should push back the deadlines later than (starting with the fact witness deposition window) by the length of time the amendment date is later than August 1.

4. You inserted a date for ESI production of June 29 — but that deadline was already there at August 1. June 29 is too soon, and I suggest we keep the August 1 date.

Let me know your thoughts,

Tim

Timothy A. Duffy
Timothy A. Duffy, P.C.
290 Shadowood Ln
Northfield, IL 60093
+1-847-530-4920
tduffy@tduffylaw.com

On Jun 16, 2020, at 22:02, Babbitt, Elizabeth E. <ebabbitt@taftlaw.com> wrote:

Thank you.

---

**From:** Timothy Duffy <tduffy@tduffylaw.com>
**Sent:** Tuesday, June 16, 2020 8:53 PM
**To:** Babbitt, Elizabeth E. <ebabbitt@taftlaw.com>
**Cc:** Jados, Steven <SJados@salawus.com>; Czerniak, Allison E. <aczerniak@taftlaw.com>; Kennedy, John <jkennedy@taftlaw.com>; Khuans, Nicollette L. <NKhuans@taftlaw.com>
**Subject:** Re: Pable v. CTA & Clever Devices -- Revised Draft Status Report [IWOV-Active.FID920631]

Yes. I have not had a chance to review what was sent today, but will tomorrow and will let you know if I have any issues, but will otherwise prepare the document for filing and do that when we finalize (by Friday if not before).

Timothy A. Duffy
Timothy A. Duffy, P.C.
290 Shadowood Ln
Northfield, IL 60093
+1-847-530-4920
tduffy@tduffylaw.com

On Jun 16, 2020, at 21:50, Babbitt, Elizabeth E. <ebabbitt@taftlaw.com> wrote:

Steve: CTA has no objection to these edits.

We have no further changes to the report; Tim, will you be filing?

Elizabeth

**Taft /**

**Elizabeth E. Babbitt**
Partner
ebabbitt@taftlaw.com
Dir: 312.836.4116
Tel: 312.527.4000 | Fax: 312.966.8556
111 E. Wacker Drive, Suite 2800
Chicago, Illinois 60601-3713

**Taft Bio**
**Download vCard**
**taftlaw.com**

---

**From:** Jados, Steven <SJados@salawus.com>
**Sent:** Tuesday, June 16, 2020 5:16 PM
**To:** Czerniak, Allison E. <aczerniak@taftlaw.com>;
Timothy Duffy <tduffy@tduffylaw.com>; Kennedy, John
<jkennedy@taftlaw.com>; Babbitt, Elizabeth E.
<ebabbitt@taftlaw.com>
**Cc:** Khuans, Nicollette L. <NKhuans@taftlaw.com>
**Subject:** RE: Pable v. CTA & Clever Devices -- Revised
Draft Status Report [IWOV-Active.FID920631]

Counsel,

Using the clean version of the Taft revisions, I made
minor revisions in redline in the attached.

Steve

**Steven Jados**
Partner
**COVID-19 Resource**
**Center: https://www.salawus.com/practices-covid19-**
**task-force.html**
**Smith**Amundsen LLC
3815 East Main Street, Suite A-1, St. Charles, Illinois  60174
☎ Phone (630) 587-7934 | Fax (630) 587-
7349 | ✉ SJados@salawus.com | 🌐 http://www.salawus.com

 Please consider the environment before printing this e-
mail

This message is intended only for the individual or entity to which it is
addressed and may contain information that is attorney work product,
privileged, confidential and/or exempt from disclosure under applicable law.
If the reader of this message is not the intended recipient, you are hereby
notified that any dissemination, distribution or copying of this
communication is strictly prohibited. If you have received this
communication in error, please notify us immediately by telephone and
return the original message to us at the above address via email or the
United States Postal Service. Thank you.

---

**From:** Czerniak, Allison E.
[mailto:aczerniak@taftlaw.com]

**Sent:** Tuesday, June 16, 2020 4:21 PM
**To:** Timothy Duffy; Jados, Steven; Kennedy, John; Babbitt, Elizabeth E.
**Cc:** Khuans, Nicollette L.
**Subject:** RE: Pable v. CTA & Clever Devices -- Revised Draft Status Report

Attached is a redline and clean version of the revised version of the draft status report reflecting Taft's edits to the version circulated by Plaintiff last Friday.

In regards to the highlighted portions of the report: Taft is in agreement with the point raised in 2(B). We are also in agreement with the highlighted point in 2(D) in principle, but think it would be helpful to define the relevant employees to whom this applies (i.e., the individuals identified in the parties' respective initial disclosures).

The CTA is not interested in a settlement conference at this stage, and has revised the draft report accordingly.

Please let us know if you have any questions or would like to discuss.

Allie

**Taft /**      **Allison E. Czerniak**
Attorney
aczerniak@taftlaw.com
Dir: 312.840.4487
Tel: 312.527.4000  |  Fax: 312.966.8584
111 E. Wacker Drive, Suite 2800
Chicago, Illinois 60601-3713

**taftlaw.com**

To receive regular COVID-19 updates from Taft, subscribe here. For additional resources, visit Taft's COVID-19 Resource Toolkit.

