**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| CHRISTOPHER GEORGE PABLE, | |
| *Plaintiff,* | Case No. 19-cv-7868 |
| v. | Judge Elaine E. Bucklo |
| CHICAGO TRANSIT AUTHORITY and CLEVER DEVICES LTD., | |
| *Defendants.* | |
| CHICAGO TRANSIT AUTHORITY, | |
| *Counter-Plaintiff,* | |
| v. | |
| CHRISTOPHER GEORGE PABLE, | |
| *Counter-Defendant.* | |

**CHICAGO TRANSIT AUTHORITY'S MOTION TO COMPEL PLAINTIFF TO PRODUCE HIS CELL PHONE FOR INSPECTION AND IMAGING AND RESPOND TO THE CTA'S REQUEST FOR PRODUCTION**

**Exhibit List**

| | |
|---|---|
| Exhibit A | March 18, 2020 Rule 37.2 Letter from E. Babbitt |
| Exhibit B | March 25, 2020 Rule 37.2 Letter from T. Duffy |
| Exhibit C | June 17, 2020 Email Correspondence from T. Duffy |
| Exhibit D | October 13, 2020 Rule 37.2 Letter from E. Babbitt |
| Exhibit E | October 15, 2020 written Responses to the CTA's First RFPs |
| Exhibit F | CTA's First RFPs |
| Exhibit G | October 24, 2020 Email Correspondence between E. Babbitt and T. Duffy |
| Exhibit H | December 2, 2020 Declaration of Nathan Binder |
| Exhibit I | P00134 |
| Exhibit J | November 24, 2020 Rule 37.2 Letter from E. Babbitt |
| Exhibit K | November 29, 2020 email correspondence from T. Duffy |
| Exhibit L | CTA's Third RFPs |
| Exhibit M | Plaintiff's written Response to CTA's Third RFPs |

# EXHIBIT A

**Elizabeth E. Babbitt**
Direct Dial: (312) 836-4116
*e*-Facsimile: (312) 966-8556
E-Mail: ebabbitt@taftlaw.com

**Taft /**

111 East Wacker, Suite 2800 / Chicago, Illinois 60601
Tel: 312.527.4000 / Fax: 312.527.4011
www.taftlaw.com

Reference No.: CTA03-GN007

March 18, 2020

**VIA EMAIL**
Timothy A. Duffy
Law Office of Timothy A. Duffy, P.C.
290 Shadowood Lane
Northfield, IL 60093
tduffy@tduffylaw.com

      **Re:**    *Christopher Pable v. CTA | Case No. 17 cv 7868*

Dear Counsel:

      This letter seeks to resolve numerous outstanding discovery issues pursuant to Local Rule 37.2. As an initial matter, and as discussed during the parties' Rule 26 teleconferences on March 5, 2020 ("March 5 conference") and on March 12, 2020 ("March 12 conference"), the CTA has identified certain deficiencies with Plaintiff's initial production made pursuant to the Mandatory Initial Discovery Pilot Program ("MIDPP"). The deficiencies in Plaintiff's MIDPP production indicate that Plaintiff has failed to preserve potentially relevant evidence. This is especially troubling given that Plaintiff has been under a duty to preserve all since the day he resigned from the CTA, as it was clear at that time that he was anticipating litigation against the CTA. *See* Fed. R. Civ. P. 37(e); *Cohn v. Guaranteed Rate, Inc.*, 318 F.R.D. 350, 354 (N.D. Ill. 2016). The CTA therefore reminds Plaintiff, once again, of his preservation obligations, which extends to all: (1) documents; (2) electronically stored information ("ESI"), including emails, shared files, cloud-based files, social media messages, and data sources; and (3) other tangible evidence, including any personal devices Plaintiff was using at the time of his resignation.

**Deficiencies in Plaintiff's MIDPP Production**

      Plaintiff's MIDPP production consisted of fourteen PDFs of various email strings and an audio file containing a recording Plaintiff apparently took during his resignation meeting. Based upon its initial review of the PDF documents provided by Plaintiff, the CTA believes this production is incomplete. By way of example, in P0000033, an email from Michael Haynes to Plaintiff and Trinity Haynes, Mr. Haynes states: "Just got your text Chris . . . ." Plaintiff has not produced any text messages relative to this litigation. During the March 12 conference, you stated that Plaintiff would search and produce any and all such text messages still in existence (*i.e.* not deleted by Plaintiff) and preserve the device on which any such messages would have been sent or received.

Timothy A. Duffy
March 18, 2020
Page 2

As another example of the deficiencies in Plaintiff's MIDPP production, P000032 is an email apparently sent to Ms. Haynes from Mr. Haynes's Gmail account. Plaintiff is nowhere copied or included on the email. It is unclear from the face of this document where the email came from or how it came to be in Plaintiff's possession (P000001 is another example of this). In this email, Mr. Haynes' includes an email from Tim Harrington that was sent to Mr. Haynes' CTA email account. Yet, a piece of the chain is missing—how did the email get from Mr. Haynes' CTA email account to his personal Gmail account? P000032 does not provide the information necessary to answer this question.

The CTA previously requested that Plaintiff produce all ESI in native format so as to allow the CTA access to the relevant metadata. The CTA renews this request. Native files are necessary for the CTA to determine the authenticity of these emails and assess the completeness of Plaintiff's production. The metadata contained in the native email files will also indicate whether there are replies or forwarded emails that Plaintiff has failed to produce. Plaintiff cannot simply "cherry-pick" those messages he deems responsive and not provide the CTA the full universe of potentially relevant evidence. Further, the native files are necessary to explain how Plaintiff came to be in possession of the emails, cited above, which only appear to have been sent to Mr. Haynes. Per the March 12 conference, Plaintiff has agreed to produce native files of Plaintiff's emails.

Finally, Plaintiff's MIDPP production contains only one email, P000053, actually sent by Plaintiff relating to the matters asserted in the Complaint. That only a single transmittal from Plaintiff exists strains credibility, particularly in light of the messages he received. The CTA has asked that Plaintiff conduct additional searches of his personal email account(s). As discussed during the March 12 conference, Plaintiff is willing to conduct another search of his email account(s) for the time period of June 1, 2018 through December 31, 2018. The CTA proposes the following terms for this search: "CTA" "BusTime" "BusTracker" "Clever" "CleverDevices" "Haynes" "Psomas" "Dayton" "Skeleton" "Key" "Silvestri" "Transit" "Coppoletta" and "Johnston". The CTA asks that, in addition to producing any and all email correspondence responsive to these searches (in native form), Plaintiff also describe the results, including hit counts, of these searches.

## Encryption of Plaintiff's CTA Hard Drive

As detailed in my March 4, 2020 email, and discussed during the March 5 conference, it has come to the CTA's attention that Plaintiff encrypted both drives on his CTA computer without the CTA's knowledge or consent, thereby preventing the CTA from accessing the data contained on its computer. It is our understanding that the CTA ultimately was able to decrypt Plaintiff's primary drive through a decryption key contained on a flash drive Plaintiff had left at his work station. Plaintiff never mentioned the encryption of his primary hard drive to the CTA, nor informed the CTA that the drive could be decrypted and accessed through use of the flash drive. Instead, Plaintiff demanded that the flash drive be returned to him following his resignation, without any indication as to its significance. *See* P000053.

Timothy A. Duffy
March 18, 2020
Page 3

Upon obtaining access to Plaintiff's primary drive, the CTA discovered that Plaintiff had further encrypted his secondary drive using an unknown software. To date, the CTA has been unable to decrypt Plaintiff's secondary drive and therefore cannot access the data stored there. The CTA has asked Plaintiff to immediately disclose the steps, passwords and any other code necessary to decrypt this drive, so that the CTA may have full access to its computer. During the March 5 conference, you explained that, according to Plaintiff, the decryption key for Plaintiff's secondary drive was saved on Plaintiff's cell phone. You further stated that when Plaintiff resigned from the CTA, the CTA "wiped" his cell phone and, in the process, deleted the decryption key. You were unclear as to whether the cell phone in question was a CTA-issued device or Plaintiff's personal cell phone. The CTA has since confirmed that Plaintiff was not issued a CTA phone. The CTA denies that it ever "wiped" Plaintiff's personal cell phone, or that Plaintiff ever informed it of the decryption key saved on this phone. In fact, the message Plaintiff produced (P000053) suggests that Plaintiff, himself, arranged for such information to be "wiped," again without the knowledge or consent of the CTA.

This remains an open issue. In order to more fully understand the circumstances surrounding Plaintiff's encryption of this secondary drive and to enable the CTA to access the data on this drive, the CTA requests that Plaintiff provide a written explanation of:

- The steps he used to encrypt his secondary drive, including by identifying the type of encryption he used and the devices utilized in the process;
- The steps, passwords, and any code necessary for the CTA to decrypt this drive;
- The materials Plaintiff stored on this secondary, encrypted drive;
- The reason this drive was encrypted by Plaintiff.

The CTA further requests that the cell phone Plaintiff alleges contained the decryption key be located and preserved for imaging.

**Imaging of Plaintiff's Personal Devices**

In light of the aforementioned deficiencies in Plaintiff's MIDPP production and your assertion that the decryption key for the secondary hard drive on Plaintiff's CTA computer was stored on Plaintiff's personal cell phone, the CTA believes imaging of Plaintiff's cell phone is necessary. Plaintiff's actions implicate concerns of spoliation of evidence. Imaging of Plaintiff's personal devices is required for the CTA to gain a complete picture of what occurred and to have full access over the data Plaintiff surreptitiously encrypted on the CTA's own computer. Moreover, imaging would be handled by a third-party vendor who would segregate Plaintiff's private information and limit the CTA's access only to information related to this litigation; therefore, Plaintiff would not be unduly prejudiced by this process.

Per our discussion during the March 12 conference, Plaintiff is amenable to this process relative to his "work profile" on his phone. The CTA maintains that it is entitled to an image of Plaintiff's entire cell phone, including his non-work related profile. Plaintiff's own production to date reflects the fact that he used his personal, non-CTA system to communicate about the facts of this case. Because the parties have already agreed to imaging a portion of the phone, the CTA's

26872469.1

Timothy A. Duffy
March 18, 2020
Page 4

request to image the complete phone does not unreasonably expand this request, nor does it burden Plaintiff. The parties can work with a third party vendor to protect Plaintiff's privacy interests relative to materials on his phone which have no bearing on this case. Accordingly, the CTA requests that Plaintiff cooperate with having the entirety of his personal cell phone imaged and search in accordance with the time frame and search terms detailed above.

To summarize, the CTA's understanding of the status of the above-identified issues, based on the parties' discussions, is as follows:

1.    Preservation of Plaintiff's personal devices – Agreed.
2.    Production of native files of Plaintiff's emails – Agreed.
3.    Additional search of Plaintiff's emails – Agreed; search terms proposed here by CTA pending agreement by Plaintiff.
4.    Detailed written explanation of manner in which Plaintiff decrypted the CTA computer and the secondary drive located on that computer – Pending.
5.    Imaging of "work profile" on Plaintiff's personal cell phone – Agreed; parties to agree on a vendor and appropriate search parameters.
6.    Imaging of Plaintiff's personal cell phone in its entirety – Pending.

We look forward to your prompt response to the above issues.

Sincerely,

TAFT STETTINIUS & HOLLISTER LLP

Elizabeth E. Babbitt

cc:    Via Email
John F. Kennedy
Allison E. Czerniak
Nicollette Khuans
Steven Jados

# EXHIBIT B

## Law Office of Timothy A. Duffy, P.C.

March 25, 2020

<u>Via Email</u>

Elizabeth E. Babbitt
Taft Stettinius & Hollister LLP
111 East Wacker Drive, Suite 2800
Chicago, Illinois 60601

Re:     *Pable v. CTA, et al.*, Case No. 17-cv-7868

Dear Elizabeth,

I write in response to your letter of March 18, 2020.  With respect to the issues listed at the end of your letter, we are agreed as to items 1, 2, and 5, as you indicate.  With respect to Item 3, we are also agreed and will plan on using the search terms you have listed.  That leaves two items, numbered 4 and 6.

In item 4 you ask for a "detailed written explanation of [the] manner in which Plaintiff decrypted the CTA computer and secondary drive located on that computer."  I think you meant to say "encrypted," but regardless I do not see the point of this request.  The fact is that the Mr. Pable used standard tools to encrypt the hard drive, pursuant to CTA policy.  His ability to access that information was compromised when the CTA, without any notice to or consultation with Mr. Pable, disabled his access to his "work" profile on his phone, wherein was stored the password that would allow access to the encrypted data.  Mr. Pable has been, and remains, willing and able to discuss the technical details of this with the CTA or its designee if they think it would be helpful in restoring access to the data, which he doubts.  The most efficient way to resolve this alleged issue is to have people who know what they are talking about have a conversation, not to have lawyers engaging in a game of "grapevine."

In Item 6 you seek the imaging of the "personal" profile on Mr. Pable's cell phone (in addition to the "work" profile).  As an initial matter, let me say that it may not be feasible to image and search one profile and not the other.  If that is the case, we will image and search the entire phone, so in that sense, this matter is perhaps not ripe for dispute.  Assuming the distinction between the two profiles can be respected, however, Mr. Pable does not agree to the imaging and search of his "personal" profile.  There is no reason to suspect that this effort will yield any relevant information.  Mr. Pable did not use his personal profile for communications related to the issues in this case, and all of the indications you cite only implicate information that may have existed in the "work" profile, not the "personal" profile.  I submit that the appropriate approach, for Mr. Pable (and any other person whose phone might have information relevant to the case) is that we need not collect, image, and search cell phones absent some indication, whether revealed in our respective collection efforts or in deposition testimony, that such efforts would likely yield relevant information.

