# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **CHRISTOPHER GEORGE PABLE,** ) ) | |
| Plaintiff, ) ) | Case No. 1:19-cv-7868 |
| v. ) ) | Judge Elaine E. Bucklo |
| **CHICAGO TRANSIT AUTHORITY** ) **and CLEVER DEVICES LTD.,** ) ) | Mag. Judge Heather K. McShain |
| Defendants. ) ) | |
| **CHICAGO TRANSIT AUTHORITY,** ) ) | |
| Counter-Plaintiff, ) ) | |
| v. ) ) | |
| **CHRISTOPHER GEORGE PABLE,** ) ) | |
| Counter-Defendant. ) ) | |

### PABLE'S OPPOSITION TO CTA'S MOTION FOR COSTS

On April 2, 2021, the Court issued an Order (Dkt #54) granting the CTA's motion to compel Mr. Pable to produce his personal cell phone and related items for inspection and imaging and any archived copies of his personal website(s). The Court also requested that Mr. Pable respond to the CTA requests for costs pursuant to Fed. R. Civ. Pro. 37(a)(5) by April 16, 2021. This is Pable's response.

## **BACKGROUND**

As outlined in his response to the CTA's motion to compel (Dkt #47), Mr. Pable produced hundreds of emails, texts, and similar communications spanning thousands of pages of documents in response to the defendants' discovery requests. Also, at the defendants' follow-up request based on the theory that his production had been insufficient, he provided a copy of an image that had been taken of his phone in the course of retrieving that information for production. The image provided did not contain a significant amount of data, which caused the CTA to request the phone be re-examined by its forensic expert. The CTA also requested documents related to Mr. Pable's personal website.

Mr. Pable objected to these further requests. As explained his response to the motion, the fact that his cell phone contained little data was not surprising given that the CTA had caused the user profile on the phone used by Mr. Pable for his CTA work had, without notice or thought as to the consequences for any relevant data, been remotely wiped by the CTA at the time he was placed on a leave of absence prior to his termination. Mr. Pable maintained (and maintains) that further imaging of the phone, though it might yield more data of more recent vintage, was unlikely to yield any information from the relevant time period.

Mr. Pable also explained that he did not have any copies of archived versions of his personal website, and that his only means of finding such information would be to access publicly accessible website archives (e.g., https://archive.org/web/ (a/k/a "The Wayback Machine"), which the CTA has already used to find historical versions of his website.

After the Court granted the CTA's motion on April 2nd, Mr. Pable produced, on April 8th, copies of everything he could regarding his personal website (all of which the CTA likely already has), as well as additional documents related to his claim for damages that has been requested by

2

the CTA. On April 9th, he provided his cell phone to the CTA's expert for inspection and imaging. According to counsel for the CTA, the expert retrieved some 25GB of data from the phone. As outlined in the Joint Status Report filed by the parties this same day, neither counsel for the CTA nor its expert have yet shared any information as to the nature, date ranges, or content of this data, much less that it contains anything of significance to the case.

The parties have presented the Court their positions with regard to the protocol for further sharing of the data retrieved from Mr. Pable's phone. It is anticipated that after the data has been shared, the defendants will conduct a further deposition of Mr. Pable in light of any new information. The CTA has also indicated it may seek further discovery of third parties, but has no specified any.

Mr. Pable has requested that the CTA produce certain documents related to the fact (or absence of) any remote management of a profile on his cell phone and the deletion thereof and the deposition of Mr. Rajiv Desai who was the person responsible for disabling or deleting Mr. Pable's CTA network account at the time he was put on leave. Notwithstanding their efforts to turn this into a case about Mr. Pable's cell phone as opposed to his termination, the CTA has objected to these requests to discover precisely what did or did not occur with respect the CTA's control over his phone.

**ARGUMENT**

Federal Rule of Civil Procedure 37(a)(5) provides that, in the event a motion to compel is granted, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if: (i) the movant filed the motion before attempting in good

3

faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust."

A party's position is "substantially justified" when it is "a reasonably debatable contention based on both fact and law." *DR Distributors LLC v. 21 Century Smoking, Inc.*, ___ F.Supp.3d ___, 2021 WL 185082 (N.D. Ill. Jan. 19, 2021). Here Mr. Pable's opposition to providing the requested discovery was "substantially justified," and therefore no costs should be awarded.

As recounted in his opposition to the CTA's motion (Dkt. #47), Mr. Pable's position was that there was no reason to suspect that any of the communications that the CTA alleged were "missing" from his discovery productions would be found via a further examination of his cell phone (if they ever even existed in the first place). That is still Mr. Pable's position, and it remains to be seen whether the new data retrieved from the phone contains anything from the relevant time period (prior to the termination of his employment) or subsequently generated information (a post-employment discussion about the events that led to his termination, for example) not already produced by Mr. Pable or others, that reveals any material new information relevant to the issues in the case.

Mr. Pable maintains – and now that the content of his phone remains an issue still seeks discovery from the CTA that will allow him to prove – any relevant communications stored on his cell phone form the key time period were wiped from that phone by the CTA on or around October 22, 2018. If this is true, the only conceivable relevance of any new data stored on his phone would be, for example, if he later sent a message that shed new light on something that occurred prior to the deletion. Mr. Pable and other parties have produced a significant number of post-termination communications in discovery – all of which are consistent with what he claims occurred prior to

4

his termination – and there is simply no reason to suspect that further digging into his phone will reveal anything that was "withheld" or that will otherwise add to the collection of produced communications in any way significant enough to justify the admittedly "extraordinary remedy" sought and obtained by the CTA via it motion.

Put simply, Mr. Pable's argument was that the discovery sought was unnecessary and unlikely to yield relevant information; the CTA took the opposing view. Mr. Pable's position, though rejected by the Court, remains reasonable based on the facts as he contends are true, but which he has not yet had the opportunity to establish. Legally, Mr. Pable was and is also on solid ground arguing, as he did in response to the CTA's motion (*see* Dkt #47 at n.3), that there is no relevance to evidence of Mr. Pable's conduct while employed by the CTA acquired by the CTA after his termination, which calls into question the whole project of seeking all data without any limitation from Mr. Pable's cell phone.

With respect to Mr. Pable's website, it is hardly even appropriate to call the issue one of refusal to provide information sought in discovery. Mr. Pable's position was, and is, that he was not in possession or any archived copies of his website. In response to the Court's Order, Mr. Pable has produced data he retrieved from a public database that stores historical versions of websites: https://archive.org/web/ (a/k/a "The Wayback Machine). He also, in response to a supplemental inquiry by counsel for the CTA, provided his user name and password to the website hosting service so that the CTA could verify his representation that he no longer had access to the live website. In short, he never refused to provide anything, and his position that he need not respond to a request for which he had no responsive materials can hardly be called unjustified.

5

## **CONCLUSION**

Mr. Pable respectfully requests that the Court deny the CTA's motion to for costs. At a minimum, any such award should be denied as premature absent a showing that Mr. Pable's position was in fact not substantially justified.

April 16, 2021                                                                             Respectfully submitted,


/s/ Timothy A. Duffy
Timothy A. Duffy (ARDC #6224836)
Law Office of Timothy A. Duffy, P.C.
725 W Orchard Cir
Lake Forest, IL 60045
847-530-4920
tduffy@tduffylaw.com

*Attorney for Plaintiff*
*Christopher George Pable*