UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER GEORGE PABLE,<br>*Plaintiff/Counter-Defendant*,<br><br>v.<br><br>CHICAGO TRANSIT AUTHORITY<br>*Defendant/Counter-Plaintiff*,<br><br>and CLEVER DEVICES LTD.,<br>*Defendant*. | Case No. 19-cv-7868<br><br>Judge Elaine E. Bucklo<br><br>Magistrate Judge Heather K. McShain |

**CHICAGO TRANSIT AUTHORITY'S REPLY IN SUPPORT OF
ITS REQUEST FOR COSTS AND FEES UNDER FED. R. CIV. P. 37(A)(5)**

In granting the CTA's Motion to Compel (the "Motion") as to Pable's cell phone, the Court found "good cause and a justified need for a second forensic imaging of Pable's phone" because: (i) Pable's unilateral imaging denied the CTA the opportunity to weigh in on a search protocol; (ii) the "extremely small" amount of data on Pable's image suggested it was incomplete; (iii) the information sought by the CTA "goes to the heart of Pable's claim against the CTA and the CTA's counterclaim;" and (iv) Pable had "no basis to invoke privacy concerns after voluntarily turning his phone over for the first imaging." (Dkt. 54 at 4-5.) The Court also agreed that the CTA is entitled to discovery on Pable's personal websites. (*Id*. at 5-6.)

As the prevailing party, the CTA is entitled to reasonable expenses it incurred in bringing the Motion, including attorney's fees. Fed. R. Civ. P. 37(a)(5). Absent a showing of "substantial justification" or mitigating circumstances, the payment of fees is *mandatory* under the Rule. *ED&F Capital Markets Ltd. v. JVMC Holdings Corp.*, 335 F.R.D. 174, 180 (N.D. Ill. 2020). As the losing party, Pable bears the burden of persuasion to avoid paying expenses; it is not the CTA's burden to show it is entitled to the award. *Steadfast Ins. Co. v. Auto Mktg. Network, Inc.*, No. 97 C 5696, 1999 WL 446691, at *1 (N.D. Ill. June 23, 1999). Pable has not met this burden.

In an effort to excuse his egregious misconduct throughout discovery, Pable recycles arguments this Court has already rejected by arguing he should not pay the CTA's expenses because his "opposition to providing the requested discovery was 'substantially justified.'"[1] (Dkt. 57 at 4.) As to the phone, Pable repeats, without support, his claim that "there was no reason to suspect that any of the communications that the CTA alleged were 'missing' from his discovery productions would be found via a further examination of his cell phone (if they ever even existed in the first place)." (*Id.*) Pable also argues that "any relevant communications stored on his cell phone form [sic] the key time period were wiped from that phone by the CTA" (*id.*), and that his position "remains reasonable based on the facts as he contends are true, but which he has not yet had the opportunity to establish." (*Id.* at 5.) As to his websites, Pable argues he "never refused to provide anything" where he failed to produce archived copies of his personal websites. (*Id.*)

Pable's persistent efforts to conceal and/or destroy relevant data and information from the CTA over the past 13 months are sanctionable, where the evidence thus far shows that Pable:

(i) initially refused to image his phone at all;
(ii) falsely accused the CTA of "wiping" his phone upon his departure from the CTA;
(iii) unilaterally imaged the phone without first agreeing to a protocol with the CTA;
(iv) produced to the CTA an image of the phone months after the fact that was effectively an empty box devoid of data;
(v) refused to produce the phone to the CTA for re-imaging;
(vi) falsely represented that his phone was no longer operable when it is;
(vii) falsely represented that he possessed no back-ups of at least portions of the phone data;
(viii) deliberately enabled a setting on his phone to destroy communications exchanged with Michael Haynes during the pendency of this action;
(ix) continues to delay the CTA's review of the re-imaged phone as outlined in the Joint Status Report (Dkt. 56);
(x) deleted relevant evidence relating to the CTA's proprietary technology projects from www.menchi.org after the CTA requested related discovery;
(xi) falsely represented that he was unable to access www.menchi.org; and

---

[1] Pable does not argue that an award of sanctions would be "unjust" pursuant to Fed. R. Civ. 37(a)(5)(A)(iii); accordingly, Pable forfeits this argument. *Lorillard Tobacco Co. v. Elston Self Serv. Wholesale Groceries, Inc.*, 259 F.R.D. 323, 327 (N.D. Ill. 2009).

      (xii)    failed to disclose the existence of his other websites and produced archived copies of the same, in violation of the Court's April 2, 2021 Order.[2]

The CTA's request for fees and costs as to this Motion are currently limited to Pable. Given the scope and breadth of Pable's discovery abuses, however, at some point, Pable's counsel must engage in genuine due diligence to ensure Pable's misconduct does not continue infect the entire case, as it has, and cause the CTA to incur substantial fees and costs, as it has.

Pable was not "substantially justified" in his efforts to conceal or destroy evidence and assert misrepresentations to the CTA and the Court. The Court recognized in its April 2, 2021 Order that communications between Pable and Haynes and Pable's phone itself go to the heart of this case. (Dkt. 54 at 5.) The purported "wipe" of the phone is, as the Court noted, wholly unsupported by any evidence in the record. (*Id.* at 4.) As to the new image of Pable's phone, the CTA's third-party consultant reports that, contrary to Pable's previous misrepresentations, the phone is actually rife with *at least 25 GB* of unique data, and that Pable's messages on Signal,[3] Google Hangouts, and email, as well as his web browsing history for the period of *2014 through present* are available for review—in other words, the phone may contain material relevant to the merits of this case and under Fed. R. Evid. 404(b).

