UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER PABLE  Plaintiff,  v.  CHICAGO TRANSIT AUTHORITY and CLEVER DEVICES LTD.,  Defendants. | No. 19 CV 7868  District Judge Bucklo  Magistrate Judge McShain |
| CHICAGO TRANSIT AUTHORITY,  Counter-Plaintiff,  v.  CHRISTOPHER PABLE,  Counter-Defendant. | |

**ORDER**

Pending before the Court is a motion by defendant/counter-plaintiff Chicago Transit Authority (CTA) to extend the close of fact discovery by 30 days and order plaintiff/counter-defendant Christopher Pable to disable the "disappearing messages" function on the Signal Messenger app (Signal) on his cell phone. [69].[1] The motion is fully briefed [73, 76], and the Court held a motion hearing on August 13, 2021 [79, 80]. For the following reasons, the motion is granted in part and denied in part.

**Background**

The CTA's motion follows in the wake of a court-ordered second imaging of the cell phone that Pable used at the time of the events giving rise to this lawsuit. As the Court explained in its order granting CTA's motion to compel the imaging, Pable had had the phone imaged in June 2020, but this first imaging was "undertaken unilaterally by Pable without notice to, and thus without seeking input or agreement

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings.

regarding the protocol for the imaging from, the CTA." [54] 4. The Court concluded that the CTA had "raised a legitimate question about the completeness of the forensic imaging that Pable unilaterally produced" because, *inter alia*, the imaging produced an "extremely small amount of data": there was no data associated with the "communication[s] exchanged on third-party applications" in the image, nor did the image include internet browsing and/or search histories, audio or visual files, or information or data associated with the cell phone's SD card(s). [*Id.*].

The second imaging was performed by CTA's vendor in April 2021, and this image contained 25 GB of unique data–substantially more than the .2 GB of user-generated data produced in the first image. [69] 4.

Thereafter, CTA deposed Pable a second time in order to elicit information concerning how Pable used the phone while employed by CTA, how he communicated with his former supervisor, Michael Haynes, whether and how he used the phone to encrypt or otherwise manage security on his work computer, how he had handled the phone after resigning from CTA in November 2018, and what role, if any, he had played in the first imaging. [76] 3. Pable testified that he had no involvement in the first imaging process, that he never saw or asked to see the first image produced by his vendor, and that he had "zero insight" into the process. [76-2] 3-4, 18-19. Pable also testified that, when he received his phone back from the vendor that performed the first imaging, "it appeared like it was quote, unquote wiped, but it wasn't. It was unlinked. I was eventually able to relink the data." [69-1] 6.

## Discussion

### A. Extension of Fact Discovery

CTA seeks an extension of the fact discovery cutoff in order to depose and propound written discovery to the vendor that performed the first imaging regarding the circumstances surrounding Pable's phone and the first image. CTA argues that this discovery is relevant to the merits of the case for two reasons: (1) Pable used the phone to communicate about this litigation, in particular with Haynes; and (2) Pable's defense to the CTA's counterclaim under the Computer Fraud and Abuse Act depends in part on his assertion that, when CTA disabled his access to its network after his resignation, this had the effect of "wiping" Pable's phone and rendering his work computer inaccessible.

CTA recognizes that its request implicates Rule 26(b)(4), which provides that, "[o]rdinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial" unless there are "exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by

2

other means." Fed. R. Civ. P. 26(b)(4)(D)(ii). But CTA contends that exceptional circumstances exist here because "[t]he condition of Pable's phone at the time Pable's Vendor observed it prior to, during, and after the initial imaging was not observable by the CTA" because the CTA "had no knowledge of the first image being created in June 2020 until Pable produced it to the CTA in October 2020." [69] 7. The CTA adds that, in light of Pable's testimony that he had no involvement in or insight into the creation of the first imaging, "only Pable's vendor can testify to the data contained on the phone when Pable delivered it to him, what, if any, direction the Vendor received to image the phone, and the data on the phone after the imaging process was complete and it was returned to Pable." [*Id.*].

Pable opposes the motion, arguing first that CTA's request is untimely because CTA has "been complaining about the inadequacy of the first image of [his] phone since last November[,]" but did not seek to take this discovery until mid-July 2021. [73] 4. He also contends that no exceptional circumstances justify CTA's request because "[e]verything at issue: the phone, the first image, and the second image . . . has already been produced to the CTA." [*Id.*] 5. Finally, Pable argues that CTA's request "would raise an additional hornets' nest of privilege issues[.]" [*Id.*].

The Court agrees with CTA that the discovery it seeks is relevant, permissible under Rule 26(b)(4)(D)(ii), and timely.

First, the state of the phone at the time of the first imaging as well as the first imaging itself are relevant to this case. In its prior order granting CTA's motion to compel the forensic imaging of Pable's phone, the Court found that the phone is relevant to (1) CTA's counterclaim, which depends, in part, on the allegation that Pable used his phone to encrypt his work computer without authorization; and (2) Pable's defense to that claim, which depends, in part, on his contention that CTA effectively "wiped" his cell phone when it disabled his access to CTA's computer network. [54] 5; *see also* [*id.*] 2. Thus, discovery directed to Pable's vendor may produce relevant information that supports or rebuts these claims.