This message may contain information that is attorney-client privileged, attorney work product or otherwise confidential. If you are not an intended recipient, use and disclosure of this message are prohibited. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

**From:** Timothy Duffy <tduffy@tduffylaw.com>
**Sent:** Friday, June 12, 2020 10:38 AM

**To:** Czerniak, Allison E. <aczerniak@taftlaw.com>;
Jados, Steven <SJados@salawus.com>; Kennedy, John
<jkennedy@taftlaw.com>; Babbitt, Elizabeth E.
<ebabbitt@taftlaw.com>
**Subject:** Re: Pable v. CTA & Clever Devices -- Revised
Draft Status Report

Counsel,

I wanted to give you an update.  We have imaged
Mr. Pabel's cell phone and are in the process of
running the search terms without regard to any
distinction between his personal and work profiles,
so that issue has been resolved or at least made
simpler.  I've attached a revised drat status report
(highlighting the paragraph I changed
accordingly).  I will need your responses/positions
on the other highlighted items and any comments or
proposals with respect to the schedule.

Thank you,

Tim

Timothy A. Duffy
Timothy A. Duffy, P.C.
290 Shadowood Ln
Northfield, IL 60093
+1-847-530-4920
tduffy@tduffylaw.com

On Jun 1, 2020, at 09:30, Timothy
Duffy <tduffy@tduffylaw.com>
wrote:

<DRAFT 2020.06.01 Joint Initial
Status Report .docx>

# EXHIBIT E

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CHRISTOPHER GEORGE PABLE, | |
| *Plaintiff*, | Case No. 19-cv-7868 |
| v. | Judge Elaine E. Bucklo |
| CHICAGO TRANSIT AUTHORITY and CLEVER DEVICES LTD., | Magistrate Judge Sidney I. Schenkier |
| *Defendants*. | JURY DEMAND |
| CHICAGO TRANSIT AUTHORITY, | |
| Counter-Plaintiff, | |
| v. | |
| CHRISTOPHER GEORGE PABLE, | |
| Counter-Defendant. | |

**DEFENDANT/COUNTER-PLAINTIFF CHICAGO TRANSIT AUTHORITY'S**
**FIRST SET OF REQUESTS FOR PRODUCTION TO PLAINTIFF/COUNTER-**
**DEFENDANT CHRISTOPHER PABLE**

Pursuant to Federal Rule of Civil Procedure 34, Defendant Chicago Transit Authority ("CTA") propounds the following requests for production (collectively, the "Requests") on Plaintiff/Counter-Defendant Christopher George Pable. Pable must serve his responses within 30 days of the date of service of these Requests. *See* Fed. R. Civ. P. 34(b)(2).

**INSTRUCTIONS**

1. Pursuant to Federal Rule of Civil Procedure 26(e), the Requests are continuing in nature and Pable has a duty to supplement or correct any response with documents or data that

would have been responsive had they been in existence or known to Pable at the time the response was made.

2.      Pable's search obligations extend to documents or data maintained in hard copy format and to electronically stored information ("ESI").  In producing documents, Pable is requested to produce the following for each record:

a.  <u>Document Images</u>: All documents or files are to be scanned or printed to CCIT Group IV, 300 DPI resolution, single-page, TIFF images.  Each container file, such as an email PST or NSF or file containers such as a ZIP file or RAR file shall be extracted.  Each email attachment is to be extracted from the parent email as a separate document.  The parent/child relationship between email and attachment is to be maintained.  Each image is to be endorsed in the lower right hand corner with a unique serial ("Bates") number.  The Bates number shall not obscure any information in the image.

b.  <u>Native Electronic Files</u>: Native electronic files are to be produced in addition to the TIFF images except for structured data, i.e. Microsoft Excel, Microsoft Powerpoint, .exe files, which do not require an image.  The native file is to be named for the Bates number of the first page of the document.  If a file cannot be rendered to TIFF then a slip sheet image is to be produced and endorsed with the same Bates number.  The slip sheet shall contain the "original filename," "original file path" and a brief explanation or description of the reason for the exception.

c.  <u>Text Files</u>: A single, document-level, Unicode text file is to be produced for each record.  Text files should be named with the Bates number of the first page of the document.  In the case of file where the text is electronically extractable, the text file should contain the electronically extracted text.  For files where the text of the document is not electronically extractable, the file should be imaged then processed using optical character recognition (OCR).  The text from a slip sheet should not be provided in the text file.

d.  <u>Concordance Load File</u>: A Concordance .DAT file should be produced containing document boundaries, attachment (parent/child) relationship, and metadata fields corresponding to those listed below (to the extent those fields exist and are available).  Each file produced should have a corresponding record (row) in the data file.