Timothy A. Duffy
290 Shadowood Lane
Northfield, Illinois 60093
+1-847-530-4920
tduffy@tduffylaw.com

## Law Office of Timothy A. Duffy, P.C.

I am not going to undertake a detailed response to the numerous unsupported assertions, or the rhetoric and argument, in your letter, as most of it is irrelevant to the issues outlined in your final paragraph and above.

I will, however, address the wholly erroneous claim that Mr. Pable failed to preserve relevant evidence. To the contrary, the reason we cannot access the data you seek on the CTA hard drive and his cell phone is because the CTA unilaterally – and contrary to *its* obligation to preserve evidence in connection with its "investigation" into the events that led to Mr. Pable's termination – disabled all access to the cell phone data, which included the password to the hard drive.

Finally, the notion that Mr. Pable's MIDPP production was deficient is likewise baseless. Mr. Pable produced copies of the few relevant emails he had copies of on his personal Gmail account. He no longer has access to his CTA email, all of which is presumably available to the CTA, and none of which was produced in its MIDPP production. In any event, you have asked for another search and for the native files, to which Mr. Pable has agreed, so there is no issue here.

I remain available to discuss any of these issues prior to our status conference if you think it might be helpful.

Very truly yours,

Timothy A. Duffy

cc:    via Email
       John F. Kennedy
       Allison E. Czerniak
       Nicollette Khuans
       Steven Jados

# EXHIBIT C

| | |
|---|---|
| **From:** | Timothy Duffy <tduffy@tduffylaw.com> |
| **Sent:** | Wednesday, June 17, 2020 2:45 PM |
| **To:** | Babbitt, Elizabeth E. |
| **Cc:** | Jados, Steven; Czerniak, Allison E.; Kennedy, John; Khuans, Nicollette L. |
| **Subject:** | Re: Pable v. CTA & Clever Devices -- Revised Draft Status Report [IWOV-Active.FID920631] |

Counsel,

As I explained, there is no issue because plaintiff has already made his production and we are now simply talking about supplementing it, not the 40-day deadline. But we don't need to see eye to eye on that; we just need to agree with the document being filed. Do you have any additional changes?

Thanks,

Tim


Timothy A. Duffy
Timothy A. Duffy, P.C.
290 Shadowood Ln
Northfield, IL 60093
+1-847-530-4920
tduffy@tduffylaw.com


On Jun 17, 2020, at 15:37, Babbitt, Elizabeth E. <ebabbitt@taftlaw.com> wrote:

Counsel: the deadline could be moved by an order of the Court. The MIDP provides for the deadlines we have included in this status report. If Plaintiff wishes for the Court to extend the deadline, the Plaintiff must so move the Court. That is one of the primary distinctions between an MIDP case and traditional Rule 26 scheduling reports. Simply sliding in a new deadline that is not consistent with what is mandated by the MIDP Standing Order without providing sufficient notice to the Court is not acceptable to CTA. And, while Plaintiff has mentioned moving the date previously, CTA has never agreed to such an extension, and certainly not without leave of Court.

Elizabeth

**From:** Timothy Duffy <tduffy@tduffylaw.com>
**Sent:** Wednesday, June 17, 2020 2:25 PM
**To:** Babbitt, Elizabeth E. <ebabbitt@taftlaw.com>
**Cc:** Jados, Steven <SJados@salawus.com>; Czerniak, Allison E. <aczerniak@taftlaw.com>; Kennedy, John <jkennedy@taftlaw.com>; Khuans, Nicollette L. <NKhuans@taftlaw.com>
**Subject:** Re: Pable v. CTA & Clever Devices -- Revised Draft Status Report [IWOV-Active.FID920631]

Counsel,

The 40-day deadline is not immovable. If we propose, and the Court enters, a schedule that provides for a different date, there is no issue.

If you want to produce on June 29th, that's great, but I am also fine with August 1.

Plaintiff has already made an ESI production, and has agreed to supplement at your request, and will do so by August 1. If that's not quick enough for you, you can raise that with the Court (though I would note that that date has been on the table for some time without objection from you).

Regardless, it does not make sense to have two entries on the schedule that say the same thing. If we keep both dates, I suggest we insert the word "initial" in the first and "supplemental" in the second, as I've done on the current draft showing non-formatting changes since the last comments by Steve.

Thanks,

Tim

Timothy A. Duffy
Timothy A. Duffy, P.C.
290 Shadowood Ln
Northfield, IL 60093
+1-847-530-4920
tduffy@tduffylaw.com

On Jun 17, 2020, at 14:20, Babbitt, Elizabeth E. <ebabbitt@taftlaw.com> wrote:

Counsel:

The Court's standing order on the MIDPP requires "[u]nless the Court orders otherwise, a party must produce the ESI . . . within 40 days after serving its initial written responses. (Am. Standing Order Regarding MIDPP ¶ C(2)(c).) CTA served its written responses (as did Plaintiff and Clever Devices), and in light of the court's COVID-19 orders, the current deadline to produce ESI required under the MIDPP is June 29, 2020, hence the inclusion of that date in the proposed discovery schedule.

CTA will produce the ESI it identified in its MIDPP initial disclosures on June 29, 2020, as required under the order. In short, the CTA is not delinquent on any production of ESI.

As the MIDPP is "mandatory," it does not provide for extensions to the deadlines set therein (the only discussion of an extension in the order refers to deferring initial discovery responses "one time, for 30 days if the parties jointly certify to the Court that they are seeking to settle the case and have a good faith belief that it will be resolved

within 30 days of the due date of their responses" – something inapplicable here).  If Plaintiff requires an extension he should move the Court for leave to extend.

The CTA will add a counterclaim on or before August 1, 2020.

The CTA agrees that the employees contemplated in 2(B) are the same individuals identified in 2(D).

Elizabeth

---

**From:** Timothy Duffy <tduffy@tduffylaw.com>
**Sent:** Wednesday, June 17, 2020 12:46 PM
**To:** Babbitt, Elizabeth E. <ebabbitt@taftlaw.com>
**Cc:** Jados, Steven <SJados@salawus.com>; Czerniak, Allison E. <aczerniak@taftlaw.com>; Kennedy, John <jkennedy@taftlaw.com>; Khuans, Nicollette L. <NKhuans@taftlaw.com>
**Subject:** Re: Pable v. CTA & Clever Devices -- Revised Draft Status Report [IWOV-Active.FID920631]

Counsel:

1.  I agree that the "employees" discussed in 2D are, like the individuals discussed in 2B, the persons listed on anyone's initial disclosures.  I don't think we need to add any words to that effect in either place, as we have confirmed our understanding of the scope via these emails.

2.  I don't think the paragraph about potential discovery issues is appropriate, but if you want to keep it in, I need to add the following:  "Defendants failed to produce any ESI in connection with their Mandatory Initial Disclosures.  Accordingly, Plaintiff reserves its right to raise any issues with respect to Defendants' compliance with respect to their MIDP productions following receipt and review thereof."

3.  Given the CTA's statement that it intends to amend its answer and assert a counterclaim, we should put a date for that in the schedule.  You can pick it, but if it is later than August 1, we should push back the deadlines later than (starting with the fact witness deposition window) by the length of time the amendment date is later than August 1.

4.  You inserted a date for ESI production of June 29 — but that deadline was already there at August 1.  June 29 is too soon, and I suggest we keep the August 1 date.

Let me know your thoughts,

Tim

Timothy A. Duffy
Timothy A. Duffy, P.C.
290 Shadowood Ln
Northfield, IL 60093
+1-847-530-4920
tduffy@tduffylaw.com

On Jun 16, 2020, at 22:02, Babbitt, Elizabeth E.
<ebabbitt@taftlaw.com> wrote:

Thank you.

**From:** Timothy Duffy <tduffy@tduffylaw.com>
**Sent:** Tuesday, June 16, 2020 8:53 PM
**To:** Babbitt, Elizabeth E. <ebabbitt@taftlaw.com>
**Cc:** Jados, Steven <SJados@salawus.com>; Czerniak, Allison E.
<aczerniak@taftlaw.com>; Kennedy, John <jkennedy@taftlaw.com>;
Khuans, Nicollette L. <NKhuans@taftlaw.com>
**Subject:** Re: Pable v. CTA & Clever Devices -- Revised Draft Status Report
[IWOV-Active.FID920631]

Yes.  I have not had a chance to review what was sent today, but
will tomorrow and will let you know if I have any issues, but will
otherwise prepare the document for filing and do that when we
finalize (by Friday if not before).

Timothy A. Duffy
Timothy A. Duffy, P.C.
290 Shadowood Ln
Northfield, IL 60093
+1-847-530-4920
tduffy@tduffylaw.com

On Jun 16, 2020, at 21:50, Babbitt, Elizabeth E.
<ebabbitt@taftlaw.com> wrote:

Steve: CTA has no objection to these edits.

We have no further changes to the report; Tim, will you
be filing?

Elizabeth

# Taft /

Partner
ebabbitt@taftlaw.com
Dir: 312.836.4116
Tel: 312.527.4000  |  Fax: 312.966.8556
111 E. Wacker Drive, Suite 2800
Chicago, Illinois 60601-3713

**Taft Bio**
**Download vCard**
**taftlaw.com**

---

**From:** Jados, Steven <SJados@salawus.com>
**Sent:** Tuesday, June 16, 2020 5:16 PM
**To:** Czerniak, Allison E. <aczerniak@taftlaw.com>;
Timothy Duffy <tduffy@tduffylaw.com>; Kennedy, John
<jkennedy@taftlaw.com>; Babbitt, Elizabeth E.
<ebabbitt@taftlaw.com>
**Cc:** Khuans, Nicollette L. <NKhuans@taftlaw.com>
**Subject:** RE: Pable v. CTA & Clever Devices -- Revised
Draft Status Report [IWOV-Active.FID920631]

Counsel,

Using the clean version of the Taft revisions, I made
minor revisions in redline in the attached.

Steve

**Steven Jados**
Partner
**COVID-19 Resource**
**Center: https://www.salawus.com/practices-covid19-**
**task-force.html**
**Smith**Amundsen LLC
3815 East Main Street, Suite A-1, St. Charles, Illinois  60174
☎ Phone (630) 587-7934 | Fax (630) 587-
7349 | ✉ SJados@salawus.com | 🌐 http://www.salawus.com

 Please consider the environment before printing this e-mail

This message is intended only for the individual or entity to which it is
addressed and may contain information that is attorney work product,
privileged, confidential and/or exempt from disclosure under applicable law.
If the reader of this message is not the intended recipient, you are hereby
notified that any dissemination, distribution or copying of this
communication is strictly prohibited. If you have received this
communication in error, please notify us immediately by telephone and
return the original message to us at the above address via email or the
United States Postal Service. Thank you.

---

**From:** Czerniak, Allison E.
[mailto:aczerniak@taftlaw.com]

**Sent:** Tuesday, June 16, 2020 4:21 PM
**To:** Timothy Duffy; Jados, Steven; Kennedy, John; Babbitt, Elizabeth E.
**Cc:** Khuans, Nicollette L.
**Subject:** RE: Pable v. CTA & Clever Devices -- Revised Draft Status Report

Attached is a redline and clean version of the revised version of the draft status report reflecting Taft's edits to the version circulated by Plaintiff last Friday.

In regards to the highlighted portions of the report: Taft is in agreement with the point raised in 2(B). We are also in agreement with the highlighted point in 2(D) in principle, but think it would be helpful to define the relevant employees to whom this applies (i.e., the individuals identified in the parties' respective initial disclosures).

The CTA is not interested in a settlement conference at this stage, and has revised the draft report accordingly.

Please let us know if you have any questions or would like to discuss.

Allie

**Taft /**

**Allison E. Czerniak**
Attorney
aczerniak@taftlaw.com
Dir: 312.840.4487
Tel: 312.527.4000  |  Fax: 312.966.8584
111 E. Wacker Drive, Suite 2800
Chicago, Illinois 60601-3713

**taftlaw.com**

To receive regular COVID-19 updates from Taft, subscribe here. For additional resources, visit Taft's COVID-19 Resource Toolkit.

This message may contain information that is attorney-client privileged, attorney work product or otherwise confidential. If you are not an intended recipient, use and disclosure of this message are prohibited. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

**From:** Timothy Duffy <tduffy@tduffylaw.com>
**Sent:** Friday, June 12, 2020 10:38 AM

**To:** Czerniak, Allison E. <aczerniak@taftlaw.com>;
Jados, Steven <SJados@salawus.com>; Kennedy, John
<jkennedy@taftlaw.com>; Babbitt, Elizabeth E.
<ebabbitt@taftlaw.com>
**Subject:** Re: Pable v. CTA & Clever Devices -- Revised
Draft Status Report

Counsel,

I wanted to give you an update. We have imaged
Mr. Pabel's cell phone and are in the process of
running the search terms without regard to any
distinction between his personal and work profiles,
so that issue has been resolved or at least made
simpler. I've attached a revised drat status report
(highlighting the paragraph I changed
accordingly). I will need your responses/positions
on the other highlighted items and any comments or
proposals with respect to the schedule.