Pable's supplemental production on April 7, 2021 regarding his website(s) is equally compromised. Pable only produced files for www.menchi.**dog**,[4] a website that Pable has *at no*

---

[2] The CTA reserves its right to pursue further discovery sanctions against Pable and/or his counsel resulting from Pable's actions pertaining to his website(s), the spoliation of evidence, and/or based on such other discovery abuses which may be discovered through the review of the phone re-image and information produced regarding his website(s).

[3] The CTA's third-party consultant further reports that, contrary to Pable's previous assertions, certain Signal messages exchanged between Pable and Haynes in at least 2019 are indeed available on the cell phone and have been preserved for review as a result of the re-imaging process.

[4] Specifically, it appears that Pable produced .html files for www.menchi.**dog** via the HTTrack Website Copier application, and that the .html files were created using this application on or about February 23, 3021.

*point disclosed previously* (including during his deposition), including files seemingly depicting text and images similar to those once available on www.menchi.**org**. Pable's production is relevant because he still has not produced website data that is or was once available on www.menchi.**org**, including the CTA's proprietary technology projects that Pable had made available on that website in October 2020. The inescapable conclusion is that Pable deleted this information during the course of litigation, after the CTA specifically sought this information in discovery. Moreover, the fact that Pable was seemingly able to migrate at least some of his content once available on www.menchi.**org** to www.menchi.**dog** necessarily indicates that archives or backups of www.menchi.**org** exist, but still have not been produced. As of the time of filing this Reply, www.menchi.**org** now appears to be entirely inaccessible in that it now redirects to https://www.linkedin.com/in/chris-pable/. While Pable claims he has no way to access his own website,[5] it is clear that he (or someone acting on his behalf) accessed his website as recently as April 2021 to arrange for this redirection. The CTA has also learned that, in addition to www.menchi.**dog**, Pable apparently owns or controls additional undisclosed websites that are hosted at the same IP address for www.menchi.**org**,[6] including www.ariadear.com; and www.deltadance.com, which also redirects to www.menchi.**org**.

In his Response, Pable cites to a single case, *DR Distributors, LLC v. 21 Century Smoking, Inc.*, for the limited purpose of providing a cursory definition of "substantial justification" within the meaning of Rule 37. 12 CV 50324, 2021 WL 185082 at *77 (N.D. Ill. Jan. 19, 2021) (Johnston,

---

[5] Pable most recently represented that he "no longer had access to the live website [www.menchi.**org**]" in his Response. (Dkt. 57 at 5.)
[6] The CTA's discovery requests specifically sought complete and accurate archived copies of Pable's personal websites, *including but not limited to* www.menchi.**org** (Dkt. 45-1 at PageID #:509), and the Court's April 2, 2021 Order specifically directed Pable to produce archived copies "of any websites owned or operated by Pable, *including but not limited to* www.menchi.**org**." (Dkt. 54 at 6) (emphasis added).

J.). But Pable ignores the substance of this case, which supports an award of the CTA's expenses. *Id.* at *83. The *DR Distributors* defendants turned over hard drives to a third-party consultant for imaging, and the individual defendant (who like Pable had a background in computer science and was "proficient in computer programming languages" (*id.* at 19)) and his counsel knew or should have known that their requested imaging and search protocol would not capture all relevant ESI. *Id.* at *30-*31. This improper conduct resulted in motion practice and delays to discovery, culminating in, *inter alia*, the production of responsive ESI after the close of discovery and spoliation issues. *Id.* The *DR Distributors* defendants were sanctioned by the court, just as Pable's conduct should be sanctioned here. Pable's conduct cannot reasonably be construed as "substantially justified," and the CTA is entitled to recover all of its reasonable expenses incurred in bringing its Motion, Reply, and the costs arising from the re-imaging of the phone and discovery of undisclosed websites. *See Lightspeed Media Corp. v. Smith*, 830 F. 3d 500, 507 (7th Cir. 2016) (Rule 37(a) sanctions should encompass all the expenses that would not have been sustained had the opponent conducted itself properly).

WHEREFORE, the CTA respectfully requests that the Court: (i) award the CTA all its reasonable expenses incurred in bringing its Motion to Compel and Reply pursuant to Fed. R. Civ. P. 37(a)(5), including its attorney's fees, and expert consultant fees for the expense of re-imaging the phone and recovery of undisclosed website information, to be paid by Pable; (ii) grant the CTA leave to file its Bill of Costs in furtherance of the award; and (iii) grant all other relief it deems appropriate.

Dated: April 23, 2021

Respectfully submitted,

CHICAGO TRANSIT AUTHORITY

By: *s/ Elizabeth E. Babbitt*
                One of Its Attorneys

John F. Kennedy
jkennedy@taftlaw.com
Elizabeth E. Babbitt
ebabbitt@taftlaw.com
Allison E. Czerniak
aczerniak@taftlaw.com
Nicollette L. Khuans
nkhuans@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker, Suite 2800
Chicago, Illinois 60601
(312) 527-4000