Furthermore, as CTA explains in its reply brief, the second imaging established that data predating Pable's administrative leave in October 2018–and thus predating the alleged "wiping"–still exists on Pable's phone but was not a part of the first image. [76] 5; *see also* [69] 4. This discrepancy–and the significantly different quantities of data recovered in the first and second images–further convince the Court that the circumstances surrounding the first imaging are discoverable. To be sure, Pable maintains that CTA's disabling of his network access caused the "wipe" of his phone to occur, but thus far Pable has not cited any evidence that would support this assertion or explained how such a wiping could occur. While the Court does not mean to imply that Pable has no such evidence or will be unable to establish this defense at trial, his failure to point to evidence explaining how the wiping could have occurred (or why so much more data was produced in the second imaging) underscores

3

the reasonableness of CTA's request for further discovery into the state of the phone and the first imaging process.

Second, the Court recognizes CTA's argument that this evidence is also relevant to establishing whether Pable spoliated evidence. [76] 2. At present, however, CTA has not asserted a spoliation claim, and its motion does not ask the Court for any spoliation-related remedies. *See* [80] 12 (CTA counsel confirming this point at motion hearing). Because the Court has found that the discovery CTA seeks to conduct is relevant to its counterclaim, the Court need not separately decide whether the discovery is also relevant to establishing a spoliation claim that CTA has not yet asserted. The Court observes, however, that investigating potential spoliation of evidence is a permissible use of civil discovery. *See, e.g.*, *Vega v. Chicago Park Dist.*, No. 13 C 451, 2014 WL 12959464, at *9 (N.D. Ill. Sept. 24, 2014) ("With respect to the investigators' notes, the Park District states only that the investigators do not currently have any such notes. Vega may seek deposition testimony regarding whether or not notes were destroyed and if so, the circumstances under which any such documents were destroyed.") (internal quotation marks and citation omitted).

Third, the Court finds that there are "exceptional circumstances" for CTA's request to obtain written and oral discovery from Pable's vendor. "The purpose of Rule 26(b)(4)(D) is to shield the facts or opinions of experts retained at the expense of one party in anticipation of litigation from discovery and use by an adversarial party." *Kingdom Auth. v. City of Rockford*, No. 09 C 50240, 2011 WL 245585, at *3 (N.D. Ill. Jan. 26, 2011). "In essence, the doctrine exists to ensure that a party cannot freely benefit from expert legal information obtained at the expense of an adversarial party in anticipation of litigation." *Id.* "Exceptional circumstances are shown if the party seeking discovery is unable to obtain equivalent information from other sources." *Spearman Indus., Inc. v. St. Paul Fire & Marine Ins. Co.*, 128 F. Supp. 2d 1148, 1151-52 (N.D. Ill. 2001).

CTA has shown that it cannot obtain equivalent information about the state of the phone at the time of the first imaging and the first imaging process itself from an equivalent source. Because Pable produced the first image unilaterally and without CTA's input into the imaging protocol–a significant factor in the Court's decision to compel a second imaging, *see* [54] 4–CTA could not observe the condition of the phone before, during, or after the imaging, nor did CTA know the protocol used by the vendor to produce the image. Furthermore, while Pable represented that the first image was a "complete image of the data on the phone when the phone was imaged," [76-3] 5, the fact that substantially more data was produced during the second imaging process calls that assertion into question and raises the possibility that the vendor's imaging process affected the completeness of the image. Likewise, Pable's testimony that his phone "appeared like it was quote, unquote wiped" when the vendor returned his phone to him, but that Pable was able to "relink the data" [69-1] 6, raises a question about the condition of the phone and its data at the time of the first imaging.

4

The Court also notes that Pable's counsel represented in October 2020 that the phone no longer turned on [76-3] 5, but this was contradicted during the second imaging process, when CTA's vendor was able to power the device on. [76] 4. CTA attempted to resolve some of the foregoing issues at Pable's second deposition, but Pable testified that he was not involved in the imaging process and knew essentially nothing about it. In contrast, the vendor that performed the imaging is in a unique position to describe, *inter alia*, the state of Pable's phone at the time of the imaging, what instructions it received from Pable with respect to producing the image, and how the imaging occurred. Finally, Pable's contention that CTA's request raises "privilege issues" does not change the result. Rule 26(b)(4)(D) is "simply an application of the work product rule" to a party's retention of a consulting expert. *Appleton Papers, Inc. v. E.P.A.*, 702 F.3d 1018, 1024 (7th Cir. 2012). Therefore, the discovery at issue in CTA's motion "will, by definition, be work product because [Pable] use[d] the [vendor] 'in anticipation of litigation.'" *Id.* (quoting Fed. R. Civ. P. 26(b)(4)(D)). Nevertheless, the Rule expressly permits CTA to discover what would otherwise be protected by the work-product doctrine because exceptional circumstances make it impractical for CTA to obtain the discovery by other means. Accordingly, the bare fact that this evidence would ordinarily be protected work product is not a basis to deny CTA's motion.