| Metadata Fields: | Description: |
| --- | --- |
| BegDoc# | The Bates number or file identification number of the start of the document |
| EndDoc# | The Bates number or file identification number of the end of the document |

| | |
|---|---|
| BegDocAttach# | The beginning Bates number or file identification number of the first document in the parent/attachment group |
| EndDocAttach# | The ending Bates number or file identification number of the last document in the parent/attachment group |
| To | The recipient of the document or email |
| From | The author of the document or email |
| CC | Persons copied on the document or email |
| BCC | Persons blind-copied on the document or email |
| Custodian | The person who maintains custody of the document or email |
| Source | The original source of the data, if available (e.g. Joe's Work Laptop) |
| Author | Author of the document or email |
| Date Created | Date and time the document or email was created |
| Date Sent | Date and time the document or email was sent |
| Date Received | Date and time the document or email was received |
| Date Last Modified | Date and time last modified for attachments and standalone electronic files |
| Date Last Printed | Date and time last printed for attachments and standalone files |
| Time Sent | Time the email message was sent. |
| Time Received | Time the email message was received. |
| Time Created | Time the native file was created. |
| Time Last Modified | Time the native file was last modified. |
| Email Subject | Subject line(s) of email |
| Doc Title | Title of the document |
| File Name | File name of electronic document |
| File Path | Original file path as maintained by operating system or network |
| Folder | Email or document folder information |
| MD5, SHA-1, or SHA-1 Hash | Security and encryption values |
| Confidentiality Designation | Designation of any confidentiality claim applied to the document |
| Native File | File path to location of native format document |
| OCR Path | File path to extracted text (or OCR in the case of redacted images) of the document |

    e.  <u>Concordance Image (Opticon) Compatible Image Load File</u>: Produce an Opticon .OPT or .LOG text file with the following comma delimited fields:

IMAGE KEY, VOLUME, IMAGE PATH, DOCUMENT BREAK, FOLDER BREAK, BOX BREAK, PAGE COUNT

Each volume should have separate NATIVE, IMAGE and TEXT sub-folders for the native, image and text files, and shall contain no more than 5,000 files per numbered sub-folder. The Volume folder will contain the data file. The data file will be named for the production volume and will have the .DAT file extension. The volume folder will contain a Concordance Image (Opticon) image load file with either the .opt or .log file extension. The image load file will be named for the production volume.

3.      Pable must identify the Request(s) that each document produced is responsive to.

4.      These Requests are to be construed broadly to yield disclosure of as much relevant information as possible.

5.      If Pable withholds any document because of a claim of privilege, Pable must set forth the privilege claimed, the facts upon which Pable relies to support said claim of privilege, and furnish a list identifying each document and thing for which the privilege is claimed, and identify: (1) the date of the document; (2) each and every author of the document; (3) each and every other person who prepared or participated in the preparation of the document; (4) each and every person who received the document; (5) the present location of the document and all copies thereof; (6) each and every person having custody or control of the document and all copies thereof; (7) a description of the document (*e.g.*, email, letter, memorandum, etc.); and (8) the specific reason it was not produced. This instruction shall not limit the CTA's right to seek an order compelling production of documents Pable contends are privileged.

6.      If Pable claims that any document or documents containing information responsive to these Requests have been destroyed, missing, or lost, the production of which is sought by these Requests, Pable must furnish a list identifying each destroyed, missing or lost document and identify: (1) the date of the document; (2) each and every author of the document; (3) each and every other person who prepared or participated in the preparation of the document; (4) each and every person who received the document; (5) a description of the document (e.g., email, letter,

memorandum, etc.); and (6) provide sufficient information explaining the circumstances resulting in the said disposition of the document.

7.      To the extent such material requested has already been produced, Pable is instructed to respond by identifying such previously produced responsive material by Bates Number.

8.      Unless otherwise stated, the time frame contemplated by these Requests is from January 1, 2018, through the present.

## DEFINITIONS

1.      The terms "Pable," "you," or "your" mean Christopher George Pable and any attorney or other agent or representative of Pable.

2.      "Communication(s)" shall mean any transmission of words or thoughts between or among two or more persons and includes, but is not limited to, spoken words, conversations, conferences, discussions, talks, and reports, whether transmitted in person or by any electronic device such as the telephone or facsimile, including text messages, emails, messages sent via messaging applications (including without limitation WhatsApp, Telegram, Slack, Skype, etc.) and/or messages sent and/or posted in social media applications (including without limitation Facebook, Instagram, Google Hangouts, Google+, Reddit, etc.) and "documents" as that term is defined below.

3.      "Complaint" means the Complaint filed in this action by Pable on December 2, 2019, and any amendments thereto.

4.      "Counterclaim" means the Counterclaim filed in this action by the CTA on August 3, 2020.

5.     "Documents" means all written, printed, typed, graphic, recorded or illustrative matter, computer memory, tapes or any other tangible thing by which information is contained, stored or displayed, of every kind or description, however produced or reproduced, whether draft or final, original or reproduction, signed or unsigned, and regardless of whether approved, signed, sent, received, redrafted, or executed, included but not limited to: written communications, email, text messages, messages sent via messaging applications (including without limitation WhatsApp, Telegram, Slack, Skype, etc.), messages sent and/or posted in social media applications (including without limitation Facebook, Instagram, Google Hangouts, Google+, Reddit, etc.), letters, words, numbers, pictures, sounds, symbols or any combination thereof, correspondence, envelopes, computer printouts, teletypes, texts, telecopies, memoranda of telephone conversations or personal conversations, diaries, calendars, interoffice communications, records, reports, studies, bills, receipts, checks, invoices, requisitions, tape or disk recordings, papers and forms filed with any court or governmental body, notes, transportation and expense logs or records, work papers, contracts, formal or informal memoranda of meetings, statistical and financial statements, charts, graphs, reports or material similar to any of the foregoing, however denominated, by whomever prepared, and to whomever addressed, which are in your possession, custody or control or to which you have, have had or can obtain access.  The word "documents" extends to data that is stored or maintained only in electronic format.  Any document which contains any comment, notation, addition, insertion, or marking of any kind constitutes a document separate from the unmarked version.  The word "documents" should be construed in the broadest sense possible in responding to these Requests.