Thank you,

Tim


Timothy A. Duffy
Timothy A. Duffy, P.C.
290 Shadowood Ln
Northfield, IL 60093
+1-847-530-4920
tduffy@tduffylaw.com


On Jun 1, 2020, at 09:30, Timothy
Duffy <tduffy@tduffylaw.com>
wrote:

<DRAFT 2020.06.01 Joint Initial
Status Report .docx>

# EXHIBIT D

**Taft /**

**Elizabeth E. Babbitt**
Direct Dial: (312) 836-4116
*e*-Facsimile: (312) 966-8556
E-Mail: ebabbitt@taftlaw.com

111 East Wacker, Suite 2800 / Chicago, Illinois 60601
Tel: 312.527.4000 / Fax: 312.527.4011
www.taftlaw.com

Reference No.: CTA03-GN007

October 13, 2020

**VIA EMAIL**
Timothy A. Duffy
Law Office of Timothy A. Duffy, P.C.
290 Shadowood Lane
Northfield, IL 60093
tduffy@tduffylaw.com

      **Re:**    *Christopher Pable v. CTA / Case No. 19 cv 7868*

Dear Counsel:

      This letter seeks to resolve outstanding discovery issues pursuant to Local Rule 37.2. Several of these issues were brought to your attention as early as March 2020 during the Parties' Rule 26 teleconferences on March 5 (the "March 5 Conference") and March 12 (the "March 12 Conference"), and through CTA's Local Rule 37.2 correspondence to you dated March 18, 2020 (the "March 18 Letter"). The CTA also identified certain deficiencies described below in the Parties' June 18, 2018 Rule 26(f) joint status report (Dkt. No. 27), the Parties' September 23, 2020 joint status report (Dkt. No. 35), and the CTA's September 23, 2020 motion to extend the close of written discovery (Dkt. No. 36). In light of the deficiencies that detailed herein, the CTA requests that Plaintiff supplement his production to include the following:

- All relevant emails for the entirety of the Parties' agreed-upon time period (June 1, 2018 through December 31, 2018) in their native format;

- A report describing the results, including hit counts, of the email searches that you agreed to in your March 25, 2020 letter, with verification from Plaintiff that he searched his email account(s) and communication applications using the agreed-upon search parameters and produced all emails and communications responsive to those parameters;

- Unitized and bates-labeled photographs of the cell phone, where each unit is separated by conversation thread;

- All relevant messages sent and received by Plaintiff, via any means or application, for the entirety of the Parties' agreed-upon time period (June 1, 2018 through December 31, 2018) in their native format;

- Identification of all messaging applications used by Plaintiff during the agreed-upon time period, including the specific messaging application Plaintiff used to message Sarah Cochran as shown in the screenshot produced by Plaintiff (*see* P0001419-010);

- All relevant messages or posts that Plaintiff sent, received, or created via any social media application; and

- A complete and searchable forensic image of Plaintiff's cell phone.

Timothy A. Duffy
October 13, 2020
Page 2

**Plaintiff's March 2020 MIDPP Production Deficiencies.**

The CTA's March 18 Letter identified certain deficiencies with Plaintiff's initial production of March 2020 made pursuant to the Mandatory Initial Discovery Pilot Program ("MIDPP") (the "March 2020 MIDPP Production"). Specifically, and among other things, the March 18 Letter:

- Noted that Plaintiff's March 2020 MIDPP Production did not include any text messages relative to the litigation, even though email correspondence produced by Plaintiff specifically referenced relevant text messages sent by Plaintiff (see, e.g., P0000033 (email from Michael Haynes to Plaintiff and Trinity Haynes, wherein Mr. Haynes states: "Just got your text Chris . . ."));

- Proposed a search of Plaintiff's email account(s) for the time period of June 1, 2018 through December 31, 2018, utilizing certain specifically-identified search terms, and requested that, in addition to producing any and all email correspondence responsive to these searches (in native form), Plaintiff also report the results, including hit counts, of these searches (the "Agreed Search Protocol");

- Requested that the Plaintiff's cell phone be preserved and imaged by a third-party vendor, and that CTA be provided a copy of the complete image of Plaintiff's cell phone;

- Reminded Plaintiff of his duty to preserve all relevant evidence, including all: documents, electronically stored information ("ESI"), and other tangible evidence (including personal devices) since the day he resigned from the CTA; and

- Renewed the CTA's ongoing request that Plaintiff produce all ESI in native format so as to allow the CTA access to the relevant metadata.

**Plaintiff's July 2020 MIDPP ESI Production Deficiencies.**

On July 30, 2020, Plaintiff made an ESI production pursuant to the MIDPP (the "July 2020 ESI Production"). As detailed below, Plaintiff's July 2020 ESI Production did not cure all of the previously-identified deficiencies in Plaintiff's initial production.

***Deficiencies Pertaining to Emails from Plaintiff's Personal Gmail Account.***

Despite your agreement to the search parameters of June 1, 2018 through December 31, 2018 as memorialized in your letter of March 25, 2020, Plaintiff's July 2020 ESI Production does not include any emails that were sent or received by Plaintiff on or before August 20, 2018, including any emails from August 17, 2018 – the date upon which the Skeleton Key was used to access the Dayton RTA's BusTime system. The events of August 17, 2018, and the preceding days, are undoubtedly integral to this case. As it stands, Plaintiff's email production appears to be incomplete.

Timothy A. Duffy
October 13, 2020
Page 3

Additionally, Plaintiff did not include in his July 2020 ESI production a report of the hit counts for the Parties' agreed-upon email searches. The CTA expressly requested this information in its March 18 Letter, and you agreed to these parameters in your March 25, 2020 response. The CTA requires this information in order to assess the completeness of Plaintiff's July 2020 MIDPP ESI Production.

In light of the forgoing deficiencies, the CTA requests that Plaintiff supplement his July 2020 ESI production to include:

- All relevant emails and communications (as discussed in more detail below) for the entirety of the Parties' agreed-upon time period (June 1, 2018 through December 31, 2018) in their native format, or, in the alternative, that Plaintiff indicate in writing that no additional relevant emails and/or communications exist for the entirety of the Parties' agreed-upon time period; and

- A report describing the results, including hit counts, of the email searches that you agreed to in your March 25, 2020 letter, and a written statement verifying that Plaintiff searched his email account(s) and communication applications using the Agreed Search Protocol and produced all emails and communications responsive to the Agreed Search Protocol.

***Deficiencies Pertaining to Google Hangout Messages.***

The messages sent and received by Plaintiff via the Google Hangouts application as produced by Plaintiff in his July 2020 ESI Production span the time period of July 28, 2018 through December 3, 2018. Additionally, the Agreed Search Protocol should apply to all of Plaintiff's communications, including those exchanged in Google Hangouts. Nonetheless, Plaintiff's July 2020 ESI Production does not include any messages that were sent or received by Plaintiff on August 17, 2018. As detailed above, the absence of any communications on August 17, 2018 indicates that Plaintiff's July 2020 ESI Production is incomplete.

Moreover, the Google Hangouts messages produced by Plaintiff only include a total of 18 messages exchanged by and between Plaintiff and Mr. Haynes – and those messages were all exchanged on July 28, 2018. When coupled with the fact that Plaintiff did not produce any other text messages or their equivalents by and between Plaintiff and Mr. Haynes in his July 2020 ESI Production (see below), this observation also demonstrates that other relevant messages – whether sent via Google Hangouts, or otherwise – exist, but have been withheld from production.

***Deficiencies Pertaining to Other Messages Sent and Received by Plaintiff.***

Plaintiff also produced 73 photographs of a Motorola cell phone depicting messages exchanged through a Google Hangouts application on the cell phone, and through an encrypted messaging application called "Signal." Approximately 34 of the photographs appear to depict incomplete but duplicative portions of the Google Hangout conversations as separately produced by Plaintiff in an extracted Excel spreadsheet format. The remaining photographs appear to depict

Timothy A. Duffy
October 13, 2020
Page 4

partial threads of messages sent and received in the Signal application. This aspect of Plaintiff's July 2020 ESI Production is deficient in several respects.

First and foremost, using a camera to take photograph "images" of a cell phone is not the same as forensic "imaging" of a device. Even though Plaintiff indicated on June 12, 2020 that the entirety of Plaintiff's cell phone had been imaged, and that Plaintiff was "in the process of running the search terms [on the cell phone] without regard to any distinction between his personal and work profiles," Plaintiff has not produced any relevant results of that imaging process. Plaintiff's production of certain photographs of an unidentifiable cell phone falls well short of the Parties' agreement, the MIDPP ESI production protocol, and Plaintiff's discovery obligations.

The CTA is unable to determine the source of the photographed messages. The owner of the pictured cell phone is unknown; the photographer of these photographed messages is also unknown. Moreover, the CTA is without any information as to when these pictures were taken and how that photographer determined which portions of the depicted conversation are relevant to this case. The majority of the photographs also do not indicate the exact dates and times upon which the messages were sent and received. Several of the messaging threads depicted in the photographs are obscured by overlaying text boxes that fully or partially obstruct the contents of underlying messages. The form of the production presents obvious authentication issues. These deficiencies would all be cured by producing Plaintiff's various messages in a searchable format resulting from a proper forensic imaging of the cell phone.

Moreover, the photographed messages have not been produced in a format that is consistent with the MIDPP protocol or the Parties' ESI protocol as discussed during the March 5 Conference and March 12 and the March 12 Conference. Specifically, Plaintiff in his July 2020 ESI Production did not produce unitized, bates labeled photographs of the cell phone; rather, Plaintiff produced: (i) a single 73-page PDF comprised of 73 bates labeled photographs; and (ii) individual photographs without bates labels, each of which appears to be duplicative of a photograph that is included in the 73-page PDF. The CTA raised this deficiency to you in its emails of September 29, 2020 and October 8, 2020. Although Plaintiff tendered replacement production sets to the CTA on October 3, 2020 and October 8, 2020 to address other deficiencies in Plaintiff's production format, neither of the replacement production sets have cured the deficiency specific to the cell phone photographs.

Finally, and even setting aside Plaintiff's insufficient production method, it is still apparent that the production pertaining to Plaintiff's messages is incomplete. For instance, even though it is clear from one photograph that Plaintiff (apparently) exchanged messages with an individual appearing to be identified as Mr. Haynes as recently as January 5, 2019 (*see* P001360), Plaintiff only produced photographs depicting 17 such messages exchanged between Plaintiff and Mr. Haynes via Google Hangouts on July 28, 2018 (P001360 - P001366).[1] The photographs of the cell phone show partial messages at the start and end of the July 28, 2018 thread, further indicating that other messages involving Mr. Haynes have been withheld from production. Additionally, the

---

[1] The Excel spreadsheet of Google Hangouts messages includes a total of 18 messages exchanged on July 28, 2018 by and between Plaintiff and Mr. Haynes.

Timothy A. Duffy
October 13, 2020
Page 5

photographs of the cell phone include Google Hangouts messages that are not reflected in Google Hangouts Excel spreadsheet.

In light of the forgoing deficiencies, the CTA requests that Plaintiff supplement his July 2020 ESI Production to include:

- Unitized and bates-labeled photographs of the cell phone, where each unit is separated by conversation thread; and

- All relevant messages sent and received by Plaintiff on the cell phone, via any means or application, for the entirety of the parties' agreed-upon time period (June 1, 2018 through December 31, 2018) in their native format, or, in the alternative, that Plaintiff indicate in writing that no additional messages exist.

***Other July 2020 ESI Production Deficiencies.***

Plaintiff's July 2020 ESI Production is deficient in several other ways. For instance, Plaintiff's March 18 Letter specifically noted Plaintiff's production of an August 24, 2018 email sent by Mr. Haynes to Plaintiff and Trinity Haynes discussing the Skeleton Key, wherein Mr. Haynes writes, "(Just got your text Chris…)." Despite this clear reference to a contemporaneous text message from Mr. Haynes to Plaintiff regarding the facts at the heart of this litigation, Plaintiff failed to produce these messages in either his March 2020 MIDPP Production or in his July 2020 ESI Production. Indeed, and as detailed above, the only non-email messages exchanged by and between Plaintiff and Mr. Haynes that have been produced to date were all sent on July 28, 2018.

Additionally, Plaintiff's July 2020 ESI Production includes a screenshot of what appears to be a text message by and between Plaintiff and Sarah Cochran, a CTA employee, that related to the subject matter of this litigation (*see* P0001419-010). The message appears to have been received by Plaintiff on a messaging application other than Google Hangouts or Signal. As a result, the CTA has reason to believe that additional responsive messages sent and received by Plaintiff on this third, unidentified messaging application that are relevant to this litigation exist.

In light of the forgoing deficiencies, the CTA requests that Plaintiff supplement his July 2020 ESI Production to include:

- The identification of all messaging applications used by Plaintiff during the relevant time period, including the specific messaging application Plaintiff used to message Sarah Cochran as shown in the screenshot produced by Plaintiff; and

- All relevant messages or posts that Plaintiff sent, received, or created via any social media application, or, in the alternative, that Plaintiff indicate in writing that no such relevant messages or posts exist.

Timothy A. Duffy
October 13, 2020
Page 6

**Plaintiff's Production Deficiencies Require the Production of the Complete Image of Plaintiff's Phone.**

These deficiencies raise serious concerns surrounding spoliation of evidence, deficient search protocols, and Plaintiff's failure to produce relevant materials. The CTA requests that Plaintiff supplement his incomplete July 2020 ESI Production by producing a complete and searchable forensic image of Plaintiff's cell phone.

The CTA requires a complete image of Plaintiff's cell phone to fully account for the relevant information that is clearly missing from Plaintiff's productions to date, and to ensure that all responsive information on the device is discovered and produced. Plaintiff's cell phone is also directly at issue in this litigation. The CTA's counterclaim alleges that Plaintiff used his cell phone to impermissibly encrypt various components of the CTA computer he used during the course of his CTA employment. As a result, the CTA's review of a complete image of Plaintiff's cell phone is the best evidence—and really the only way—to evaluate this claim. For these reasons, the CTA's request comports with the Court's recent guidance as to the forensic imaging of personal devices. *See, e.g.*, *Belcastro v. United Airlines, Inc.*, 2019 WL 7049914 (N.D. Ill. Dec. 23, 2019) (finding that the forensic examination of the plaintiff's cell phone, laptop, and hard drive was warranted in order to ensure that all responsive documents were discovered and produced "because the evidence shows that plaintiff lacks the expertise to search and retrieve all relevant data from his devices"). The CTA expects that Plaintiff can easily comply with this request given Plaintiff's representation that the cell phone was imaged in its entirety in June 2020.