Fourth, the Court rejects Pable's argument that CTA's motion is untimely. Although CTA has long taken issue with the adequacy of the first image, events that postdate the Court's April 2, 2021 order compelling the second imaging gave CTA new and specific reasons to seek discovery from the vendor. These included, most notably, the substantial discrepancy in the amount of data produced during the October 2020 image and the second image produced in April 2021, Pable's testimony that his phone appeared to be "wiped" when he received it from the vendor, and the fact that Pable was unable to answer a number of CTA's legitimate questions about the process that produced the first imaging.

Because CTA has demonstrated that exceptional circumstances exist, the Court will grant CTA's motion to extend the fact discovery period and permit CTA to serve written and oral discovery on Pable's vendor. More specifically, CTA is entitled to discover (1) any instructions received by the vendor from Pable or Pable's counsel regarding how the imaging was to be conducted, and (2) any notes, reports, or records generated during or relating to the first imaging. CTA may not obtain any mental impressions of counsel, nor may CTA obtain any communications from counsel outside the scope of the two foregoing categories. Fact discovery is hereby extended until October 13, 2021 for the sole purpose of completing this discovery.[2]

---

[2] CTA has also served a subpoena on Signal Messenger, LLC, and, as of the August 13, 2021 motion hearing, the response to this subpoena was still outstanding. CTA may continue to pursue a response to this subpoena, which Pable does not oppose [73] 2, during the remainder of the fact discovery period.

### B. "Disappearing Messages" Function

CTA also seeks an order directing Pable to disable the "disappearing messages" function on the Signal Messenger app on his phone. [69] 2. In support, CTA asserts that Pable used the Signal app to communicate with Haynes before the litigation began and during its pendency. [*Id.*] 8-9. At some point, Pable enabled the "disappearing messages" function on his Signal app. [*Id.*] 9-10. As Haynes testified, once the "disappearing messages" function is enabled, "any communication on either side would automatically delete from both logs, both the sender and the receiver log 24 hours after eyeballs are on it." [*Id.*] 9. Because Pable had this function enabled on his phone, CTA contends that any communications he had with Haynes postdating their separation from CTA have not been preserved. [*Id.*] 9-10. Consequently, CTA maintains, Pable has deleted from his phone his "communicat[ions] with Haynes about the facts and evidence related to the case" that occurred over Signal. [*Id.*] 10. CTA requested that Pable disable the "disappearing messages" function on his phone, but he refused to do so. [*Id.*].

Pable opposes the motion. Pable acknowledges communicating with Haynes over Signal while this lawsuit has been pending, but he contends that he has not done so since March 17, 2021. [73] 7. Pable argues that, while CTA made a "fair" request that he "preserve any ESI on his personal cell phone relevant to his litigation and which he has a duty to preserve," CTA "has no right or authority to dictate how [he] fulfills his obligation to preserve relevant information." [*Id.*].

The Court denies CTA's request. First, CTA did not cite case law in its briefs to support its request for an order directing a litigant to disable a specific function on a cell phone app as a means of effecting the litigant's duty to preserve evidence, and CTA acknowledged at the motion hearing that it was aware of no case imposing such an order. [80] 48-49. Second, the Court concludes that such an order is not likely to be an effective mechanism for preserving any Signal messages between Pable and Haynes. As counsel for CTA clarified at the motion hearing, if Haynes has the "disappearing messages" function enabled on his phone, all messages between Haynes and Pable would disappear regardless of whether Pable had disabled the "disappearing messages" function on his phone. *See* [*id.*] 52. The Court has no power to direct such an order at Haynes, who is not a party to this case. Third, Pable's counsel has represented that Pable "has been instructed to preserve any written communications he may receive or send to Mr. Haynes, including any Signal messages, but that he may do so by any other means that preserves all the relevant information without changing the settings on his phone that would force the retention of all of his communications." [73] 8 n. 6. Counsel further represented at the motion hearing that he has instructed Pable that if he receives a Signal message from Haynes, Pable must alert counsel so that counsel can take steps to preserve the message. [80] 55. Fourth, the Court has concerns about the overbreadth of such an

6

order, which would cause Pable to save all Signal messages he receives from any sender, not just Haynes.

For all these reasons, the Court finds that CTA has not established good cause for its request for an order directing Pable to disable the "disappearing messages" function on his Signal app. Rather, the Court takes counsel at his word that Pable has been advised about his duty to preserve relevant evidence, including any Signal communication with Haynes, and the Court expects Pable and as well as the other litigants in this case to fulfill their respective duties to preserve relevant evidence.

## Conclusion

For the foregoing reasons, CTA's motion [69] is granted in part and denied in part. The fact discovery cutoff is extended to October 13, 2021 for the limited purpose of permitting CTA to serve written and oral discovery on the vendor that imaged Pable's phone and for CTA to pursue a response to its subpoena to Signal Messenger, LLC. The request for an order directing Pable to disable the "disappearing messages" function on the Signal app on his cell phone is denied.

_____
**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: September 13, 2021**