6.      "Person" means any natural person, governmental body, corporation, partnership, joint venture, organization, association, company, special purpose vehicle, or any other form of business, professional or commercial enterprise or entity.

7.      "Relate to" or "relating to" means pertaining to, referring to, reflecting upon, evidencing, describing, mentioning, summarizing or being in any way legally, logically or factually connected with the matter discussed in the Requests.

8.      "Showing" means depicting, identifying, reflecting, or reporting.

## FIRST REQUESTS FOR PRODUCTION

1.      All documents received in response to any subpoena issued by Pable or his counsel.

**RESPONSE:**

2.      Any and all documents and/or communications relating to your employment at the CTA in your possession, including any and all documents maintained by you in a physical file and/or on your personal computer(s), cell phone(s), hard drive(s), or other electronic device(s).

**RESPONSE:**

3.      Any and all documents and/or communications, including social media messages and/or posts (and including but not limited to messages sent, received, and/or posted in Facebook, LinkedIn, Instagram, Google Hangouts, Google+, Telegram, WhatsApp, Reddit, Slack, Skype, etc.), text messages, and emails by and between yourself and any other combination of the following individuals

(1)     Alex Bauer

7

    (2)    Xopher Barnett

    (3)    Sarah Cochran

    (4)    Tony Coppoletta

    (5)    Katie Gray

    (6)    Michael Haynes

    (7)    Trinity Haynes

    (8)    Natalie Jasien

    (9)    Jackie Johnston

    (10)    Susan Kim

    (11)    Chris Langer

    (12)    Sydney Moy

    (13)    William Nowicki

    (14)    Alec Parks

    (15)    Jeff Schroeder

    (16)    Tom Silvestri

    (17)    Phillip Vanasse

    (18)    Any other individuals who were or are currently employed by the CTA; and/or

    (19)    Any other individuals who were or are currently employed by Clever Devices;

and relating to:

    (i)    your claims as alleged in the Complaint;

    (ii)    the Counterclaim and any defenses you have asserted thereto;

    (iii)    your resignation in lieu of termination from CTA; and/or

    (iv)    your efforts to obtain employment outside of CTA.

**RESPONSE:**

4.      Any and all documents and/or communications referring or relating to your discovery of the Skeleton Key as alleged in Paragraphs 3, 33, and 34 of the Complaint.

**RESPONSE:**

5.      Any and all documents and/or communications referring or relating to your disclosure of the existence of the Skeleton Key to Michael Haynes as alleged in Paragraphs 4 and 37 of the Complaint.

**RESPONSE:**

6.      Any and all documents and/or communications referring or relating to your disclosure of the existence of the Skeleton Key to anyone other than Michael Haynes.

**RESPONSE:**

7.      Any and all documents and/or communications referring or relating to the use by you and/or Michael Haynes of the Skeleton Key on other cities' BusTime systems as alleged in the Complaint.

**RESPONSE:**

8.      Any and all documents and/or communications referring or relating to the use of the Skeleton Key to issue an alert on the BusTime system used by the Greater Dayton [Ohio] Regional Transit Authority (the "Dayton RTA") as alleged in Paragraphs 4, 38, and 39 of the Compliant.

**RESPONSE:**

9. Any and all documents and/or communications between you and Michael Haynes referring or relating to:

        (i)      the Skeleton Key;

        (ii)     the use of the Skeleton Key on the Dayton RTA BusTime system; and

        (iii)    the use or attempted use of the Skeleton Key on any other cities' BusTime system (*i.e.*, the "similar, but less visible tests" conducted on other BusTime systems as alleged in Paragraph 41 of the Complaint).

**RESPONSE:**

10. Any and all documents and/or communications showing your belief that the purpose of your alleged "reporting … the Skeleton Key (and [Michael] Haynes' use of it) was very much in keeping with their responsibility to maintain the security and safety of the CTA's system" as alleged in Paragraph 67 of the Complaint.

**RESPONSE:**

11. All documents and/or communications showing that you were authorized to use the Skeleton Key.

**RESPONSE:**

12. Any and all documents and/or communications referring or relating to your disclosure of the use of the Skeleton Key by you and/or Michael Haynes on the Dayton RTA BusTime system or any other cities' BusTime system to anyone at the CTA or Clever Devices.

**RESPONSE:**

10

13.     Any and all documents and/or communications showing your efforts to seek employment outside of the CTA during the period of January 1, 2016 through the present, including but not limited to job applications, application acceptance and/or rejection letters, resumes or CVs, inquiries to other employers and/or individuals relating to other employment opportunities, and/or communications to third parties expressing your desire to obtain employment outside of CTA.

**RESPONSE:**

14.     Any and all documents and/or communications relating to your efforts (whether actually implemented for any period of time, or otherwise) to encrypt CTA electronic devices that you used or had access to during the course of your employment with CTA, including without limitation through the use of Bitlocker, MotoKey, and/or your personal cell phone.