We look forward to your prompt response to the above issues.

Sincerely,

TAFT STETTINIUS & HOLLISTER LLP

Elizabeth E. Babbitt

cc: Via Email
John F. Kennedy
Allison E. Czerniak
Nicollette Khuans
Steven Jados

# EXHIBIT E

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **CHRISTOPHER GEORGE PABLE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 1:19-cv-7868** |
| | ) | |
| **v.** | ) | **Judge Elaine E. Bucklo** |
| | ) | |
| **CHICAGO TRANSIT AUTHORITY and CLEVER DEVICES LTD.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| **CHICAGO TRANSIT AUTHORITY,** | ) | |
| | ) | |
| **Counter-Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CHRISTOPHER GEORGE PABLE,** | ) | |
| | ) | |
| **Counter-Defendant.** | ) | |

**PABEL'S RESPONSES AND OBJECTIONS TO CHICAGO TRANSIT AUTHORITY'S
FIRST SET OF REQUESTS FOR PRODUCTION**

Plaintiff/Counter-Defendant Christopher George Pable responds and objects to Defendant/Counter-Plaintiff Chicago Transit Authority's ("CTA's") First Set of Requests to Plaintiff for Production as follows:

## <u>GENERAL OBJECTIONS</u>

1. Pable objects to the CTA's instructions, definitions, and other prefatory provisions to the extent they impose any meaning or interpretation on the CTA's requests beyond the plain and ordinary sense of the words used in the requests in the context of the provisions of the Federal Rules of Civil Procedure and the Local Rules of the Northern District of Illinois.

2.     Pable objects to the CTA's instructions, definitions, and other prefatory provisions to the extent they impose any obligation on Pable in excess of or different from the requirements of the Federal Rules of Civil Procedure, the Local Rules of the Northern Disrtict of Illinois, and the Orders issued by this Court in this case.

3.     Pable objects to the Time Period for which the CTA requests documents as inconsistent with the parties' agreement to limit discovery to the period June 1, 2018 through December 31, 2018, with the exception of documents relevant to Pable's damages to the extent such damages have accrued or become ascertainable after December 31, 2018.

4.     Pable objects to the CTA's request for information relating to any claim of privilege inconsistent with the parties' anticipated mutual agreement to exchange such information on an agreed-upon date.  All of Pable's specific responses and objections should be understood to not encompass documents withheld on the basis of privilege.

## SPECIFIC RESPONSES AND OBJECTIONS

**Document Request No. 1**

All documents received in response to any subpoena issued by Pable or his counsel.

**Response to Document Request No. 1**

No such documents exist.

**Document Request No. 2**

Any and all documents and/or communications relating to your employment at the CTA in your possession, including any and all documents maintained by you in a physical file and/or on your personal computer(s), cell phone(s), hard drive(s), or other electronic device(s).

**Response to Document Request No. 2**

Subject to the relevant time period as agreed to by the Parties, and subject to Pable's continuing accrual of and anticipated supplementation of his discovery responses with respect to damages, Pable has produced any such documents.

**Document Request No. 3**

Any and all documents and/or communications, including social media messages and/or posts (and including but not limited to messages sent, received, and/or posted in Facebook, LinkedIn, Instagram, Google Hangouts, Google+, Telegram, WhatsApp, Reddit, Slack, Skype,

etc.), text messages, and emails by and between yourself and any other combination of the following individuals

       (1) Alex Bauer

       (2) Xopher Barnett

       (3) Sarah Cochran

       (4) Tony Coppoletta

       (5) Katie Gray

       (6) Michael Haynes

       (7) Trinity Haynes

       (8) Natalie Jasien

       (9) Jackie Johnston

       (10) Susan Kim

       (11) Chris Langer

       (12) Sydney Moy

       (13) William Nowicki

       (14) Alec Parks

       (15) Jeff Schroeder

       (16) Tom Silvestri

       (17) Phillip Vanasse

       (18) Any other individuals who were or are currently employed by the CTA; and/or

       (19) Any other individuals who were or are currently employed by Clever Devices;

and relating to:

       (i) your claims as alleged in the Complaint;

3

(ii) the Counterclaim and any defenses you have asserted thereto;

(iii) your resignation in lieu of termination from CTA; and/or

(iv) your efforts to obtain employment outside of CTA.

**Response to Document Request No. 3**

Subject to the relevant time period as agreed to by the Parties, and subject to Pable's continuing accrual of and anticipated supplementation of his discovery responses with respect to damages, Pable has produced any such documents.

**Document Request No. 4**

Any and all documents and/or communications referring or relating to your discovery of the Skeleton Key as alleged in Paragraphs 3, 33, and 34 of the Complaint.

**Response to Document Request No. 4**

Subject to the relevant time period as agreed to by the Parties, Pable has produced any such documents.

**Document Request No. 5**

Any and all documents and/or communications referring or relating to your disclosure of the existence of the Skeleton Key to Michael Haynes as alleged in Paragraphs 4 and 37 of the Complaint.

**Response to Document Request No. 5**

Subject to the relevant time period as agreed to by the Parties, Pable has produced any such documents.

**Document Request No. 6**

Any and all documents and/or communications referring or relating to your disclosure of the existence of the Skeleton Key to anyone other than Michael Haynes.

**Response to Document Request No. 6**

Subject to the relevant time period as agreed to by the Parties, Pable has produced any such documents.

**Document Request No. 7**

Any and all documents and/or communications referring or relating to the use by you and/or Michael Haynes of the Skeleton Key on other cities' BusTime systems as alleged in the Complaint.

**Response to Document Request No. 7**

Subject to the relevant time period as agreed to by the Parties, Pable has produced any such documents.

**Document Request No. 8**

Any and all documents and/or communications referring or relating to the use of the Skeleton Key to issue an alert on the BusTime system used by the Greater Dayton [Ohio] Regional Transit Authority (the "Dayton RTA") as alleged in Paragraphs 4, 38, and 39 of the Compliant.

**Response to Document Request No. 8**

Subject to the relevant time period as agreed to by the Parties, Pable has produced any such documents.

**Document Request No. 9**

Any and all documents and/or communications between you and Michael Haynes referring or relating to:

      (i) the Skeleton Key;

      (ii) the use of the Skeleton Key on the Dayton RTA BusTime system; and

      (iii) the use or attempted use of the Skeleton Key on any other cities' BusTime system (i.e., the "similar, but less visible tests" conducted on other BusTime systems as alleged in Paragraph 41 of the Complaint).

5

**Response to Document Request No. 9**

Pable objects to this request on the ground that it is wholly duplicative of Request Nos. 4-8. Nevertheless, subject to the relevant time period as agreed to by the Parties, Pable has produced any such documents.

**Document Request No. 10**

Any and all documents and/or communications showing your belief that the purpose of your alleged "reporting … the Skeleton Key (and [Michael] Haynes' use of it) was very much in keeping with their responsibility to maintain the security and safety of the CTA's system" as alleged in Paragraph 67 of the Complaint.

**Response to Document Request No. 10**

Subject to the relevant time period as agreed to by the Parties, Pable has produced any such documents.

**Document Request No. 11**

All documents and/or communications showing that you were authorized to use the Skeleton Key.

**Response to Document Request No. 11**

Subject to the relevant time period as agreed to by the Parties, and subject to the objection that the request improperly assumes or implies, contrary to fact, that the CTA had some applicable practice of, or process for, such authorization, Pable has produced any such documents.

**Document Request No. 12**

Any and all documents and/or communications referring or relating to your disclosure of the use of the Skeleton Key by you and/or Michael Haynes on the Dayton RTA BusTime system or any other cities' BusTime system to anyone at the CTA or Clever Devices.

**Response to Document Request No. 12**

Pable objects to this request on the ground that it is wholly duplicative of Request Nos. 4-8. Nevertheless, subject to the relevant time period as agreed to by the Parties, Pable has produced any such documents.

**Document Request No. 13**

Any and all documents and/or communications showing your efforts to seek employment outside of the CTA during the period of January 1, 2016 through the present, including but not limited to job applications, application acceptance and/or rejection letters, resumes or CVs, inquiries to other employers and/or individuals relating to other employment opportunities, and/or communications to third parties expressing your desire to obtain employment outside of CTA.

**Response to Document Request No. 13**

Subject to Pable's continuing accrual of and anticipated supplementation of his discovery responses with respect to damages, Pable has produced any such documents.

**Document Request No. 14**

Any and all documents and/or communications relating to your efforts (whether actually implemented for any period of time, or otherwise) to encrypt CTA electronic devices that you used or had access to during the course of your employment with CTA, including without limitation through the use of Bitlocker, MotoKey, and/or your personal cell phone.

**Response to Document Request No. 14**

Subject to the relevant time period as agreed to by the Parties, Pable has produced any such documents.

**Document Request No. 15**

Any and all documents and/or communications, including social media messages and/or posts (and including but not limited to messages sent, received, and/or posted in Facebook, LinkedIn, Instagram, Google Hangouts, Google+, Telegram, WhatsApp, Reddit, Slack, Skype, etc.), text messages, and emails referring or relating to your efforts to encrypt CTA electronic devices that you used or had access to during the course of your employment with CTA.

**Response to Document Request No. 15**

Subject to the relevant time period as agreed to by the Parties, Pable has produced any such documents.

**Document Request No. 16**

Any and all documents and/or communications relating to your efforts (whether actually implemented for any period of time, or otherwise) to install a secondary drive and/or partition a secondary drive on the computer(s) that you used or had access to during the course of your employment with CTA.

**Response to Document Request No. 16**

Subject to the relevant time period as agreed to by the Parties, Pable has produced any such documents.

**Document Request No. 17**

Any and all documents and/or communications, including social media messages and/or posts (and including but not limited to messages sent, received, and/or posted in Facebook, LinkedIn, Instagram, Google Hangouts, Google+, Telegram, WhatsApp, Reddit, Slack, Skype, etc.), text messages, and emails relating to your efforts to install a secondary drive and/or partition a secondary drive on the computer(s) that you used or had access to during the course of your employment with CTA.

**Response to Document Request No. 17**

Subject to the relevant time period as agreed to by the Parties, Pable has produced any such documents.

**Document Request No. 18**

Any and all documents and/or communications showing the complete imaging and/or forensic examination of the personal cell phone(s) that you used during the course of your employment with the CTA in 2018.

**Response to Document Request No. 18**

Pable objects to this request on the grounds that it is overbroad, unreasonable, and seeks information not relevant to any party's claim or defense and out of proportion to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Pable further objects on the ground that it calls for the production of documents that are privileged from disclosure as attorney-client communications and attorney work product. Pable further objects on the ground that such documents may be subject to

discovery or not depending on whether the forensic examiner is designated as an expert witness, and production now is therefore premature.

**Document Request No. 19**

Any and all documents and/or communications relating to your use of CTA electronic devices (including CTA computer(s)) for any purposes unrelated to the scope of your CTA employment, including without limitation all documents and/or communications relating to activities relating to mining, buying, and/or selling Bitcoin; activities relating to gaming and/or video games; activities relating to gambling; and/or activities relating to "hacking" or otherwise gaining unauthorized access to other software and/or computer systems and/or Networks.

**Response to Document Request No. 19**

Pable objects to this request on the grounds that it is overbroad, unreasonable, and seeks information not relevant to any party's claim or defense and out of proportion to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

**Document Request No. 20**

Any and all documents and/or communications relating to your recording of the November 8, 2018 meeting with CTA, including without limitation all documents and/or communications demonstrating all uses for and/or recipient(s) of the recording.

**Response to Document Request No. 20**

Pable has produced any such documents.

**Document Request No. 21**

Any and all documents and/or communications that you have drafted, issued, or otherwise prepared for any purpose and relating to your employment with CTA, including without limitation documents and/or communications relating to the discovery of the Skeleton Key, the use of the Skeleton Key upon various BusTime systems, the circumstances surrounding your departure from CTA, and/or your claims and defenses that are the subject of this litigation.

**Response to Document Request No. 21**

Subject to the relevant time period as agreed to by the Parties, Pable has produced any such documents.

**Document Request No. 22**

All written reports and curriculum vitaes for each expert witness identified in response to Interrogatory No. 22.

**Response to Document Request No. 22**

Pable objects to this request as premature. Pable will produce documents related to expert witnesses in accordance with the applicable rules and Orders of the Court.

**Document Request No. 23**

All documents relating to any damages claimed by Pable in this matter, including but not limited to the damages identified in Paragraphs 8 and 73 of the Complaint, and any damages identified in response to Interrogatory No. 21.

**Response to Document Request No. 23**

Subject to Pable's continuing accrual of and anticipated supplementation of his discovery responses with respect to damages, Pable has produced any such documents.

October 15, 2020                                  Respectfully submitted,


                                                  /s/ Timothy A. Duffy
                                                  Timothy A. Duffy (ARDC #6224836)
                                                  Law Office of Timothy A. Duffy, P.C.
                                                  290 Shadowood Ln
                                                  Northfield, IL 60093
                                                  847-530-4920
                                                  tduffy@tduffylaw.com

                                                  *Attorney for Plaintiff*
                                                  *Christopher George Pable*

## **CERTIFICATE OF SERVICE**

I, Timothy A. Duffy, attorney for Mr. Pable, hereby certify that on October 15, 2020, I served a copy of the foregoing on the following counsel of record by email to their address of record on the CM/ECF system.