**RESPONSE:**

15.     Any and all documents and/or communications, including social media messages and/or posts (and including but not limited to messages sent, received, and/or posted in Facebook, LinkedIn, Instagram, Google Hangouts, Google+, Telegram, WhatsApp, Reddit, Slack, Skype, etc.), text messages, and emails referring or relating to your efforts to encrypt CTA electronic devices that you used or had access to during the course of your employment with CTA.

**RESPONSE:**

16.     Any and all documents and/or communications relating to your efforts (whether actually implemented for any period of time, or otherwise) to install a secondary drive and/or

11

partition a secondary drive on the computer(s) that you used or had access to during the course of your employment with CTA.

**RESPONSE:**

17.    Any and all documents and/or communications, including social media messages and/or posts (and including but not limited to messages sent, received, and/or posted in Facebook, LinkedIn, Instagram, Google Hangouts, Google+, Telegram, WhatsApp, Reddit, Slack, Skype, etc.), text messages, and emails relating to your efforts to install a secondary drive and/or partition a secondary drive on the computer(s) that you used or had access to during the course of your employment with CTA.

**RESPONSE:**

18.    Any and all documents and/or communications showing the complete imaging and/or forensic examination of the personal cell phone(s) that you used during the course of your employment with the CTA in 2018.

**RESPONSE:**

19.    Any and all documents and/or communications relating to your use of CTA electronic devices (including CTA computer(s)) for any purposes unrelated to the scope of your CTA employment, including without limitation all documents and/or communications relating to activities relating to mining, buying, and/or selling Bitcoin; activities relating to gaming and/or video games; activities relating to gambling; and/or activities relating to "hacking" or otherwise gaining unauthorized access to other software and/or computer systems and/or Networks.

**RESPONSE:**

20.     Any and all documents and/or communications relating to your recording of the November 8, 2018 meeting with CTA, including without limitation all documents and/or communications demonstrating all uses for and/or recipient(s) of the recording.

**RESPONSE:**

21.     Any and all documents and/or communications that you have drafted, issued, or otherwise prepared for any purpose and relating to your employment with CTA, including without limitation documents and/or communications relating to the discovery of the Skeleton Key, the use of the Skeleton Key upon various BusTime systems, the circumstances surrounding your departure from CTA, and/or your claims and defenses that are the subject of this litigation.

**RESPONSE:**

22.     All written reports and curriculum vitaes for each expert witness identified in response to Interrogatory No. 22.

**RESPONSE:**

23.     All documents relating to any damages claimed by Pable in this matter, including but not limited to the damages identified in Paragraphs 8 and 73 of the Complaint, and any damages identified in response to Interrogatory No. 21.

**RESPONSE:**

Dated:  September 15, 2020                        Respectfully submitted,

                                                 **Chicago Transit Authority**


                                         By:     s/ *Elizabeth E. Babbitt*
                                                 _____
                                                 One of its Attorneys

Elizabeth E. Babbitt
ebabbitt@taftlaw.com
John F. Kennedy
jkennedy@taftlaw.com
Allison E. Czerniak
aczerniak@taftlaw.com
Nicollette L. Khuans
nkhuans@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
111 E. Wacker Dr., Suite 2800
Chicago, IL 60601

# EXHIBIT F

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER GEORGE PABLE, | |
| *Plaintiff*, | Case No. 19-cv-7868 |
| v. | Judge Elaine E. Bucklo |
| CHICAGO TRANSIT AUTHORITY and CLEVER DEVICES LTD., | Magistrate Judge Sidney I. Schenkier |
| *Defendants*. | JURY DEMAND |
| | |
| CHICAGO TRANSIT AUTHORITY, | |
| Counter-Plaintiff, | |
| v. | |
| CHRISTOPHER GEORGE PABLE, | |
| Counter-Defendant. | |

## DEFENDANT/COUNTER-PLAINTIFF CHICAGO TRANSIT AUTHORITY'S FIRST INTERROGATORIES TO PLAINTIFF/COUNTER-DEFENDANT CHRISTOPHER PABLE

Pursuant to Federal Rule of Civil Procedure 33, Defendant Chicago Transit Authority ("CTA") propounds the following Interrogatories on Plaintiff/Counter-Defendant Christopher George Pable ("Pable"). Pable must serve his responses within 30 days of the date of service of these Requests. *See* Fed. R. Civ. P. 33(b)(2).

## INSTRUCTIONS

1. Pursuant to Federal Rule of Civil Procedure 26(e), the Interrogatories are continuing in nature and Pable has a duty to supplement or correct any answer with information

that would have been responsive had it been in existence or known to Pable at the time the answer was made.

2.     These Interrogatories are to be construed broadly to yield disclosure of as much relevant information as possible.

3.     Each Interrogatory shall be answered separately and fully. You must set forth in full each Interrogatory being answered immediately preceding the answer.  Where an Interrogatory calls for an answer in more than one part, separate the parts of your answer accordingly so that each part is clearly set forth and understandable.

4.     In answering these Interrogatories, include all information available to you, your representatives, agents, attorneys, and consultants without regard to the admissibility of such information in evidence.