Elizabeth Erin Babbitt
Taft Stettinius & Hollister LLP
111 E. Wacker Drive
Suite 2800
Chicago, IL 60601
312-527-4000
ebabbitt@taftlaw.com

Allison Emma Czerniak
Taft Stettinius & Hollister LLP
111 East Wacker Drive
Suite 2800
Chicago, IL 60601
(312) 840-4487
aczerniak@taftlaw.com

Nicollette L. Khuans
Taft Stettinius & Hollister LLP
111 East Wacker Drive
Suite 2800
Chicago, IL 60601
(312) 527-4000
nkhuans@taftlaw.com

John Francis Kennedy
Taft Stettinius & Hollister LLP
111 East Wacker Drive
Suite 2800
Chicago, IL 60601
(312) 527-4000
jkennedy@taftlaw.com

*Attorneys for Defendant Chicago Transit Authority*

Steven W Jados
SmithAmundsen LLC
3815 E. Main Street, Suite A-1
St. Charles, IL 60174
(630)587-7934
sjados@salawus.com

*Attorney for Defendant Clever Devices, Ltd.*


/s/ Timothy A. Duffy  _____

# EXHIBIT F

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CHRISTOPHER GEORGE PABLE, | |
| *Plaintiff*, | Case No. 19-cv-7868 |
| v. | Judge Elaine E. Bucklo |
| CHICAGO TRANSIT AUTHORITY and CLEVER DEVICES LTD., | Magistrate Judge Sidney I. Schenkier |
| *Defendants*. | JURY DEMAND |
| CHICAGO TRANSIT AUTHORITY, | |
| Counter-Plaintiff, | |
| v. | |
| CHRISTOPHER GEORGE PABLE, | |
| Counter-Defendant. | |

**DEFENDANT/COUNTER-PLAINTIFF CHICAGO TRANSIT AUTHORITY'S**
**FIRST SET OF REQUESTS FOR PRODUCTION TO PLAINTIFF/COUNTER-**
**DEFENDANT CHRISTOPHER PABLE**

Pursuant to Federal Rule of Civil Procedure 34, Defendant Chicago Transit Authority ("CTA") propounds the following requests for production (collectively, the "Requests") on Plaintiff/Counter-Defendant Christopher George Pable. Pable must serve his responses within 30 days of the date of service of these Requests. *See* Fed R. Civ. P. 34(b)(2).

**INSTRUCTIONS**

1.      Pursuant to Federal Rule of Civil Procedure 26(e), the Requests are continuing in nature and Pable has a duty to supplement or correct any response with documents or data that

would have been responsive had they been in existence or known to Pable at the time the response was made.

2.      Pable's search obligations extend to documents or data maintained in hard copy format and to electronically stored information ("ESI").  In producing documents, Pable is requested to produce the following for each record:

   a.   Document Images: All documents or files are to be scanned or printed to CCIT Group IV, 300 DPI resolution, single-page, TIFF images.  Each container file, such as an email PST or NSF or file containers such as a ZIP file or RAR file shall be extracted.  Each email attachment is to be extracted from the parent email as a separate document.  The parent/child relationship between email and attachment is to be maintained.  Each image is to be endorsed in the lower right hand corner with a unique serial ("Bates") number.  The Bates number shall not obscure any information in the image.

   b.   Native Electronic Files: Native electronic files are to be produced in addition to the TIFF images except for structured data, i.e. Microsoft Excel, Microsoft Powerpoint, .exe files, which do not require an image.  The native file is to be named for the Bates number of the first page of the document.  If a file cannot be rendered to TIFF then a slip sheet image is to be produced and endorsed with the same Bates number.  The slip sheet shall contain the "original filename," "original file path" and a brief explanation or description of the reason for the exception.

   c.   Text Files: A single, document-level, Unicode text file is to be produced for each record.  Text files should be named with the Bates number of the first page of the document. In the case of file where the text is electronically extractable, the text file should contain the electronically extracted text.  For files where the text of the document is not electronically extractable, the file should be imaged then processed using optical character recognition (OCR).  The text from a slip sheet should not be provided in the text file.

   d.   Concordance Load File: A Concordance .DAT file should be produced containing document boundaries, attachment (parent/child) relationship, and metadata fields corresponding to those listed below (to the extent those fields exist and are available).  Each file produced should have a corresponding record (row) in the data file.

| Metadata Fields: | Description: |
| --- | --- |
| BegDoc# | The Bates number or file identification number of the start of the document |
| EndDoc# | The Bates number or file identification number of the end of the document |

| | |
|---|---|
| BegDocAttach# | The beginning Bates number or file identification number of the first document in the parent/attachment group |
| EndDocAttach# | The ending Bates number or file identification number of the last document in the parent/attachment group |
| To | The recipient of the document or email |
| From | The author of the document or email |
| CC | Persons copied on the document or email |
| BCC | Persons blind-copied on the document or email |
| Custodian | The person who maintains custody of the document or email |
| Source | The original source of the data, if available (e.g. Joe's Work Laptop) |
| Author | Author of the document or email |
| Date Created | Date and time the document or email was created |
| Date Sent | Date and time the document or email was sent |
| Date Received | Date and time the document or email was received |
| Date Last Modified | Date and time last modified for attachments and standalone electronic files |
| Date Last Printed | Date and time last printed for attachments and standalone files |
| Time Sent | Time the email message was sent. |
| Time Received | Time the email message was received. |
| Time Created | Time the native file was created. |
| Time Last Modified | Time the native file was last modified. |
| Email Subject | Subject line(s) of email |
| Doc Title | Title of the document |
| File Name | File name of electronic document |
| File Path | Original file path as maintained by operating system or network |
| Folder | Email or document folder information |
| MD5, SHA-1, or SHA-1 Hash | Security and encryption values |
| Confidentiality Designation | Designation of any confidentiality claim applied to the document |
| Native File | File path to location of native format document |
| OCR Path | File path to extracted text (or OCR in the case of redacted images) of the document |

     e.  <u>Concordance Image (Opticon) Compatible Image Load File</u>: Produce an Opticon .OPT or .LOG text file with the following comma delimited fields:

IMAGE KEY, VOLUME, IMAGE PATH, DOCUMENT BREAK, FOLDER BREAK, BOX BREAK, PAGE COUNT

3

Each volume should have separate NATIVE, IMAGE and TEXT sub-folders for the native, image and text files, and shall contain no more than 5,000 files per numbered sub-folder. The Volume folder will contain the data file. The data file will be named for the production volume and will have the .DAT file extension. The volume folder will contain a Concordance Image (Opticon) image load file with either the .opt or .log file extension. The image load file will be named for the production volume.

3.      Pable must identify the Request(s) that each document produced is responsive to.

4.      These Requests are to be construed broadly to yield disclosure of as much relevant information as possible.

5.      If Pable withholds any document because of a claim of privilege, Pable must set forth the privilege claimed, the facts upon which Pable relies to support said claim of privilege, and furnish a list identifying each document and thing for which the privilege is claimed, and identify: (1) the date of the document; (2) each and every author of the document; (3) each and every other person who prepared or participated in the preparation of the document; (4) each and every person who received the document; (5) the present location of the document and all copies thereof; (6) each and every person having custody or control of the document and all copies thereof; (7) a description of the document (*e.g.*, email, letter, memorandum, etc.); and (8) the specific reason it was not produced. This instruction shall not limit the CTA's right to seek an order compelling production of documents Pable contends are privileged.

6.      If Pable claims that any document or documents containing information responsive to these Requests have been destroyed, missing, or lost, the production of which is sought by these Requests, Pable must furnish a list identifying each destroyed, missing or lost document and identify: (1) the date of the document; (2) each and every author of the document; (3) each and every other person who prepared or participated in the preparation of the document; (4) each and every person who received the document; (5) a description of the document (e.g., email, letter,

4

memorandum, etc.); and (6) provide sufficient information explaining the circumstances resulting in the said disposition of the document.

7.    To the extent such material requested has already been produced, Pable is instructed to respond by identifying such previously produced responsive material by Bates Number.

8.    Unless otherwise stated, the time frame contemplated by these Requests is from January 1, 2018, through the present.

## DEFINITIONS

1.    The terms "Pable," "you," or "your" mean Christopher George Pable and any attorney or other agent or representative of Pable.

2.    "Communication(s)" shall mean any transmission of words or thoughts between or among two or more persons and includes, but is not limited to, spoken words, conversations, conferences, discussions, talks, and reports, whether transmitted in person or by any electronic device such as the telephone or facsimile, including text messages, emails, messages sent via messaging applications (including without limitation WhatsApp, Telegram, Slack, Skype, etc.) and/or messages sent and/or posted in social media applications (including without limitation Facebook, Instagram, Google Hangouts, Google+, Reddit, etc.) and "documents" as that term is defined below.

3.    "Complaint" means the Complaint filed in this action by Pable on December 2, 2019, and any amendments thereto.

4.    "Counterclaim" means the Counterclaim filed in this action by the CTA on August 3, 2020.

5. "Documents" means all written, printed, typed, graphic, recorded or illustrative matter, computer memory, tapes or any other tangible thing by which information is contained, stored or displayed, of every kind or description, however produced or reproduced, whether draft or final, original or reproduction, signed or unsigned, and regardless of whether approved, signed, sent, received, redrafted, or executed, included but not limited to: written communications, email, text messages, messages sent via messaging applications (including without limitation WhatsApp, Telegram, Slack, Skype, etc.), messages sent and/or posted in social media applications (including without limitation Facebook, Instagram, Google Hangouts, Google+, Reddit, etc.), letters, words, numbers, pictures, sounds, symbols or any combination thereof, correspondence, envelopes, computer printouts, teletypes, texts, telecopies, memoranda of telephone conversations or personal conversations, diaries, calendars, interoffice communications, records, reports, studies, bills, receipts, checks, invoices, requisitions, tape or disk recordings, papers and forms filed with any court or governmental body, notes, transportation and expense logs or records, work papers, contracts, formal or informal memoranda of meetings, statistical and financial statements, charts, graphs, reports or material similar to any of the foregoing, however denominated, by whomever prepared, and to whomever addressed, which are in your possession, custody or control or to which you have, have had or can obtain access. The word "documents" extends to data that is stored or maintained only in electronic format. Any document which contains any comment, notation, addition, insertion, or marking of any kind constitutes a document separate from the unmarked version. The word "documents" should be construed in the broadest sense possible in responding to these Requests.

6.      "Person" means any natural person, governmental body, corporation, partnership, joint venture, organization, association, company, special purpose vehicle, or any other form of business, professional or commercial enterprise or entity.

7.      "Relate to" or "relating to" means pertaining to, referring to, reflecting upon, evidencing, describing, mentioning, summarizing or being in any way legally, logically or factually connected with the matter discussed in the Requests.

8.      "Showing" means depicting, identifying, reflecting, or reporting.

## FIRST REQUESTS FOR PRODUCTION

1.      All documents received in response to any subpoena issued by Pable or his counsel.

**RESPONSE:**

2.      Any and all documents and/or communications relating to your employment at the CTA in your possession, including any and all documents maintained by you in a physical file and/or on your personal computer(s), cell phone(s), hard drive(s), or other electronic device(s).

**RESPONSE:**

3.      Any and all documents and/or communications, including social media messages and/or posts (and including but not limited to messages sent, received, and/or posted in Facebook, LinkedIn, Instagram, Google Hangouts, Google+, Telegram, WhatsApp, Reddit, Slack, Skype, etc.), text messages, and emails by and between yourself and any other combination of the following individuals

       (1)      Alex Bauer

7

(2)     Xopher Barnett

(3)     Sarah Cochran

(4)     Tony Coppoletta

(5)     Katie Gray

(6)     Michael Haynes

(7)     Trinity Haynes

(8)     Natalie Jasien

(9)     Jackie Johnston

(10)    Susan Kim

(11)    Chris Langer

(12)    Sydney Moy

(13)    William Nowicki

(14)    Alec Parks

(15)    Jeff Schroeder

(16)    Tom Silvestri

(17)    Phillip Vanasse

(18)    Any other individuals who were or are currently employed by the CTA; and/or

(19)    Any other individuals who were or are currently employed by Clever Devices;

and relating to:

(i)     your claims as alleged in the Complaint;

(ii)    the Counterclaim and any defenses you have asserted thereto;

(iii)   your resignation in lieu of termination from CTA; and/or

(iv)    your efforts to obtain employment outside of CTA.

**RESPONSE:**

4.     Any and all documents and/or communications referring or relating to your discovery of the Skeleton Key as alleged in Paragraphs 3, 33, and 34 of the Complaint.

**RESPONSE:**

5.     Any and all documents and/or communications referring or relating to your disclosure of the existence of the Skeleton Key to Michael Haynes as alleged in Paragraphs 4 and 37 of the Complaint.

**RESPONSE:**

6.     Any and all documents and/or communications referring or relating to your disclosure of the existence of the Skeleton Key to anyone other than Michael Haynes.

**RESPONSE:**

7.     Any and all documents and/or communications referring or relating to the use by you and/or Michael Haynes of the Skeleton Key on other cities' BusTime systems as alleged in the Complaint.

**RESPONSE:**

8.     Any and all documents and/or communications referring or relating to the use of the Skeleton Key to issue an alert on the BusTime system used by the Greater Dayton [Ohio] Regional Transit Authority (the "Dayton RTA") as alleged in Paragraphs 4, 38, and 39 of the Compliant.

**RESPONSE:**

9.     Any and all documents and/or communications between you and Michael Haynes referring or relating to:

     (i)     the Skeleton Key;

     (ii)     the use of the Skeleton Key on the Dayton RTA BusTime system; and

     (iii)     the use or attempted use of the Skeleton Key on any other cities' BusTime system (*i.e.*, the "similar, but less visible tests" conducted on other BusTime systems as alleged in Paragraph 41 of the Complaint).

**RESPONSE:**

10.     Any and all documents and/or communications showing your belief that the purpose of your alleged "reporting … the Skeleton Key (and [Michael] Haynes' use of it) was very much in keeping with their responsibility to maintain the security and safety of the CTA's system" as alleged in Paragraph 67 of the Complaint.