5.     If you have only incomplete knowledge of the answer to an Interrogatory, you should:

   a.   answer to the extent of your knowledge;

   b.   state specifically what part or area of the Interrogatory you have only incomplete knowledge of; and

   c.   identify the person(s) who does or might have additional knowledge or information to complete the answer.

   d.   When the answer to an Interrogatory may be obtained from documents in your possession or control, it shall be a sufficient answer to the interrogatory to produce those documents response to the Interrogatory. If you elect to answer

2

an interrogatory by the production of documents, such production shall

comply with the requirements of Federal Rule of Civil Procedure 34, and you

must identify by Bates number the documents that are responsive to the

Interrogatory.

6. Unless otherwise stated, the time frame contemplated by these Requests is from January 1, 2018, through the present.

## DEFINITIONS

1. The terms "Pable," "you," or "your" mean Christopher George Pable and any attorney or other agent or representative of Pable.

2. "Communication(s)" shall mean any transmission of words or thoughts between or among two or more persons and includes, but is not limited to, spoken words, conversations, conferences, discussions, talks, and reports, whether transmitted in person or by any electronic device such as the telephone or facsimile, including text messages, emails, messages sent via messaging applications (including without limitation WhatsApp, Telegram, Slack, Skype, etc.) and/or messages sent and/or posted in social media applications (including without limitation Facebook, Instagram, Google Hangouts, Google+, Reddit, etc.) and "documents" as that term is defined below.

3. "Complaint" means the Complaint filed in this action by Pable on December 2, 2019, and any amendments thereto.

4. "Counterclaim" means the Counterclaim filed in this action by the CTA on August 3, 2020.

5.     "Describe in detail" means to provide a specific account of what is being stated or described, including where applicable, to identify: (i) each act that forms the basis of the contention, allegation, claim, or account that you are being asked to state or describe; (ii) all communications relating to each described act; (iii) the date or time period involved; (iv) the identity of each person from whom the information was learned; (v) the identity of each person who possesses knowledge of such information; (vi) who participated in or was present during the described act; (vii) what happened in chronological order relating to each identifiable event, response, or described act; (viii) the context or circumstances in which the occurrence took place; (ix) what response or reaction existed or occurred; and (x) the outcome of the event.

6.     "Documents" means all written, printed, typed, graphic, recorded or illustrative matter, computer memory, tapes or any other tangible thing by which information is contained, stored or displayed, of every kind or description, however produced or reproduced, whether draft or final, original or reproduction, signed or unsigned, and regardless of whether approved, signed, sent, received, redrafted, or executed, included but not limited to: written communications, email, messages sent via messaging applications (including without limitation WhatsApp, Telegram, Slack, Skype, etc.), messages sent and/or posted in social media applications (including without limitation Facebook, Instagram, Google Hangouts, Google+, Reddit, etc.), letters, words, numbers, pictures, sounds, symbols or any combination thereof, correspondence, envelopes, computer printouts, teletypes, texts, telecopies, memoranda of telephone conversations or personal conversations, diaries, calendars, interoffice communications, records, reports, studies, bills, receipts, checks, invoices, requisitions, tape or disk recordings, papers and forms filed with any court or governmental body, notes, transportation and expense logs or records, work papers, contracts, formal or informal memoranda of meetings, statistical and financial statements, charts,

4

graphs, reports or material similar to any of the foregoing, however denominated, by whomever prepared, and to whomever addressed, which are in your possession, custody or control or to which you have, have had or can obtain access. The word "documents" extends to data that is stored or maintained only in electronic format. Any document which contains any comment, notation, addition, insertion, or marking of any kind constitutes a document separate from the unmarked version. The word "documents" should be construed in the broadest sense possible in responding to these interrogatories.

7.    "Identify" when used in reference to an individual means to state: (1) the individual's full name, if known; (2) the individual's business or professional affiliation and official title; (3) the individual's last known business and home telephone numbers; and (4) the individual's last known business or home address.

8.    "Identify" when used in reference to an entity other than an individual means to state:  (1) the entity's official, legal and formal name and/or the name under which the entity acts or conducts business; (2) the address of the entity's principal place of business, profession or commerce; (3) any other address of the entity's place of business, profession or commerce; (4) if applicable, the name of any city, county, state or country in which the entity is incorporated or registered; and (5) the identity of the entity's principal officers and directors.

9.    "Identify" when used in reference to a contact, communication, or meeting means to state:  (1) the location of the contact, communication, or meeting; (2) the exact date of the contact, communication or meeting; (3) the identity of all persons present, including the full name, last known business address and home address, and home and business telephone number of each person; (4) the present position or title of each person present; (5) the position or title of each

person at the time referred to in the particular interrogatory; (6) the identity of all documents which relate to the meeting; and (7) the subject matter discussed.

10.     "Identify" when used in reference to a document means to state:  (1) the type of document (*i.e.*, letter, memorandum, chart, etc.) or some other means of identifying it; (2) the name or title of the document; (3) the number of pages in the document; (4) a general description of the content of the document; (5) the name and address of the person, firm, or organization who or which prepared the document; (6) the date on which the document was prepared; and (7) its present location and/or custodian. If any such document was, but is no longer in Pable's possession or subject to Pable's control, state what disposition was made of it.

11.     "Person" means any natural person, governmental body, corporation, partnership, joint venture, organization, association, company, special purpose vehicle, or any other form of business, professional or commercial enterprise or entity.