**RESPONSE:**

11.     All documents and/or communications showing that you were authorized to use the Skeleton Key.

**RESPONSE:**

12.     Any and all documents and/or communications referring or relating to your disclosure of the use of the Skeleton Key by you and/or Michael Haynes on the Dayton RTA BusTime system or any other cities' BusTime system to anyone at the CTA or Clever Devices.

**RESPONSE:**

13.     Any and all documents and/or communications showing your efforts to seek employment outside of the CTA during the period of January 1, 2016 through the present, including but not limited to job applications, application acceptance and/or rejection letters, resumes or CVs, inquiries to other employers and/or individuals relating to other employment opportunities, and/or communications to third parties expressing your desire to obtain employment outside of CTA.

**RESPONSE:**

14.     Any and all documents and/or communications relating to your efforts (whether actually implemented for any period of time, or otherwise) to encrypt CTA electronic devices that you used or had access to during the course of your employment with CTA, including without limitation through the use of Bitlocker, MotoKey, and/or your personal cell phone.

**RESPONSE:**

15.     Any and all documents and/or communications, including social media messages and/or posts (and including but not limited to messages sent, received, and/or posted in Facebook, LinkedIn, Instagram, Google Hangouts, Google+, Telegram, WhatsApp, Reddit, Slack, Skype, etc.), text messages, and emails referring or relating to your efforts to encrypt CTA electronic devices that you used or had access to during the course of your employment with CTA.

**RESPONSE:**

16.     Any and all documents and/or communications relating to your efforts (whether actually implemented for any period of time, or otherwise) to install a secondary drive and/or

partition a secondary drive on the computer(s) that you used or had access to during the course of your employment with CTA.

**RESPONSE:**

17. Any and all documents and/or communications, including social media messages and/or posts (and including but not limited to messages sent, received, and/or posted in Facebook, LinkedIn, Instagram, Google Hangouts, Google+, Telegram, WhatsApp, Reddit, Slack, Skype, etc.), text messages, and emails relating to your efforts to install a secondary drive and/or partition a secondary drive on the computer(s) that you used or had access to during the course of your employment with CTA.

**RESPONSE:**

18. Any and all documents and/or communications showing the complete imaging and/or forensic examination of the personal cell phone(s) that you used during the course of your employment with the CTA in 2018.

**RESPONSE:**

19. Any and all documents and/or communications relating to your use of CTA electronic devices (including CTA computer(s)) for any purposes unrelated to the scope of your CTA employment, including without limitation all documents and/or communications relating to activities relating to mining, buying, and/or selling Bitcoin; activities relating to gaming and/or video games; activities relating to gambling; and/or activities relating to "hacking" or otherwise gaining unauthorized access to other software and/or computer systems and/or Networks.

12

**RESPONSE:**

20.     Any and all documents and/or communications relating to your recording of the November 8, 2018 meeting with CTA, including without limitation all documents and/or communications demonstrating all uses for and/or recipient(s) of the recording.

**RESPONSE:**

21.     Any and all documents and/or communications that you have drafted, issued, or otherwise prepared for any purpose and relating to your employment with CTA, including without limitation documents and/or communications relating to the discovery of the Skeleton Key, the use of the Skeleton Key upon various BusTime systems, the circumstances surrounding your departure from CTA, and/or your claims and defenses that are the subject of this litigation.

**RESPONSE:**

22.     All written reports and curriculum vitaes for each expert witness identified in response to Interrogatory No. 22.

**RESPONSE:**

23.     All documents relating to any damages claimed by Pable in this matter, including but not limited to the damages identified in Paragraphs 8 and 73 of the Complaint, and any damages identified in response to Interrogatory No. 21.

**RESPONSE:**

Dated:  September 15, 2020

Respectfully submitted,

**Chicago Transit Authority**

By:   s/ *Elizabeth E. Babbitt*
One of its Attorneys

Elizabeth E. Babbitt
ebabbitt@taftlaw.com
John F. Kennedy
jkennedy@taftlaw.com
Allison E. Czerniak
aczerniak@taftlaw.com
Nicollette L. Khuans
nkhuans@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
111 E. Wacker Dr., Suite 2800
Chicago, IL 60601

# EXHIBIT G

**Bishton, Paula**

| | |
|---|---|
| **From:** | Timothy Duffy <tduffy@tduffylaw.com> |
| **Sent:** | Saturday, October 24, 2020 11:23 AM |
| **To:** | Babbitt, Elizabeth E. |
| **Cc:** | Czerniak, Allison E.; Khuans, Nicollette L.; Kennedy, John; Jados, Steven |
| **Subject:** | Re: Pable v. CTA - follow-up to Rule 37.2 Conference |

Elizabeth,

Thank you for this summary.  Please see my comments below in red.

Tim


Timothy A. Duffy
Timothy A. Duffy, P.C.
290 Shadowood Ln
Northfield, IL 60093
+1-847-530-4920
tduffy@tduffylaw.com


On Oct 23, 2020, at 12:25, Babbitt, Elizabeth E. <ebabbitt@taftlaw.com> wrote:

Tim,

Thank you again for speaking with us yesterday pursuant to Rule 37.2.  I recount our agreements with respect to discovery below.  I look forward to receiving an update from you next week as to your expected timeline for supplementing Pable's discovery responses.

***Pable's Answers to CTA's Interrogatories***
As you know, the CTA has objected to Plaintiff's refusal to respond to any interrogatories on the basis that the subparts contained therein exceed the number of interrogatories provided by the rules.  Interrogatories containing subparts which directly elicit details concerning a "common theme," like the interrogatories propounded by the CTA, should be treated as single complete questions.  *See, e.g., Portis v. City of Chicago*, 02-cv-3139, 2005 WL 991995, at *9 (N.D. Ill. Apr. 15, 2005); *see also Bell v. Woodward Governor Co.*, No. 03 C 50190, 2005 WL 3829134, at *1 (N.D .Ill. June 30, 2005).  As a result of our conversation, you agreed that Pable will provide answers to the following interrogatories as they were propounded on Pable on October 1, 2020 so that they are complete:

- Interrogatory Nos. 1, 3, 5, 7, 8, 9, 10, 11, 12, 13, 16, 17, 21

The CTA has also agreed to amend certain of the CTA's first interrogatories to Pable in a good-faith effort to address Pable's concerns as to the subparts contained therein.  Specifically, the CTA will amend the following interrogatories pursuant to our conversation and separately reissue them to Pable in short order:

- Interrogatory Nos. 2, 4, 6, 14

1

As we discussed, the CTA is willing to amend these interrogatories based on its expectation that Pable will provide complete answers to their streamlined counterparts.

As to interrogatories nos. 18, 19, and 20, which generally concern the disclosure of expert witnesses and lay witnesses, the parties all agreed to provide the requested information in accordance with their existing obligations under the Rules, and that the parties need not issue interrogatories to provide information which the parties must already exchange under the federal rules.

As to interrogatory no. 15, you expressed Pable's position that the information sought therein is not relevant to the litigation. The CTA expressed its position that information pertaining to Pable's use of CTA electronic devices for purposes unrelated to his CTA job functions is undoubtedly relevant to both the CTA's affirmative defenses of after-acquired evidence and unclean hands, and to the CTA's Computer Fraud and Abuse Act counterclaim. It appears that Pable and the CTA remain at issue as to interrogatory no. 15. To the extent that Pable remains unwilling to provide a complete answer to interrogatory no. 15 when he supplements his answers to CTA's first interrogatories and answers the CTA's amended interrogatories, the CTA will seek resolution of Pable's objection from the court.

Pable will provide substantive answers to the interrogatories you have identified and the ones you reissue. We will also attempt to address No. 15 in order to see if we can avoid motion practice. I want to be clear that we may have different definitions of "complete" but there is no use arguing over what that means without the answers.

### Privilege Logs
The parties agreed to exchange their respective privilege logs on or before November 16, 2020 (we had discussed 11/15 on the call but that is a Sunday), so that the parties may resolve any issues specific to the privilege logs prior to the close of written discovery on November 30, 2020.

I thought we said that we would raise any issues by 11/30 with the understanding that we could pursue/resolve them without otherwise extending the current schedule. We can see how this develops once we have the logs in hand; I am all for raising any issues sooner rather than later.

### Issues Raised in CTA's October 13, 2020 Rule 37.2 Letter to Pable
The parties also discussed the issues raised in the CTA's October 13, 2020 Rule 37.2 letter to Pable. As a result of those discussions, Pable  agreed to the following:

- Pable will tender to CTA a report describing the results, including hit counts, of the email search terms that Pable agreed to in your March 25, 2020 letter, with verification from Pable that he searched his personal email account(s) using the agreed-upon search parameters and produced emails responsive to those parameters in his July 2020 MIDPP ESI production;

Pable did not do this searching, our consultant did. We will provide the parameters, terms, and associated hit counts.

- 
- Pable will tender to CTA a supplemental report describing the results, including hit counts, of the email search terms that you agreed to in your March 25, 2020 letter for the year 2019 and through present so that CTA may evaluate whether the production of those additional emails may be necessary;

I am not sure what you mean by "supplemental report" but we will provide the same information as above applied to his email for a more recent time period, but I reserve the right to limit this date range, especially when we get to the point where both Pable and Haynes are working with counsel (as opposed to earlier when any relevant communications are less likely to be privileged). Please note that to the extent this item requires our consultant to re-access Pable's email (as opposed to working with what he collected previously), these items may take longer to generate and produce.

- In light of the fact that Michael Haynes' subpoena response indicated that Pable and Haynes continued to exchange emails relevant to the litigation through 2020, Pable will revisit his search of Pable's Gmail account and produce to CTA any additional emails from 2019 and 2020 that are responsive to the agreed-upon search terms;

I think this is subsumed in the prior item.

- 
- Pable will produce a complete and searchable forensic image file of his personal cell phone as it was previously imaged by Pable's third-party expert during the course of written discovery in this litigation; as Pable has already had the phone imaged, we would ask that the image be produced by the close of business on October 29, 2020.

The image is a complete forensic image; I cannot make any representations about its searchability, which has nothing to do with the imaging process. I am checking on timing and logistics for this, and am just not in a position to confirm the 29th right now.

- 
- Pable will supplement his answer to interrogatory no. 21 to include reference to any social media applications upon which Pable may have written posts that are relevant to the litigation; and

As noted above, Pable will provide a substantive answer to this interrogatory that will hopefully resolve this issue; I can't characterize it more precisely than that right now.

- 
- Pable will produce copies of any social media posts that may be relevant to the litigation (including, for instance, information posted on Pable's LinkedIn profile).

No, I said we would consider this and try to address it in the interrogatory response so we know the scope and can address any issues, which are likely to be whether any posts are relevant.

- 

***CTA's Forthcoming Images of Certain CTA Devices***
As we discussed, and as the CTA indicated in its responses to Pable's first requests for production to CTA, the CTA will produce relevant portions of certain CTA devices that have been imaged by its consulting expert. The CTA reiterated that the CTA devices at issue contain several terabytes of information, the majority of which will not be relevant to the litigation. Moreover, the irrelevant information available on the devices implicates certain security considerations. During our conversation, you indicated that Pable may seek access to the entirety of the relevant imaged devices, but agreed to first review the CTA's production before arriving at such a determination. In the interim, the CTA also agreed to work with its third-party forensic computer technician to determine whether it

can identify a means by which it can tender a high-level index of the information available on the devices to you for your review.

That does reflect our discussion. For clarity's sake I would ask that any images of any thumb drives or dongles accessed in 2018 or later be provided, as the size is obviously not an issue. I don't see the basis for security concerns given the options and obligations under our Protective Order. Please provide me with a date for this production.

### Pable's Cell Phone

Finally, and during the course of our conversation pertaining to the imaging of Pable's cell phone, you indicated that the full image of the device may nonetheless be incomplete due to Pable's position that CTA effectuated a "wipe" of Pable's work profile upon Pable's departure from the CTA such that certain information, like text messages, is no longer available on the device. The CTA continues to dispute this allegation. You also indicated that, after Pable's cell phone was imaged by your third-party expert during the course of this litigation and the cell phone was returned to Pable's care, the cell phone will no longer turn on. You agreed that Pable will continue to preserve the cell phone at issue in this litigation, and we expect that you will likewise preserve all backups of Pable's cell phone.

This is incorrect. The image is a complete image of the data on the phone when the phone was imaged; nothing about the imaging process affected the "completeness" of the image. Whatever the CTA did to the phone in 2018 certainly rendered some data on it inaccessible to Pable (which was obviously the whole point of the action it took). To the extent any such remained accessible via a forensic examination, Pable did nothing to change that, but keep in mind that his normal use of the phone in the ordinary course may have overwritten such data, similar to what might occur, for example, to files put in the trash or even "double deleted" on a computer — forensically retrievable files or fragments thereof may still exist on the hard drive, but they may also be overwritten in the normal course as the drive continues to be used.

As I said, I was told the phone no longer turns on — I am not sure whose "care" the phone was under when this occurred, but it has been preserved. There are no "backups" of the phone.

Thank you, and we look forward to hearing from you,

I will get back to you on timing for the hit counts and the image soon. I will get you the interrogatory responses by November 10 at the latest (assuming I have your re-issue by October 30).

**Taft /**

**Elizabeth E. Babbitt**
Partner
ebabbitt@taftlaw.com
Dir: 312.836.4116
Tel: 312.527.4000 | Fax: 312.966.8556
111 E. Wacker Drive, Suite 2800
Chicago, Illinois 60601-3713

**Taft Bio**
**Download vCard**
**taftlaw.com**

To receive regular COVID-19 updates from Taft, <u>subscribe here</u>. For additional resources, visit Taft's COVID-19 <u>Resource Toolkit</u>.