12.     "Relate to" or "relating to" means pertaining to, referring to, reflecting upon, evidencing, describing, mentioning, summarizing or being in any way legally, logically or factually connected with the matter discussed in the interrogatory.

13.     "Showing" means depicting, identifying, reflecting, or reporting.

## INTERROGATORIES

1.     Describe in detail each instance you allege you engaged in whistleblowing under the National Transit National Transit Systems Security Act.

**RESPONSE:**

2.      Describe in detail the circumstances surrounding your discovery of the Skeleton Key, including without limitation:

   (i)     why you were searching for the Skeleton Key;

   (ii)    the means through which you discovered the Skeleton Key, including the particular programs, specific electronic devices, web browsers, and/or tools that you used in doing so;

   (iii)   the time and date of your initial discovery of the Skeleton Key; and

   (iv)     all individuals you are aware of with knowledge of your search for, and initial discovery of, the Skeleton key, including the bases and extent of each identified individual's knowledge.

**RESPONSE:**


3.      Identify all individuals to whom you reported the existence of the Skeleton Key. For each individual identified, describe the disclosure in detail, including the time, means and content of the disclosure.

**RESPONSE:**


4.      Describe in detail your role in the use of the Skeleton Key to issue an alert on the BusTime system used by the Greater Dayton [Ohio] Regional Transit Authority (the "Dayton RTA") on August 17, 2018, including without limitation:

   (i)     the reason for using the Skeleton Key and/or issuing the alert on the Dayton RTA BusTime system;

   (ii)    the specific means by which the Skeleton Key was used and the alert was issued on the Dayton RTA BusTime system;

   (iii)   the particular programs, specific electronic devices, and/or tools that facilitated the use of the Skeleton Key and/or the issuance of the alert on the Dayton RTA BusTime system;

   (iv)    the results of the use of the Skeleton Key and the issuance of the alert on the Dayton RTA BusTime system; and

(v)      any other individuals involved in or with knowledge of the use of the Skeleton Key and/or the issuance of the alert on the Dayton RTA BusTime system, and the extent of their involvement and/or knowledge.

**RESPONSE:**

5.      Identify all individuals to whom you reported the use of the Skeleton Key to issue an alert on the BusTime system used by the Dayton RTA on August 17, 2018. For each individual identified, describe the disclosure in detail, including the time, means and content of the disclosure.

**RESPONSE:**

6.      Identify each and every time you and/or Michael Haynes attempted to use and/or successfully used the Skeleton Key to access all or part of any BusTime system. For each identified attempted and/or successful use of the Skeleton Key, describe in detail the circumstances of the attempted and/or successful use, including without limitation:

(i)      the name of the particular transit system in which you and/or Michael Haynes attempted to use and/or successfully used the Skeleton Key to access all or part of the affiliated BusTime system;

(ii)      the role you played in each attempted and/or successful use of the Skeleton Key;

(iii)      the reason for each attempt or successful use the Skeleton Key;

(iv)      the date(s) of each use or attempted use of the Skeleton Key; and

(v)      the particular programs, specific electronic devices, web browsers, and/or tools that facilitated the use or attempted use of the Skeleton Key.

**RESPONSE:**

7.      Identify all facts demonstrating that you were authorized to use the Skeleton Key.

**RESPONSE:**

8.      Describe in detail the circumstances surrounding the installation of a secondary and/or partitioned drive on the CTA computer that you used during the course of your CTA employment, including without limitation:

      (i)      the reason(s) for which the drive was installed and/or partitioned on the CTA computer;

      (ii)     the name(s) of any individuals who gave you authority or permission to install and/or partition the drive on the CTA computer;

      (iii)    the name(s) of any individuals who were aware of the installed and/or partitioned drive on the CTA computer;

      (iv)     the date(s) upon which the drive was installed and/or partitioned on the CTA computer; and

      (v)      the "standard tools" that you used to encrypt the secondary and/or partitioned drive as described in Timothy A. Duffy's March 25, 2020 letter to counsel for CTA in this matter.

**RESPONSE:**

9.      Describe in detail what was stored on the secondary and/or partitioned drive, and all the ways in which you utilized the secondary and/or partitioned drive, including without limitation all purposes related and unrelated to your employment with CTA.

**RESPONSE:**

10.     If you contend that you never installed a secondary and/or partitioned drive on the CTA computer that you used during the course of your CTA employment, identify:

      (i)      the individual(s) that installed a secondary and/or partitioned drive on the CTA computer;

      (ii)     the reason(s) for which the secondary and/or partitioned drive was installed on the CTA computer;

      (iii)    the date(s) upon which the secondary and/or partitioned drive on the CTA computer was installed; and

> (iv)   the ways in which you utilized the secondary and/or partitioned drive, including without limitation all purposes unrelated to your employment with CTA.

**RESPONSE:**

11.     Describe in detail all actions and/or steps that you took in order to encrypt all or part of the CTA computer that you used during the course of your employment, including without limitation:

> (i)    the means by which you encrypted the CTA computer, including without limitation through the use of Bitlocker, MotoKey, and/or your personal cell phone;
>
> (ii)   the specific steps one must take in order to fully decrypt and access the CTA computer;
>
> (iii)  the CTA employees that provided you with authorization to encrypt the CTA computer, if any; and
>
> (iv)   the CTA employees with knowledge of the encryption that you implemented on the CTA computer during the course of your employment with CTA.