This message may contain information that is attorney-client privileged, attorney work product or otherwise confidential. If you are not an intended recipient, use and disclosure of this message are prohibited. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

# EXHIBIT H

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CHRISTOPHER GEORGE PABLE, | |
| *Plaintiff,* | Case No. 19-cv-7868 |
| v. | Judge Elaine E. Bucklo |
| CHICAGO TRANSIT AUTHORITY and CLEVER DEVICES LTD., | |
| *Defendants.* | |
| | |
| CHICAGO TRANSIT AUTHORITY, | |
| *Counter-Plaintiff,* | |
| v. | |
| CHRISTOPHER GEORGE PABLE, | |
| *Counter-Defendant.* | |

**DECLARATION OF NATHAN BINDER**

1. My name is Nathan Binder. I am over eighteen (18) years of age, of sound mind, have never been convicted of a felony, and am fully competent to create this affidavit. I reside in Cook County, Illinois. The factual statements set forth below are within my personal knowledge and are true and correct. I have attached my CV to this declaration.

2. I have been employed with 4Discovery, LLC as a Forensic Investigator since 2017. In this position, my duties and responsibilities include examining all aspects of computer forensics, mobile forensics, and electronic discovery cases. I am directly involved in forensic imaging, analysis, and production. I have provided expert reports including affidavits and declarations. I have worked on hundreds of matters involving disputes over digital evidence and electronic data.

3. My professional expertise rests on a foundation of a Bachelor of Science and Technology degree with a major in Digital Forensics. I obtained this degree from Bloomsburg University of Pennsylvania in 2016.

4. In 2019, I successfully obtained three Cellebrite certifications, namely, the CMFF (Cellebrite Mobile Forensic Fundamentals), CCO (Cellebrite Certified Operator), and CCPA (Cellebrite Certified Physical Analyst). In 2020, I successfully obtained the Cellebrite Certified Mobile Examiner (CCME) certification. Cellebrite is a major industry standard software utilized by forensic examiners to collect, analyze, and report forensic artifacts from mobile devices.

5. As a forensic investigation professional, I have examined electronic evidence for cases involving, but not limited to, trade secret theft, motor vehicle accidents, data authenticity, fraud/embezzlement, and employee misconduct cases.

6. Regardless of the software used to extract data from a phone, there are three general image types. The image types are logical, file system, and physical. The differences in image types are as follows: logical images generally will copy out the data from a file (example: such as text messages contained within a database) and make a copy of that data into a new file. File system and physical images will not just copy the data within the file but will capture the actual file (example: the database that contains the text messages) itself, that way if a database that should contain text messages is empty, it can be verified by analyzing the empty database.

7. The phone of interest in this matter is Pable's Moto Z Force 2nd Generation (Serial Number: ZY224CNBBX). On June 11th, 2020, a logical image was taken of Pable's Moto Z Force using Paraben's Electronic Evidence Examiner. I received a copy of the data image of the phone to review.

8. Based on my review of the phone image it appears that (1) very little data resided on the device at the time of the image, (2) there are inconsistencies with the data that is contained in the image, and (3) that the phone image is not complete.

9. The Moto Z Force 2nd Generation has the ability to store 64 GB of data to its internal storage and also has the ability to store data to a microSDXC memory card (a type of SD card) which can hold anywhere from 32 GB to ~2,000 GB of data. I exported the data from Pable's phone image and it resulted in a total of ~1.2 GB. The android operating

system present on the device would be responsible for almost 1 GB of that exported data, leaving only about 0.2 GB (or 0.625% of the total capacity of the device) for review. The software used for the image (Paraben's Electronic Evidence Examiner) shows that the SD card was not present in the phone during the image process. This means that any data stored on the SD card (commonly media such as a video or audio recording or application data such as communications from messaging applications) was not captured during the logical image of Pable's phone. At the time of writing this affidavit, to my knowledge, no forensic image was created of any associated SD cards.

10. Besides the lack of data file size in the image, the image also contained very little content. Common artifacts that one would typically expect to see in a phone image are text messages, instant messages (Facebook Messenger, Instagram, WhatsApp, Signal, etc), call logs, internet history, and media (photos and videos). Pable's phone image held, in total, 5 SMS text messages all occurring on 5/26/2020 and 5/27/2020. Text messages are typically broken down into two types, SMS and MMS. SMS messages are short text messages that only contain text while MMS messages are text messages with media attachments (such as photos or videos). No instant messages, MMS messages, internet history, or captured media are included in the image.

11. The phone image listed user activity of applications ("Apps") on the phone from the time period of June 5th to June 11th of 2020, the day of the logical imaging of Pable's phone. This activity shows when applications are used on the device but will also sometimes show the specific activity occurring in the application.

12. For example, the user activity logs show that the messaging application "Signal" had conversation activity occurring every day from June 5th up to the day of the logical image. Signal is a secure messaging App that provides end-to-end encrypted communications. While the end-to-end encryption secures the messages while they are being sent from one user to another, the application still stores the messages in a local database on the phone.

13. Besides call log history, the data contained within the logical image of Pable's device does not predate June 5th, 2020. There are no Signal messages (or a Signal database that would contain the messages) in the image. The directories (or folders) that would contain Signal files are completely empty but still exist. Furthermore, the 5 text messages found

on Pable's phone image were automated text messages that were sent by the Signal application and T-Mobile. There were no text messages available that were from any other source. It is not possible to verify that the database containing the messages is empty because the database was simply not collected during the logical image.

14. I was provided by Plaintiff a PDF document containing pictures of different communication applications with conversation data displayed on Pable's phone (Bates # P001346-P001418). It is evident that communication data does exist on the device that was not contained within the forensic image.

15. I identified approximately 200 Apps that have directories (or folders) contained within the logical image received. Only 49 of these directories contained any files. This is also indicative of an incomplete collection of available data.

16. In my review of the applications I found no indication that the "Motokey" program had been installed or was utilized on the device.

17. Without being provided a full and complete image of all available data typically included in a file system and physical image, it is impossible to determine the extent to which responsive data to this matter exists or can be recovered.

I declare under penalty of perjury under the laws of the United States that the foregoing statements are true and correct.

Dated: December 2nd, 2020 _____

Nathan Binder

# EXHIBIT I



**4:25**

6月 12

 



マップ

MyFitnessPal



YouTube



ポケ森



Connect



Play Music





Nintendo Swit…



Streaming



PSPlay

    

moto

# EXHIBIT J

**Elizabeth E. Babbitt**
Direct Dial: (312) 836-4116
*e*-Facsimile: (312) 966-8556
E-Mail: ebabbitt@taftlaw.com

**Taft /**

111 East Wacker, Suite 2800 / Chicago, Illinois 60601
Tel: 312.527.4000 / Fax: 312.527.4011
www.taftlaw.com

Reference No.: CTA03-GN007

November 24, 2020

**VIA EMAIL**
Timothy A. Duffy
Law Office of Timothy A. Duffy, P.C.
290 Shadowood Lane
Northfield, IL 60093
tduffy@tduffylaw.com

> **Re:** *Christopher Pable v. CTA | Case No. 19 cv 7868*

Dear Counsel:

This letter seeks to resolve discovery issues pursuant to Local Rule 37.2.

**Phone Imaging**

Following the telephone conference on November 17, 2020 by and between the Parties' counsel and third-party consultants, the CTA has been able to access the image file Pable produced of his cell phone. Based on its review, and in consultation with its expert, the CTA believes that the image has been compromised or is otherwise incomplete.

By way of example, the image file: (i) includes a total of five (5) irrelevant SMS messages, and zero (0) MMS messages; (ii) does not include any communications exchanged on third-party applications; (iii) does not include any internet browsing and/or search histories; (iv) does not include any audio or visual files, including photo images; (v) does not include any data associated with 121 of the 133 third-party applications associated with the phone; and (vi) does not include information or data associated with the device's SIM card, SD card, or any other storage card or device.

In short, it appears that Pable's cell phone has no data remaining on it. This is perplexing, as Pable has produced selective screenshots of data from that phone that no longer appear to be on the current forensic image of that same phone. The forensic image of the phone was made under Pable's control, and he has refused to allow the CTA to make its own forensic image, using appropriate software to do so.

The CTA has been patient to allow Pable's control of the process to play out, with confounding results. The CTA requires Pable's cell phone to be re-imaged, along with all SIM cards, SD cards, and/or other devices affiliated with the phone.

Please confirm that Pable will produce his physical cell phone, along with all affiliated SIM cards, SD cards, and/or devices to the CTA for re-imaging. Please also confirm if Pable has maintained any data from this phone on a server or in cloud-based storage.

Taft Stettinius & Hollister LLP

Chicago / Cincinnati / Cleveland / Columbus / Dayton / Indianapolis / Northern Kentucky / Phoenix

28300472v5

Timothy A. Duffy
November 24, 2020
Page 2

If Pable objects to the CTA's request, please advise as to your availability on Wednesday, November 25, 2020 for a telephone conference to discuss this matter in further detail.

**<u>Personal Website</u>**

In the course of its investigation and discovery in this matter, the CTA determined that Pable maintains a website, www.menchi.org. Screenshots from pages of that website, captured on or about October 15, 2020, were produced last week, *see* bates range CTA-PABLE0034106 – CTA-PABLE0034216.

Pable deleted data from his website after he filed his lawsuit against the CTA. Pable's public website contained detailed and proprietary information about certain CTA projects. The CTA understands that Pable maintained the CTA's data in the public domain until approximately October 28, 2020, when Pable appeared to make certain CTA project pages on his website publicly inaccessible.

In order to assess the content Pable published online regarding CTA projects, the CTA issued a document request (Supplemental Document Request No. 1, issued on October 28, 2020), requesting the production of "[c]omplete and accurate copies of the archived Website[1] showing the Website as it appeared from May 1, 2018 through the present." Pable objected to this request and refused to produce any responsive materials. Pable's objections to this request are improper. The materials Pable maintained on his website are, at minimum, relevant to the CTA's counterclaim and may lead to other relevant information upon further review. The CTA demands that Pable produce an accurate copy of his archived Website on or before November 30, 2020, or the CTA will seek relief with the Court.

Moreover, Pable has made public CTA code that was developed for the CTA's benefit in furtherance of its Transit Signal Priority project, which assists the CTA buses in extending signal lights. Pable continues to maintain this code on his publicly accessible Github page, located at https://github.com/chrispable/blazeon, without the CTA's authority. Accordingly, the CTA demands that Pable take down this code, as well as any other CTA code, including code Pable developed for the CTA during his CTA employment.

The CTA reserves all rights and make seek additional relief from the Court, if necessary, regarding the publication of its code.

We look forward to your prompt response.

Sincerely,

---

[1] "Website" was defined as Plaintiff's website: https://www.menchi.org.

Timothy A. Duffy
November 24, 2020
Page 3

TAFT STETTINIUS & HOLLISTER LLP

Elizabeth E. Babbitt

cc:     Via Email
        John F. Kennedy
        Allison E. Czerniak
        Nicollette Khuans
        Steven Jados

28300472v5

Taft Stettinius & Hollister LLP          Chicago / Cincinnati / Cleveland / Columbus / Dayton / Indianapolis / Northern Kentucky / Phoenix

# EXHIBIT K

| | |
|---|---|
| **From:** | Timothy Duffy <tduffy@tduffylaw.com> |
| **Sent:** | Sunday, November 29, 2020 6:59 PM |
| **To:** | Babbitt, Elizabeth E. |
| **Cc:** | Jados, Steven; Kennedy, John; Czerniak, Allison E.; Khuans, Nicollette L. |
| **Subject:** | Re: Pable v. CTA: Rule 37.2 Communication |

Elizabeth,

I write in response to your Rule 37.2 letter dated November 24, 2020.

With respect to Mr. Pable's phone, please recall that a great deal of the data stored on and accessible via the phone was lost when the CTA wiped the device without notice to Pable and, apparently, with no thought to preserving any data that might be on it — despite a now-professed concern that Mr. Pable was misusing CTA data and devices. Please also recall that the only direct relevance of this device to any claim or defense in the case is that Mr. Pable used his phone to store the encryption key for his CTA hard drive, and there is no dispute as to that fact or, again, that he lost access to that key when the CTA wiped the phone. The only remaining relevance of Mr. Pable's phone is that he may have used it to send or receive communications concerning the events related to the Skeleton Key, and it is clear from our efforts with respect to the phone that no such messages exist. Indeed there is no reason to think any such messages ever existed, with the possible exception of a single message from Mr. Pable to Mr. Haynes as referenced in Mr. Haynes's email, but it is not surprising that message does not exist, either because it was never stored on the phone or it was erased by the CTA.

The marginal relevance of Mr. Pable's phone was further demonstrated in the items he did produce that were obtained either from the phone itself or accessed via the phone though not stored on the phone in a manner such that the data would be reflected in any image of the phone's data storage, as reflected in the items Bates-numbered P0001346-0001418. While responsive to the agreed search terms, none of these communications directly involved the conduct at issue and none shed any light on any aspect of the case not evident from the robust collection of e-mails produced by multiple parties concerning the events at issue. it is true that there is not much data captured in the images of Mr. Pable's phone. Nonetheless, every effort was made to access all the data available via the phone that might be relevant to the case and that has been produced.

I note that very early on I maintained that this was not a case that warranted the collection and forensic examination of phones, and I note now that to the best of my knowledge, neither the CTA nor Clever Devices has produced any text messages or other data that might be stored on individuals' phones. If you wish to press this issue and seek an order for further discovery from the Court, we will ask that any such orders be reciprocal and that whatever provision is made for further discovery of what is on Mr. Pable's phone likewise be conducted on the phones of the other individuals identified as having knowledge of the case.