**RESPONSE:**

12.     Describe in detail the process(es) and/or system(s) in place on the CTA computer that you used during the course of your employment with CTA that resulted in CTA's inability to access the computer once CTA placed you on administrative leave in October 2018.

**RESPONSE:**

13.     Identify all other current or former CTA employees that, to your knowledge, had the ability to access all or part of the information stored on the CTA computer that you used during the course of your employment (i.e., with the ability or information necessary to bypass any

encryption and/or password protections that you implemented), and whether each identified individual had such access with or without your consent.

**RESPONSE:**

14.     Describe in detail all your efforts to obtain employment outside of CTA both while employed by CTA and following your departure from CTA, including without limitation:

> (i)     all entities with whom you sought employment;
>
> (ii)    all individual(s) with whom you communicated regarding your desire to obtain employment outside of CTA, whether those individuals were employed by the non-CTA entities to which you applied or otherwise;
>
> (iii)   all steps that you took to obtain employment outside of CTA;
>
> (iv)    all job applications that you submitted for employment outside of CTA, including the date(s) of each application and the particular position(s) or role(s) for which you applied;
>
> (v)     all job offers and/or rejections that you received, including the date(s) of each offer and/or rejection;
>
> (vi)    the benefits associated with each job offer that you received, including salary/compensation and benefits;
>
> (vii)   the date(s) upon which you accepted or rejected each job offer that you received; and
>
> (viii)  your reasons for rejecting any job offers.

**RESPONSE:**

15.     Describe in detail all of your use(s) of CTA electronic devices (including CTA computer(s)) for any personal purposes and/or purposes unrelated to the job functions and responsibilities associated with your role as a Programmer/Analyst III for CTA, including without limitation activities relating to: mining, buying, and/or selling Bitcoin; gaming and/or video

games; gambling; social media platforms; and/or hacking" or otherwise gaining unauthorized access to other software, computer systems, and/or networks.

**RESPONSE:**

16. Identify whether you sought and/or received any medical treatment relating to your claims as alleged in the Complaint, including without limitation any surgeries, prescriptions, and/or therapies. If you answer in the affirmative, describe in detail:

> (i)  each type of medical treatment(s) that you received;
>
> (ii)  the reasons for which you sought and/or received each identified medical treatment, including specific diagnoses, medical opinions, test results, and/or evaluations;
>
> (iii)  the date upon which you first received each medical treatment;
>
> (iv)  all other dates upon which you received each medical treatment, if any;
>
> (v)  the date upon which the medical treatment concluded, or, if the medical treatment is ongoing, the date upon which you expect medical treatment to conclude; and
>
> (vi)  the name(s) of the individual(s) that administered each medical treatment.

**RESPONSE:**

17. Identify separately each type of damage that you are seeking in this matter, including each category of damages identified in Paragraph 8 of the Complaint and the Prayer for Relief in the Complaint, and for each, state the following:

> (i)  the basis for damages;
>
> (ii)  the nature of the damages;
>
> (iii)  the amount of the damages;
>
> (iv)  the specific manner in which the amount of damages was calculated; and

(v)      whether you have any documents reflecting the information provided in response to this Interrogatory and each of its subsections, including without limitation documents, medical records (including, but not limited to, psychiatric and psychological records), invoices, and/or receipts evidencing alleged salary reduction, loss of employment benefits, emotional distress, mental anguish, pain and suffering, expenses derived from the delay of your surgery, out-of-pocket costs incurred in the search for new employment, and all litigation costs.  If you answer in the affirmative, describe in detail all such documents.

**RESPONSE:**

18.      Identify separately each expert witness who is expected to or will express opinions at trial and, for each identified expert witness, state the following:

(i)      his or her qualifications and the nature of the subject matter; and

(ii)      all written reports containing the opinions of such named experts and their curriculum vitae.

**RESPONSE:**

19.      Identify any person who has, or claims to have, knowledge of the facts concerning the occurrences complained of in the Complaint and/or the Counterclaim, or who were, or claim to have been witnesses to the occurrences complained of in the Complaint and/or the Counterclaim.

**RESPONSE:**

20.      Identify each person who you may call as a witness at the trial of this action, including the subject matter upon which each witness will testify.

**RESPONSE:**

21.      Identify all means by which you currently communicate with and/or communicated with all of the individuals identified in your answers to each of these Interrogatories, including without limitation telephone conversations, email, text messages, and/or social media applications

(including but not limited to communications sent, received, and/or posted in Facebook, LinkedIn, Instagram, Google Hangouts, Google+, Telegram, WhatsApp, Reddit, Slack, Skype, etc.). For each identified means of communication, state all email addresses, telephone numbers, pseudonyms and/or usernames, and/or other means of identification affiliated with you.

Dated:  September 15, 2020

Respectfully submitted,

**Chicago Transit Authority**

By:  s/ *Elizabeth E. Babbitt*

One of its Attorneys

Elizabeth E. Babbitt
ebabbitt@taftlaw.com
John F. Kennedy
jkennedy@taftlaw.com
Allison E. Czerniak
aczerniak@taftlaw.com
Nicollette L. Khuans
nkhuans@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
111 E. Wacker Dr., Suite 2800
Chicago, IL 60601