With respect to Mr. Pable's personal web site, we are again discussing something with no practical relevance of the case, including the CTA's counterclaim, which concerns Mr. Pable's encryption of a CTA hard drive, not whether he posted some unspecified "proprietary" CTA information. Even so, Mr. Pable did not delete any data related to this matter from his website. He has no "archive" of his website, and if forced to reconstruct its historical appearance he would simply undertake what you have already done to obtain the materials you reference that you produced. The Court order you threaten to seek, even if we assume it could be otherwise justified, would thus not add any new information to the corpus of discovery we all possess today.

1

With respect to the Blazeon code, this is not a case of Mr. Pable improperly disclosing something. This code was posted by Mr. Pable during his employment, with the knowledge and approval of Mr. Haynes, and was done to fulfill a requirement that the code be publicly posted for use by Sierra Wireless in generating firmware for CTA buses and Motorola for uses required by the Office of Emergency Management. Hopefully your client knows all this and has determined that the code is no longer needed. If so, Mr. Pable can certainly take it down, but he asked that I confirm that the CTA has concluded doing so would not have any adverse effect, so please let me know.

Very truly yours,

Tim


Timothy A. Duffy
Timothy A. Duffy, P.C.
290 Shadowood Ln
Northfield, IL 60093
+1-847-530-4920
tduffy@tduffylaw.com


On Nov 24, 2020, at 13:53, Babbitt, Elizabeth E. <ebabbitt@taftlaw.com> wrote:

Tim: please see attached.

Regards,
Elizabeth

<Pable v. CTA 24Nov2020 Rule 37.2 Letter.pdf>

2

# EXHIBIT L

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CHRISTOPHER GEORGE PABLE, | |
| *Plaintiff*, | Case No. 19-cv-7868 |
| v. | Judge Elaine E. Bucklo |
| CHICAGO TRANSIT AUTHORITY and CLEVER DEVICES LTD., | |
| *Defendants*. | |
| _____ | |
| CHICAGO TRANSIT AUTHORITY, | |
| Counter-Plaintiff, | |
| v. | |
| CHRISTOPHER GEORGE PABLE, | |
| Counter-Defendant. | |

**DEFENDANT/COUNTER-PLAINTIFF CHICAGO TRANSIT AUTHORITY'S SUPPLEMENTAL REQUEST FOR PRODUCTION TO PLAINTIFF/COUNTER-DEFENDANT CHRISTOPHER PABLE**

Pursuant to Federal Rule of Civil Procedure 34, Defendant Chicago Transit Authority ("CTA") propounds the following supplemental request for production (the "Request") on Plaintiff/Counter-Defendant Christopher George Pable ("Pable"). Pable must serve his response within 30 days of the date of service of this Request. *See* Fed R. Civ. P. 34(b)(2).

**INSTRUCTIONS**

1. Pursuant to Federal Rule of Civil Procedure 26(e), this Request is continuing in nature and Pable has a duty to supplement or correct any response with documents or data that

would have been responsive had they been in existence or known to Pable at the time the response was made.

2.     Pable's search obligations extend to documents or data maintained in hard copy format and to electronically stored information ("ESI").  In producing documents, Pable is requested to produce the following for each record:

a.  <u>Document Images</u>: All documents or files are to be scanned or printed to CCIT Group IV, 300 DPI resolution, single-page, TIFF images.  Each container file, such as an email PST or NSF or file containers such as a ZIP file or RAR file shall be extracted.  Each email attachment is to be extracted from the parent email as a separate document.  The parent/child relationship between email and attachment is to be maintained.  Each image is to be endorsed in the lower right hand corner with a unique serial ("Bates") number.  The Bates number shall not obscure any information in the image.

b.  <u>Native Electronic Files</u>: Native electronic files are to be produced in addition to the TIFF images except for structured data, i.e. Microsoft Excel, Microsoft Powerpoint, .exe files, which do not require an image.  The native file is to be named for the Bates number of the first page of the document.  If a file cannot be rendered to TIFF then a slip sheet image is to be produced and endorsed with the same Bates number.  The slip sheet shall contain the "original filename," "original file path" and a brief explanation or description of the reason for the exception.

c.  <u>Text Files</u>: A single, document-level, Unicode text file is to be produced for each record.  Text files should be named with the Bates number of the first page of the document. In the case of file where the text is electronically extractable, the text file should contain the electronically extracted text.  For files where the text of the document is not electronically extractable, the file should be imaged then processed using optical character recognition (OCR).  The text from a slip sheet should not be provided in the text file.

d.  <u>Concordance Load File</u>: A Concordance .DAT file should be produced containing document boundaries, attachment (parent/child) relationship, and metadata fields corresponding to those listed below (to the extent those fields exist and are available). Each file produced should have a corresponding record (row) in the data file.

| Metadata Fields: | Description: |
| --- | --- |
| BegDoc# | The Bates number or file identification number of the start of the document |
| EndDoc# | The Bates number or file identification number of the end of the document |

| | |
|---|---|
| BegDocAttach# | The beginning Bates number or file identification number of the first document in the parent/attachment group |
| EndDocAttach# | The ending Bates number or file identification number of the last document in the parent/attachment group |
| To | The recipient of the document or email |
| From | The author of the document or email |
| CC | Persons copied on the document or email |
| BCC | Persons blind-copied on the document or email |
| Custodian | The person who maintains custody of the document or email |
| Source | The original source of the data, if available (e.g. Joe's Work Laptop) |
| Author | Author of the document or email |
| Date Created | Date and time the document or email was created |
| Date Sent | Date and time the document or email was sent |
| Date Received | Date and time the document or email was received |
| Date Last Modified | Date and time last modified for attachments and standalone electronic files |
| Date Last Printed | Date and time last printed for attachments and standalone files |
| Time Sent | Time the email message was sent. |
| Time Received | Time the email message was received. |
| Time Created | Time the native file was created. |
| Time Last Modified | Time the native file was last modified. |
| Email Subject | Subject line(s) of email |
| Doc Title | Title of the document |
| File Name | File name of electronic document |
| File Path | Original file path as maintained by operating system or network |
| Folder | Email or document folder information |
| MD5, SHA-1, or SHA-1 Hash | Security and encryption values |
| Confidentiality Designation | Designation of any confidentiality claim applied to the document |
| Native File | File path to location of native format document |
| OCR Path | File path to extracted text (or OCR in the case of redacted images) of the document |

    e.  <u>Concordance Image (Opticon) Compatible Image Load File</u>: Produce an Opticon .OPT or .LOG text file with the following comma delimited fields:

    IMAGE KEY, VOLUME, IMAGE PATH, DOCUMENT BREAK, FOLDER BREAK, BOX BREAK, PAGE COUNT

Each volume should have separate NATIVE, IMAGE and TEXT sub-folders for the native, image and text files, and shall contain no more than 5,000 files per numbered sub-folder. The Volume folder will contain the data file. The data file will be named for the production volume and will have the .DAT file extension. The volume folder will contain a Concordance Image (Opticon) image load file with either the .opt or .log file extension. The image load file will be named for the production volume.

3.      Pable must identify the Request that each document produced is responsive to.

4.      This Request are to be construed broadly to yield disclosure of as much relevant information as possible.

5.      If Pable withholds any document because of a claim of privilege, Pable must set forth the privilege claimed, the facts upon which Pable relies to support said claim of privilege, and furnish a list identifying each document and thing for which the privilege is claimed, and identify: (1) the date of the document; (2) each and every author of the document; (3) each and every other person who prepared or participated in the preparation of the document; (4) each and every person who received the document; (5) the present location of the document and all copies thereof; (6) each and every person having custody or control of the document and all copies thereof; (7) a description of the document (*e.g.*, email, letter, memorandum, etc.); and (8) the specific reason it was not produced. This instruction shall not limit the CTA's right to seek an order compelling production of documents Pable contends are privileged.

6.      If Pable claims that any document or documents containing information responsive to these Requests have been destroyed, missing, or lost, the production of which is sought by the Request, Pable must furnish a list identifying each destroyed, missing or lost document and identify: (1) the date of the document; (2) each and every author of the document; (3) each and every other person who prepared or participated in the preparation of the document; (4) each and every person who received the document; (5) a description of the document (e.g., email, letter,

memorandum, etc.); and (6) provide sufficient information explaining the circumstances resulting in the said disposition of the document.

7.      To the extent such material requested has already been produced, Pable is instructed to respond by identifying such previously produced responsive material by Bates Number.

8.      Unless otherwise stated, the time frame contemplated by thes Request is from January 1, 2018, through the present.

## DEFINITIONS

1.      The terms "Pable," "you," or "your" mean Christopher George Pable and any attorney or other agent or representative of Pable.

2.      The term "Websites" means any personal website owned or operated by Pable, including but not limited to https://www.menchi.org.

3.       "Showing" means depicting, identifying, reflecting, or reporting.

## <u>SUPPLEMENTAL REQUEST FOR PRODUCTION</u>

1.      Complete and accurate copies of the archived Websites showing the Websites as they appeared from May 1, 2018 through the present.


**RESPONSE:**


 Dated:  October 29, 2020                                Respectfully submitted,

                                                        **Chicago Transit Authority**


                                        By:   s/ *Nicollette L. Khuans*
                                              _____
                                              One of its Attorneys

Elizabeth E. Babbitt
ebabbitt@taftlaw.com
John F. Kennedy
jkennedy@taftlaw.com
Allison E. Czerniak

aczerniak@taftlaw.com
Nicollette L. Khuans
nkhuans@taftlaw.com
Taft Stettinius & Hollister LLP
111 E. Wacker Dr., Suite 2800
Chicago, IL 60601

28124597v1

# EXHIBIT M

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **CHRISTOPHER GEORGE PABLE,** ) | |
| ) | |
| **Plaintiff,** ) | **Case No. 1:19-cv-7868** |
| ) | |
| **v.** ) | **Judge Elaine E. Bucklo** |
| ) | |
| **CHICAGO TRANSIT AUTHORITY** ) | |
| **and CLEVER DEVICES LTD.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |
| **CHICAGO TRANSIT AUTHORITY,** ) | |
| ) | |
| **Counter-Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **CHRISTOPHER GEORGE PABLE,** ) | |
| ) | |
| **Counter-Defendant.** ) | |

**PABEL'S RESPONSES AND OBJECTIONS TO CHICAGO TRANSIT AUTHORITY'S**
**10/29/2020 SUPPLEMENTAL REQUEST FOR PRODUCTION**

Plaintiff/Counter-Defendant Christopher George Pable responds and objects to Defendant/Counter-Plaintiff Chicago Transit Authority's ("CTA's") Supplemental Requests to Plaintiff for Production dated October 29, 2020 as follows:

**GENERAL OBJECTIONS**

1.      Pable objects to the CTA's instructions, definitions, and other prefatory provisions to the extent they impose any meaning or interpretation on the CTA's requests beyond the plain and ordinary sense of the words used in the requests in the context of the provisions of the Federal Rules of Civil Procedure and the Local Rules of the Northern District of Illinois.

2.      Pable objects to the CTA's instructions, definitions, and other prefatory provisions to the extent they impose any obligation on Pable in excess of or different from the requirements of the Federal Rules of Civil Procedure, the Local Rules of the Northern Disrtict of Illinois, and the Orders issued by this Court in this case.

3.      Pable objects to the Time Period for which the CTA requests documents as inconsistent with the parties' agreement to limit discovery to the period June 1, 2018 through December 31, 2018, with the exception of documents relevant to Pable's damages to the extent such damages have accrued or become ascertainable after December 31, 2018.

4.      Pable objects to the CTA's request for information relating to any claim of privilege inconsistent with the parties' anticipated mutual agreement to exchange such information on an agreed-upon date.  All of Pable's specific responses and objections should be understood to not encompass documents withheld on the basis of privilege.

## SPECIFIC RESPONSES AND OBJECTIONS

**Document Request No. 1**

Complete and accurate copies of the archived Websites showing the Websites as they appeared form May 1, 2018 to through the present.

**Response to Document Request No. 1**

Pable objects to the CTA's request on the grounds that it is unreasonable, harassing, and seeks information not relevant to any party's claim or defense and out of proportion to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

November 13, 2020                    Respectfully submitted,


                                     /s/ Timothy A. Duffy
                                     Timothy A. Duffy (ARDC #6224836)
                                     Law Office of Timothy A. Duffy, P.C.
                                     290 Shadowood Ln
                                     Northfield, IL 60093
                                     847-530-4920
                                     tduffy@tduffylaw.com

                                     *Attorney for Plaintiff*
                                     *Christopher George Pable*

## <u>CERTIFICATE OF SERVICE</u>

I, Timothy A. Duffy, attorney for Mr. Pable, hereby certify that on November 13, 2020, I served a copy of the foregoing on the following counsel of record by email to their address of record on the CM/ECF system.

Elizabeth Erin Babbitt
Taft Stettinius & Hollister LLP
111 E. Wacker Drive
Suite 2800
Chicago, IL 60601
312-527-4000
ebabbitt@taftlaw.com

Allison Emma Czerniak
Taft Stettinius & Hollister LLP
111 East Wacker Drive
Suite 2800
Chicago, IL 60601
(312) 840-4487
aczerniak@taftlaw.com

Nicollette L. Khuans
Taft Stettinius & Hollister LLP
111 East Wacker Drive
Suite 2800
Chicago, IL 60601
(312) 527-4000
nkhuans@taftlaw.com

John Francis Kennedy
Taft Stettinius & Hollister LLP
111 East Wacker Drive
Suite 2800
Chicago, IL 60601
(312) 527-4000
jkennedy@taftlaw.com

*Attorneys for Defendant Chicago Transit Authority*

Steven W Jados
SmithAmundsen LLC
3815 E. Main Street, Suite A-1
St. Charles, IL 60174
(630)587-7934
sjados@salawus.com

*Attorney for Defendant Clever Devices, Ltd.*

/s/ Timothy A. Duffy