UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER PABLE, | |
| Plaintiff, | Case No. 19 CV 7868 |
| v. | District Judge Maldonado |
| CHICAGO TRANSIT AUTHORITY, ET AL., | Magistrate Judge McShain |
| Defendants. | |

**ORDER AND
REPORT AND RECOMMENDATION**

Pending before the Court is the Chicago Transit Authority's (CTA) petition for attorney's fees and costs in connection with its successful motions to compel a second forensic imaging of plaintiff Christopher Pable's cell phone and for sanctions under Fed. R. Civ. P. 37(e) based on spoliation of electronically stored information (ESI). [163].[1] Pable has filed a response in opposition. [167]. In accordance with Fed. R. Civ. P. 37(a)(5)(A), the petition is granted in part and denied in part with respect to costs and fees associated with the motion to compel, and the CTA is awarded $21,367.00 in attorney's fees and costs. With respect to the Rule 37(e) motion, and in accordance with 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1), the undersigned respectfully recommends that the District Judge grant the petition in part and deny it in part and award the CTA $75,175.42 in attorney's fees and costs.

**I.     Motion to Compel Second Forensic Imaging**

The CTA seeks $22,489.50 in attorney's fees and $12,189.51 in costs that it maintains were reasonably incurred in connection with its successful motion to compel a second forensic imaging of Pable's cell phone. [163] 12-13. According to the CTA, the fees and costs fall into two categories: (1) fees and costs incurred between October 31, 2020, when the CTA received the first forensic image of Pable's cell phone, and December 20, 2020, when the parties reached an impasse over the CTA's request that Pable submit the phone for a second imaging; and (2) fees and costs incurred between February 5, 2021, when the CTA filed its motion to compel, and April 2021, when the CTA had the phone re-imaged by its own e-discovery vendor. *See* [*id.*] 4, 10-

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings.

13. The petition is supported by a declaration from one of CTA's attorneys, John F. Kennedy, that describes the billing rates for counsel and paralegals who worked on this matter [163-1], and to which are attached counsel's billing entries and invoices for various costs incurred by CTA's counsel [163-2, 163-3, 163-4]. The specific items for which CTA seeks to recover its fees and costs are as follows:

1. Engaging in Rule 37.2 conferences with plaintiff's counsel Timothy A. Duffy seeking the forensic preservation of the Phone as early as March 2020 upon learning that Pable used the Phone to message Haynes about the Dayton Hack in August 2018;

2. Engaging in further Rule 37.2 conferences with Duffy regarding Pable's refusal to produce any ESI, including the First Image, as required under the MIDPP, by the June 29, 2020 deadline;

3. Analyzing Pable's deficient MIDPP production of June 30, 2020, which did not include the First Image;

4. Moving to extend the close of written discovery in light of Pable's deficient MIDPP production;

5. Engaging in further Rule 37.2 conferences with Duffy, wherein Pable continued to refuse to produce the First Image;

6. Analyzing Pable's deficient responses to the CTA's First Requests for Production, where Pable refused to produce any additional responsive materials—including a copy of the First Image;

7. Engaging in further Rule 37.2 conferences with Duffy regarding the deficiencies in Pable's discovery responses, where Pable finally agreed to produce a complete forensic image file of the Phone;

8. Requesting complete copies of Pable's archived personal websites after the CTA discovered that Pable posted proprietary information about certain CTA technology projects posted on one such website;

9. Analyzing the deficient First Image produced by Pable on October 31, 2020, in conjunction with 4Discovery, the CTA's consultant;

10. Engaging in further Rule 37.2 conferences with Duffy requesting that Pable produce the Phone for re-imaging and addressing Pable's objections to the CTA's requests for archived copies of his personal websites;

11. Drafting, revising, and filing the oversized Motion to Compel and its accompanying 13 exhibits on February 5, 2021 after reaching an impasse on the issues surrounding the First Image and Pable's personal websites;

12. Drafting, revising, and filing the Reply in Support of the Motion to Compel on February 19, 2021;

13. Drafting, revising, and filing its Reply in Support of Attorney's Fees and Costs on April 23, 2021 after the Court granted the Motion to Compel;

14. Engaging in: (i) Rule 37.2 conferences with Duffy; and (ii) briefing and a subsequent hearing regarding the re-imaging protocol for the Phone, including issues pertaining to potentially privileged items that may be available on the Phone; and

15. Re-imaging Pable's Phone in April 2021 pursuant to the Court-ordered review protocol, and analyzing the newly-available data available from the second, complete forensic image of the Phone generated by 4Discovery (the "Second Image").

[163] 3-4.

Pable objects that the CTA's petition seeks to recover costs that are not related to the preparation and filing of the motion to compel. [167] 2. Pable contends that most of the fees and costs at issue related only to "the CTA's decision to pursue additional discovery of the cell phone that would have been incurred absent any need to file a motion to compel[.]" [*Id.*]. Thus, Pable contends that the CTA is not entitled to recover any fees or costs for this "normal-course discovery activity, the costs of which would have been incurred regardless of whether Pable agreed or objected to the second imaging." [*Id.*] 2-3.[2]

---

[2] Pable also renews his argument that his opposition to the motion to compel a second forensic imaging was substantially justified. *See* [167] 3 n.1. The undersigned concludes that these arguments, which were not presented in Pable's opposition to the CTA's original motion for costs, *see* [57], are forfeited and not properly before the Court. *See John K. MacIver Inst. for Pub. Policy, Inc. v. Evers*, 994 F.3d 602, 614 (7th Cir. 2021) ("A party who does not sufficiently develop an issue or argument forfeits it."). In any event, there is no merit to Pable's claim that the undersigned "was led astray by the CTA's mischaracterization of the relative positions taken by the parties" respecting the need for, and possible relevance of, the second forensic imaging. [167] 3 n.1. In support, Pable states that the results of the second imaging established that "no [Signal] conversation thread in this data had more than 50 entries," which undermines the undersigned's finding, *see Pable v. Chicago Transit Auth.*, No. 19 CV 7868, 2023 WL 2333414, at *29 n.14 (N.D. Ill. Mar. 2, 2023); [158] 44 n.14, that Pable's testimony that he had enabled a fifty-message cap in his Signal app was not credible. Setting aside Pable's failure to make that point in opposing the spoliation motion, *see Pable*, 2023 WL 2333414, at *24-25; [158] 37 (noting lack of evidence to corroborate claim that fifty-

3

### A. Legal Standard

Rule 37(a)(5) provides that if a motion to compel "is granted–or if the requested discovery is provided after the motion was filed–the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5). "In order to arrive at the amount to be awarded as reasonable fees, this court must determine the reasonable hourly rate to be applied and the number of hours reasonably expended, and then multiply the two figures." *Haywood v. Wexford Health Sources, Inc.*, No. 16 CV 3566, 2021 WL 2254968, at *10 (N.D. Ill. Jun. 3, 2021) (internal quotation marks omitted). "This calculation, known as the lodestar rate, yields a presumptively reasonable fee, but the court may nevertheless adjust the fee based on factors not included in the computation." *Id.* (internal quotation marks omitted).

### B. Reasonableness of Counsel's Rates

The undersigned has previously recommended that the District Judge find that CTA's hourly rates of $295 for attorneys and $100 for paralegals is reasonable. That recommendation was based on statements in the Kennedy declaration that (1) the $295 hourly rate is a blended rate charged by all attorneys working on the matter, whose experience ranged between eight and thirty-six years in practice (and who all billed at far higher hourly rates); and (2) the CTA had paid all fees at the billed rate. *See Pable*, 2023 WL 2333414, at *44; [158] 67-68. The undersigned therefore incorporates that recommendation and the reasons for it here and finds that the $295 rate for attorneys and $100 rate for paralegals are reasonable.

---

message cap had been enabled), the undersigned's finding that Pable's opposition to the motion to compel was unjustified did not rest on that narrow component of the undersigned's broader determination that Pable's testimony about his use of Signal lacked all credibility. It rested instead on the Court's finding that (1) Pable made a unilateral decision to image the phone and thus denied the CTA the opportunity to have a say in how the imaging would be conducted, (2) the image contained suspiciously little data (for reasons that were never credibly explained), and (3) Pable offered no evidence to support his claim that the remote "wiping" of his phone, which allegedly occurred when he lost access to the CTA's networks, caused the loss of relevant data on his phone. In these circumstances, it was reasonable and appropriate for CTA to seek a second imaging to better understand the data set contained on Pable's phone, and unreasonable for Pable to oppose those efforts–particularly when Pable's lawyer, Timothy Duffy, knew that the first image was not, as counsel falsely represented to the CTA, "a complete image of the data on the phone when the phone was imaged." [45-1] 58.

4

### C. Reasonableness of the Hours Expended

The Court concludes that Rule 37(a)(5) entitles the CTA to recover only those costs and fees that were incurred meeting and conferring with Pable about its request that the phone be produced for a second imaging (corresponding to item 10 in the CTA's fee petition) and drafting, revising, and filing of the motion to compel, the reply brief, and the reply in support of attorney's fees and costs (corresponding to items 11, 12, and 13). The remainder of the CTA's fee request is not compensable because it relates to the CTA's pursuit of discovery that would have been undertaken regardless of whether Pable agreed to or opposed the CTA's motion to compel a second imaging.

"[T]here are circumstances in which time spent prior to the filing of a discovery motion are properly included in a fee award under Rule 37." *Senior Lifestyle Corp. v. Key Benefit Adm'rs, Inc.*, No. 1:17-cv-2457-JMS-MJD, 2020 WL 3642511, at *6 (S.D. Ind. Jul. 6, 2020). But Rule 37(a) "does not authorize an award of fees for every action or expense a party takes related to the discovery dispute from which a motion to compel arises." *State Farm Mut. Ins. Co. v. Indiana Pub. Transp. Co.*, No. 1:22-cv-1113-JRS-MJD, 2023 WL 2712324, at *1 (S.D. Ind. Mar. 29, 2023).

Here, most of the fees and costs sought by the CTA relate to discovery disputes that cannot properly be classified as "conduct necessitat[ing]" the motion. For example, the first five items in the CTA's fee petition concern discovery disputes that long predated the filing of the motion to compel and do not reasonably relate to the CTA's later requests that Pable submit the phone for a second imaging. *See* [163] 3-4. Moreover, these items relate to ordinary discovery disputes that the CTA was very likely to have pursued regardless of whether the CTA would later pursue a motion to compel a second imaging of Pable's cell phone. Likewise, items 6, 7, 8, and 9 also relate to ordinary discovery disputes over the alleged deficiencies of Pable's document production (6, 7, and 9) and the CTA's serving of additional discovery requests (8). This is discovery that would have occurred regardless of the parties' later dispute over the need for a second imaging.

In contrast, the parties' meet-and-confer conferences in November 2020 (item 10) during which the CTA made the case for a second imaging and for Pable to produce archived copies of his website, and which immediately preceded the filing of the motion to compel, are properly included in a Rule 37(a)(5) fee award. *See Rackemann v. LISNR, Inc.*, No. 1:17-cv-624-MJD-TWP, 2018 WL 3328140, at *6 (S.D. Ind. Jul. 6, 2018) ("courts in the Seventh Circuit have recognized that these sorts of tasks are made necessary by the opposing party's failure to provide the requested discovery, and may be included in attorney fees"). Likewise, the costs and fees associated with the filing of the motion to compel, reply brief, and original brief in support of its request for fees (items 11, 12, and 13) are compensable.

Finally, the CTA is not entitled to fees or costs incurred after the motion to compel was granted. *See Hubert v. Oswego Junction Ents. LLC*, No. 21 CV 3360, 2023 WL 2933052, at *2 (N.D. Ill. Apr. 13, 2023) (plaintiff not entitled to fees incurred "prod[ding] new defense counsel . . . to produce all the documents the Court ordered produced" because "time spent *after* the Court had ruled on Plaintiff's Motion does not justify an award of attorneys' fees or costs under Rule 37(a)(5)(A)") (emphasis in original). Accordingly, the Court awards the CTA no fees and costs in connection with item 14–the Rule 37.2 conferences and in-court hearing relating to the handling of privileged materials that arose after the second image was generated and produced– or 15–the second imaging of the phone that was generated by CTA's e-discovery vendor.

For these reasons, the Court grants the CTA's fee petition in part and denies it in part and awards the CTA a total of $21,367.00 in fees and costs. This sum represents a total of 63.1 attorney hours[3] at $295/hour, for a total of $18,762.00 in attorney's fees; 0.4 hours[4] of paralegal time at $100/hour, for a total of $40.00 in paralegal costs; and $2,565.00 in costs incurred by CTA's e-discovery vendor.[5] As provided in Rule 37(a)(5)(A), this sum shall be paid solely by Pable's attorney, Timothy Duffy.

## II. Rule 37(e) Motion

The CTA seeks $90,122.50 in attorney's fees, $750.00 in paralegal costs, $1,767.50 in e-discovery costs, and $7,136.45 in deposition costs in connection with Rule 37(e) motion based on spoliation of ESI. *See* [163] 12-13. These fees and costs correspond to what the CTA describes as two timeframes: (1) the "work performed to uncover Pable and Duffy's lies surrounding the spoliation of ESI following the CTA's analysis of the Second Image . . . in April 2021," and (2) the work performed in briefing the motion for sanctions. [*Id.*] 13. According to the CTA, the following tasks are compensable under Rule 37(e):

1. Subpoenaing Haynes for Signal messages exchanged with Pable that Pable did not himself produce during the course of written discovery;

2. Preparing for and taking the deposition of Haynes on March 16, 2021, and discovering that Pable and Haynes were exchanging relevant Signal messages at the time of the Dayton Hack and during the course of this litigation that neither Pable nor Haynes produced, including because

---

[3] The compensable attorney fee entries are those found at the following locations in the timesheets attached to the Kennedy declaration: [163-2] 6 (2.8 hours); [*id.*] 13 (8.8 hours); [*id.*] 14 (21.0 hours); [*id.*] 16 (9.8 hours); [*id.*] 20 (5.6 hours); [*id.*] 22 (0.8 hours); [*id.*] 23 (2.5 hours); [*id.*] 24 (11.8 hours).
[4] The compensable paralegal time entry is found at [163-2] 15 (0.4) hours.
[5] The compensable costs incurred by the vendor is found at [163-3] 3-4.

       certain of those Signal messages were configured by Pable to automatically and permanently delete via Signal's "Disappearing Messages" function;

3. Engaging in Rule 37.2 conferences on March 17, 2021, wherein the CTA demanded that Pable take action on his devices to ensure that his communications relating to the litigation be preserved, and that all "Disappearing Messages" functionality be disabled;

4. Analyzing the differences in Signal messages between Haynes and Pable as produced by each party;

5. Investigating Pable's false and unsupported claim that the CTA "wiped" his Phone at the time he resigned in lieu of termination as a purported explanation for the data missing from the Phone;

6. Preparing for and taking the second deposition of Pable on July 6, 2021, which proceeded via Zoom and was recorded by agreement of the parties, which, as the Court predicted, was necessary in light of the newly-available evidence resulting from the Second Image–and during which Pable continued to falsely blame Haynes for the deletion of the pre-November 2, 2018 Signal messages;

7. Drafting, revising, and filing its Motion for an extension of time on fact discovery filed on July 15, 2021 so that the CTA could depose Pable's vendor that generated the deficient First Image, and seeking an Order requiring Pable to disable the "Disappearing Messaging" function on his Phone;

8. Drafting, revising, and filing its Reply in Support of the Motion for an extension of time on fact discovery on July 30, 2021;

9. Subpoenaing Signal to discover information refuting Pable's lies relating to the deletion of the pre-November 2, 2018 Signal messages;

10. Preparing for and taking the first, second, and third depositions of Quest's representative, Dan Jerger, to discover information refuting Pable and Duffy's lies relating to the First Image;

11. Drafting, revising, and filing its partially opposed Motion for leave to file the oversized first Motion for Sanctions on June 10, 2022;

12. Drafting, revising, and filing its first Motion for Sanctions on June 17, 2022;

7

13. Drafting, revising, and filing its Response to Pable's Motion to strike hyperlinks in the CTA's first Motion for Sanctions on June 17, 2022;

14. Voluntarily re-filing the oversized Motion for Sanctions, without hyperlinks, and its accompanying Exhibits 1-28 on June 27, 2022;

15. Engaging in unsuccessful Rule 37.2 conferences regarding Pable's purportedly new factual defenses to spoliation as set forth in his Affidavit in support of his Response opposing the Motion for Sanctions, as well as Duffy's Certified Statement;

16. Drafting, revising, and filing its Motion to Stay the briefing schedule for the Motion for Sanctions to allow for additional discovery surrounding new "facts" in Pable's Affidavit, and seeking to strike Duffy's Certified Statement; and

17. Drafting, revising, and filing the Reply in Support of the Motion for Sanctions.

[*Id.*] 5-6 (internal citations omitted).

Notably, the CTA's fee petition makes no specific arguments why the hours spent on the 17 tasks identified above were necessary and why the corresponding fee request was reasonable. Nor does the petition even link the work associated with these tasks to any of the specific billing entries attached to the Kennedy declaration (though in some instances (but not all) the relationship between the discovery items and the fees incurred is apparent). Rather, the CTA's position seems to be that, because the CTA incurred roughly $100,000 in fees and costs in connection with the motion, every penny of those fees was reasonably and necessarily incurred and must be awarded as a curative measure under Rule 37(e)(1). The undersigned recommends that the District Judge reject this position for the reasons set forth below.

Pable opposes the fee request on multiple grounds.[6] First, Pable contends that the CTA cannot recover any fees or costs that were incurred relating to "any alleged intentional deletion of Signal messages" because discovery into the completeness of Pable's and Haynes's Signal messages "would have been the subject of discovery regardless of any spoliation." [167] 6-7. Second, Pable argues that the CTA cannot recover any of the costs and fees incurred in connection with Pable's second deposition

---

[6] Pable also renews his argument that Rule 37(e) does not authorize an award of attorney fees. *See* [167] 5. Given that Pable has filed objections with the District Judge to the undersigned's recommendation that fees be awarded as a curative measure under Rule 37(e)(1), and that the scope of this Report and Recommendation is limited to determining the amount of fees to which the CTA is entitled under Rule 37(e), the undersigned declines to address this argument.

8

because the parties knew at the time of his first deposition that "there could very well be additional information to be produced that would necessitate a second deposition[.]" [*Id.*] 7. Third, Pable contends that the CTA cannot recover fees and costs relating to the second imaging of the phone "because the work leading up to the actual motion" for Rule 37(e) sanctions–including the second imaging–"would have proceeded in the same way. The mere fact that discovery reveals a concern for what is later determined to be spoliation does not automatically convert that discovery into a reasonable costs because of the spoliation." [*Id.*] 8. Finally, to the extent that fees can or should be awarded under Rule 37(e), Pable contends that the fee award cannot be imposed jointly and severally on him and Duffy, and that any such award should respect the relative roles that each played in the spoliation of the Signal messages and the cell phone. *See* [*id.*] 9.

### A.     Legal Standard

As the undersigned concluded in the Report and Recommendation, a court's power to impose curative measures under Rule 37(e)(1) includes the power to award attorney's fees and costs that were incurred in connection with bringing the motion. *Pable*, 2023 WL 2333414, at *36-37; [158] 56-57. Under the Rule, a party prejudiced by the spoliation of ESI may recover its "reasonable" attorney's fees and costs. *Bolyard v. Vill. of Sherman*, Case No. 19-cv-3146, 2022 WL 16738647, at *6 (C.D. Ill. Nov. 7, 2022); *see also Aramark Mgmt., LLC v. Borquist*, Case No. 8:18-cv-1888-JLS-KESx, 2021 WL 864067, at *23 (C.D. Cal. Jan. 27, 2021) (recommending that defendants be required to pay "the reasonable expenses Plaintiffs incurred in bringing the instant motion, including attorney's fees"), *report and recommendation adopted*, 2021 WL 863746 (C.D. Cal. Mar. 8, 2021). Because an award of fees and costs under Rule 37(e) must be reasonable, the undersigned has used the lodestar method to determine the amount of fees to which the CTA is entitled. *See RG Abrams Ins. v. Law Offices of C.R. Abrams*, 342 F.R.D. 461, 522-23 (C.D. Cal. 2022) (applying lodestar method in awarding attorney fees under Rule 37(e)).

### B.     Reasonableness of Counsel's Rates

For the reasons set forth in the Report and Recommendation, *see Pable*, 2023 WL 2333414, at *44; [158] 67-68, and briefly reiterated above, *see* p.4, *supra*, the undersigned recommends that the District Judge find that the requested hourly rates of $295 for CTA's counsel and $100 for paralegals are reasonable.

### C.     Compensability of the Requested Fees

The only dispute between the parties is what fees and expenses claimed by the CTA should be included in the fee award because they were incurred in bringing the Rule 37(e) motion. In resolving this issue, the undersigned applies the same limitations on fee awards that apply under Rule 37(a)(5). That is, fees and costs are

9

not recoverable "for every action or expense a party takes related to the discovery dispute from which" a Rule 37(e) motion arises. *State Farm Mut. Ins. Co.*, 2023 WL 2712324, at *1. Furthermore, a court should "not hold itself to auditing perfection but is entitled to do rough justice in awarding reasonable fees and to use estimates" to resolve fee disputes. *Am. Senior Cmtys.*, 2020 WL 13553259, at *1 (internal quotation marks omitted).

### 1. Items 1, 2, and 4

The undersigned recommends that the District Judge deny the CTA's request for fees and costs incurred in connection with items 1, 2, and 4 relating to the subpoena served on Haynes for his Signal messages with Pable, the CTA's deposition of Haynes, and the CTA's analysis of the differences between Pable's and Haynes's respective productions of Signal messages. As the undersigned explained in the Report and Recommendation, Haynes is a critical witness because of his involvement in and knowledge of the events that led to Pable's forced resignation from the CTA. In the undersigned's view, obtaining as full a record of Haynes's communications with Pable as possible and taking his deposition were obvious and imperative tasks that the CTA would have undertaken irrespective of any concerns over Pable's spoliation of Signal messages. Accordingly, the undersigned recommends that CTA be awarded no fees and costs associated with items 1, 2, and 4.

### 2. Item 3

The undersigned also recommends that the CTA's request for fees and costs relating to item 3–a March 2021 meet-and-confer session during which the CTA asked Pable to disable the "Disappearing Messages" function on the Signal app installed on his cell phone–be denied because it is not reasonably related to the CTA's Rule 37(e) motion. By the time the CTA conferred with Pable about disabling the Disappearing Messages function, it had already established (by means of Haynes's deposition testimony) that Haynes and Pable continued to communicate over Signal after Pable enabled the Disappearing Messages function around October 29, 2019– when this litigation was clearly foreseeable. *See* [129-4] 13, at 42:18-43:21; [*id.*] 57, at 219:17-220:15; *see also Pable*, 2023 WL 2333414, at *8; [158] 12. The CTA would later establish, during Pable's second deposition, that Haynes and Pable continued to communicate over Signal, with the Disappearing Messages function enabled, through April 2021. These were the relevant points for the spoliation motion, not Pable's opposition (however puzzling) to the CTA's request to disable the Disappearing Messages setting. Because the March 2021 meet-and-confer did not address an issue that was material to the spoliation motion, no fees or costs should be awarded.

10

### 3. Item 5

The undersigned recommends that the District Judge deny the CTA's request for fees and costs related to item 5: its investigation into Pable's claim that the CTA "wiped" his cell phone when, after Pable's resignation, he lost access to the CTA's computer network. The CTA's fee petition contains no argument or explanation as to how or why this work was reasonably related to its Rule 37(e) motion. *See* [163] 5-6, 13-15. But the undersigned notes that Pable persisted in pursuing the wiping allegation as a basis to explain why the original image of his cell phone contained such little data, and the undersigned addressed the failure of Pable to ever substantiate this allegation at several junctures in her spoliation analysis in the Report and Recommendation. More fatal to CTA's pursuit of fees and costs related to Item 5 is CTA's failure to identify what specific fees and costs were incurred for this specific purpose. Because the CTA has not demonstrated what fees it seeks and how they were reasonably incurred in bringing the spoliation motion, the undersigned recommends that no fees or costs be awarded in connection with the CTA's investigation of the "wiping" claim. *See Kim v. Korean News of Chicago, Inc.*, No. 17-cv-1300, 2022 WL 18401370, at *2 (N.D. Ill. Dec. 14, 2022) (party seeking fee award has burden to prove fees are reasonable). In any event, the undersigned believes that some investigation into the "wiping" claim, independent of the ensuing spoliation motion, appears to have been inevitable. Pable raised the "wiping" issue as a defense to the CTA's counterclaim under the Computer Fraud and Abuse Act, *see* [69] 3, and the counterclaim remained in the case until July 2022, when it was dismissed by the District Judge. [136]. For these reasons, the undersigned concludes that the CTA has not established its entitlement to the fees and costs at issue.[7]

### 4. Item 6

The undersigned recommends that the CTA be awarded some of the fees and costs it seeks in connection with item 6: the second session of Pable's deposition. During this deposition, the CTA developed some of the most critical evidence in support of its spoliation claim–namely, Pable's first fabricated explanation for why his phone contained no Signal messages between himself and Haynes. At the same time, the CTA has not established that the entire–or even the majority of–the second deposition was necessitated by the spoliation concerns that precipitated the Rule 37(e) motion. To the contrary, during the first session of Pable's deposition (which occurred on March 11, 2021), CTA's counsel stated that she was going to "keep open [the] deposition with respect to the issues that are still pending before the court relating to your phone and your personal website[.]" [129-1] 66, at 255:22-24. This

---

[7] In the undersigned's view, the fees and costs incurred while investigating this topic bear a closer and more reasonable relationship to the CTA's request that Duffy be sanctioned under 28 U.S.C. § 1927 for vexatiously multiplying the proceedings concerning the imaging of the phone. However, the CTA did not request those fees in its fee petition related to its request for § 1927 sanctions.

11

was a reference to the fact that the CTA's motion to compel a second forensic imaging was pending before the undersigned when the CTA deposed Pable the first time. Thus, even before it knew whether a second imaging of Pable's phone would occur, the CTA anticipated deposing Pable a second time. And while the CTA explored Pable's use of Signal to communicate with Haynes during the second deposition, it is not clear to the undersigned–given the lack of any effort by the CTA to specifically justify the costs of the second deposition–why the CTA could not have addressed this topic in the first deposition. For these reasons, the undersigned recommends that some of the fees and costs incurred by the CTA in connection with Pable's deposition be granted, subject to reductions discussed below.

Based on a review of the billing entries attached to the Kennedy declaration, it appears that the CTA is seeking to recover $15,163.00 in attorney fees that were incurred for 51.40 hours of attorney time spent preparing for and taking the second deposition. *See* [163-2] 47 (7.40 hours); [*id.*] 48 (15.50 hours); [*id.*] 50 (8.40 hours); [*id.*] 53 (20.10 hours). Based on the concerns and deficiencies identified in the previous, the undersigned recommends that this amount be reduced by two-thirds, and that the CTA be awarded only $5,054.28 in attorney's fees in connection with Pable's second deposition.

The CTA also seeks to recover $7,136.45 in costs related to the second deposition. *See* [163] 15. However, the two invoices submitted by the CTA reflect that the CTA incurred only $6,197.00 in connection with the deposition. *See* [163-4] 2-3 (two invoices from Veritext for $3,597.45 and $2,600.00). The undersigned recommends that the District Judge first exclude the $2,600.00 in costs that the CTA incurred based on its choice to obtain a video recording of the second deposition, which does not appear reasonably related to bringing the spoliation motion (as the undersigned relied solely on the deposition transcripts in preparing the Report and Recommendation). The undersigned further recommends that the District Judge further reduce the $3,597.45 in primary costs associated with the deposition by two-thirds to account for the concerns and deficiencies articulated above, for a total of $1,199.14 in costs.

In sum, the CTA should be awarded $5,054.28 in attorney's fees and $1,199.14 in costs.

### 5. Items 7 and 8

The undersigned recommends that the CTA's request for fees and costs incurred in connection with items 7 and 8–CTA's briefing on the motion to extend fact discovery cutoff and for an order requiring Pable to disable the Disappearing Messages function–be granted in part and denied in part. The preparation of and filing of the motion and reply brief were reasonably related to the ensuing spoliation motion because the CTA was seeking to depose Dan Jerger, the technician at Quest

12

Consultants International whom Pable retained as his e-discovery vendor and who performed all work respecting the first imaging of Pable's cell phone. Jerger's testimony was highly relevant to the spoliation of Pable's cell phone and relevant to the spoliation of the Signal messages. *See Pable*, 2023 WL 2333414, at *13-14; [158] 20-21. But the request for fees and costs should be denied in part because the motion also concerned the CTA's unsuccessful request that Pable disable the Disappearing Messages function. As explained above, this item was not materially relevant to the spoliation motion and the CTA should not be permitted to recover the fees expended on this section of the motion.

After reviewing the CTA's billing records, the undersigned located only two billing entries that appear related to the relevant portion of the motion (*i.e.*, extending fact discovery to permit the CTA to serve discovery on Quest). *See* [163-2] 53 (two entries dated July 9, 2021, each reflecting 0.6 hours of attorney time). The billing records, which are presented chronologically, do not appear to contain any entries relating to the drafting and filing of the motion (which was filed on July 15, 2021) or the reply brief (which was filed on July 26, 2021). Accordingly, the CTA's request for $354.00 in attorney's fees should be reduced by one-third (to account for the only partial success on the motion) and granted in the amount of $236.00.

### 6. Item 9

The undersigned recommends that the District Judge grant the CTA's request for fees and costs associated with item 9, the CTA's subpoena to Signal to "discover information refuting Pable's lies relating to the deletion of the pre-November 2, 2018 Signal messages[.]" [163] 6. As discussed in the Report and Recommendation, CTA obtained an affidavit from Signal's Chief Operating Officer that conclusively debunked Pable's false testimony about the allegedly innocent circumstances under which his Signal messages with Haynes disappeared from his own cell phone. This was a critical piece of evidence that was reasonably related to the spoliation motion, and the CTA should recover the reasonable fees and costs associated with this discovery item.

The undersigned has reviewed the CTA's billing records and determined that the CTA seeks to recover a total of 4.5 hours of attorney time. *See* [163-2] 54 (0.3 hours); [*id.*] 59 (1.9 hours); [*id.*] 64 (0.5 hours); [*id.*] (1.8 hours). The CTA should therefore be awarded $1,327.50 in attorney's fees relating to its efforts to obtain the Signal evidence.

### 7. Item 10

The District Judge should deny the CTA's request for fees and costs incurred respecting item 10, the CTA's three depositions of Dan Jerger, the Quest Consultant technician who generated the first image of Pable's phone. In a prior filing, the CTA

13

conceded that "Jerger would have been deposed once in the normal course regardless of Quest's and Duffy's attempts to prevent CTA from discovering information regarding the first imaging." [105] 8. Furthermore, the undersigned has already recommended that the District Judge award CTA the fees and costs it incurred in connection with Jerger's second and third depositions as a sanction against Duffy for unreasonably multiplying the proceedings relating to the imaging of Pable's phone. *See Pable*, 2023 WL 2333414, at *45; [158] 69. Accordingly, the undersigned recommends that these fees and costs be denied.

### 8. Item 11

The District Judge should grant the CTA's request for fees and costs associated with item 11, the CTA's successful motion for leave to file an oversized motion for sanctions. As the briefing on the motion demonstrates, *see* [121, 122], Pable would not agree to the CTA filing a motion that exceeded 20 pages in length, thus creating a need for judicial intervention. Because this motion was directly related to the filing of the Rule 37(e) motion, the fees and costs should be compensable.

Billing records establish that the CTA spent 3.3 hours of attorney time preparing and filing the motion. *See* [163-2] 85 (3.1 hours); [*id.*] 88 (0.2). Accordingly, the CTA should be awarded $973.50 in attorney's fees and no costs.

### 9. Items 12 and 17

The undersigned recommends that the CTA be awarded the reasonable fees and costs related to items 12 and 17: drafting, revising, and filing its Rule 37(e) motion and the reply brief. Even Pable concedes that, to the extent that the District Judge finds that any fees are warranted under Rule 37(e), these fees would be compensable. *See* [167] 8. The more difficult question, given the lack of arguments in the fee petition and the vagaries of the billing records, is deciding which fees and costs claimed by the CTA should be awarded.

Based on a review of the billing records, it appears that three attorneys spent approximately 153.4 hours of attorney time, for a total of $45,253.00 in fees, working on the spoliation between March and June 2022. *See* [163-2] 69 (1.8 hours); [*id.*] 70 (15.5 hours); [*id.*] 71 (4.8 hours); [*id.*] 75 (20.6 hours); [*id.*] 76 (25.5 hours); [*id.*] 77 (1.9 hours); [*id.*] 80 (9.8 hours); [*id.*] 81 (2.2. hours); [*id.*] 82 (20.2 hours); [*id.*] 85 (33.0 hours); [*id.*] 86 (0.6 hours); [*id.*] 88 (17.5 hours). A closer look at the billing entries demonstrates that multiple rounds of editing and revising of the motion occurred, with the associate assigned to the case preparing an initial draft, a junior partner conducting her own review of the motion, and a senior partner then performing his own review. This process appears to have recurred at least once. Many of the entries, moreover, are vague and describe counsels' work only as "begin edits to spoliation motion," "revise and edit spoliation motion," "continue to work on spoliation motion,"

14

"continue reviewing and revising spoliation motion," and "review and revise draft spoliation motion." [163-2] 82, 85; *see Montanez v. Simon*, 755 F.3d 547, 556 (7th Cir. 2014) (district courts have "broad discretion" to strike "vague or unjustified billing entries"). The fact that CTA had two partners and one associate working on the motion, combined with a lack of specificity in the billing records, suggests to the undersigned the potential that more time than was reasonably necessary was spent preparing the spoliation motion. *See Gibson v. City of Chicago*, 873 F. Supp. 2d 975, 989 (N.D. Ill. 2012) ("Because duplicative time that could not be reasonably billed to a client also cannot be billed to an adversary through a fee-shifting statute, the Seventh Circuit has cautioned that the tendency of law firms to overstaff a case should cause the trial court to scrutinize a fees petition carefully for duplicative time[.]") (internal quotation marks omitted). At the same time, the issues raised by the spoliation motion were relatively complex, touching on three categories of ESI and surfacing repeatedly at different times in the litigation, and the undersigned concluded that the CTA was entitled to all relief it sought in the motion. Moreover, as noted in the Report and Recommendation, the CTA has paid all fees at the blended rate, which is considerable evidence of that the fees are reasonable. *See Pable*, 2023 WL 2333414, at *44; [158] 67-68. In the exercise of her discretion, the undersigned recommends that the District Judge award the CTA $45,253.00 in attorney's fees. The undersigned further recommends that the District Judge award the CTA $750.00 in costs, which represents 7.5 hours of paralegal time that was reasonably expended and billed with specificity. *See* [163-2] 71 (0.3 hours); [*id.*] 76 (0.6 hours); [*id.*] 82 (0.5 hours); [*id.*] 87 (6.1 hours).

It also appears that the CTA seeks to recover fees for 63.1 hours in attorney time spent preparing and filing the reply brief in support of the spoliation motion, for a total of $18,614.50 in fees. *See* [163-2] 91 (1.4 hours); [*id.*] 94 (11.3 hours); [*id.*] 95 (1.0 hours); [*id.*] 96 (6.1 hours); [*id.*] 100 (9.2 hours); [*id.*] 101 (0.8 hours); [*id.*] 104 (31.0 hours); [*id.*] 105 (1.8 hours).[8] Some of the same concerns identified with the vagueness of the billing entries are present, though the vagueness concerns are not as widespread as they were in connection with the spoliation motion. *See* [163-2] 104 ("Draft reply to spoliation"; "Draft and revise reply in support of spoliation"; "Review and revise Reply in Support of Sanctions Motion"). Many of the reply brief entries, in contrast, are quite specific and identify discrete tasks performed by different attorneys. *See* [*id.*] 94-95. Nor does the undersigned have a concern about needless duplication of work. Accordingly, the undersigned recommends that the District Judge award the CTA $18,614.50. The undersigned also recommends that the CTA

---

[8] In tallying the hours expended on the reply brief, the undersigned has excluded all entries appearing to relate to the CTA's motion to stay briefing and undertake additional discovery related to Pable's affidavit and Duffy's certified statement, which were filed in opposition to the CTA's sanctions motion. *See* [162-3] 94 (3.8 hours); [*id.*] 95 (2.4 hours); [*id.*] 96 (9.9 hours); [*id.*] 99 (3.1 hours). As explained below, the undersigned recommends that the CTA recover no fees for this work (the billing entries for which are mixed in with the billing entries relating to the drafting of the spoliation motion).

be awarded $1,767.50 in costs incurred for the work done by its e-discovery vendor in connection with the reply brief. *See* [163-3] 2-3.

In sum, the District Judge should award the CTA a total of $63,867.50 in attorney's fees and $2,517.50 in costs in connection with the CTA's drafting and filing of the Rule 37(e) motion and reply brief.

### 10. Items 13, 14, 15, and 16

Finally, the undersigned recommends that the CTA's request for fees and costs associated with items 13, 14, 15, and 16 be denied. Items 13 and 14 concern the CTA's preparation of a response in opposition to Pable's motion to strike hyperlinks in the CTA's original sanctions motion and its voluntary refiling of the motion without the objected-to hyperlinks. The parties' dispute over the propriety of including hyperlinks in the Rule 37(e) motion was, in the undersigned's view, needless and trivial, but that does not make in compensable in the context of a Rule 37(e) fee petition–especially when the dispute was completely unrelated to the merits of the spoliation issue. Items 15 and 16 concern the CTA's motion for leave to undertake additional discovery in response to Pable's submission of his own affidavit and a certified statement by Duffy in opposition to the CTA's spoliation motion, as well as the parties' meet-and-confer efforts that preceded the filing of the motion. As the undersigned explained in the Report and Recommendation, this discovery was unnecessary to resolve the spoliation motion generally or the issues posed by Pable's affidavit and Duffy's statement specifically. *See Pable*, 2023 WL 2333414, at *45; [158] 70. Accordingly, the fees incurred on these extraneous matters were not reasonably related to the bringing of the spoliation motion and should not be compensable.

\* \* \*

For these reasons, the District Judge should award the CTA $71,458.78 in attorney's fees and $3,716.64 in costs–for a total of $75,175.42–as a curative measure under Rule 37(e)(1) for the financial prejudice it suffered in connection with Pable and Duffy's spoliation of ESI. The District Judge should require that Pable pay one-half of the fee award ($37,587.71) and that Duffy pay the other half of the award ($37,587.71). In the undersigned's view, both client and attorney are equally blameworthy for the purposeful spoliation of ESI that occurred in this case. Pable himself spoliated large swathes of Signal messages before and during the litigation, and he twice lied under oath in an effort to cover his tracks. Duffy lied to the CTA about the circumstances surrounding the first imaging of Pable's phone and resisted reasonable attempts by the CTA to understand the circumstance surrounding that imaging–all the while failing to take reasonable steps to preserve the phone for its use in the litigation. Because both Pable and Duffy are equally to blame for the predicament they have found themselves in, both should be made to pay an equal

share of the financial prejudice that their intentional misconduct inflicted on the CTA.

### III. Fees on Fees

Finally, the undersigned recommends that the District Judge decline to award the CTA $8,879.50 in fees it incurred in preparing its fee petition. District courts have discretion to award the fees that a party incurred in preparing a fee petition. *See Schmalz v. Vill. of N. Riverside*, No. 13 C 8012, 2018 WL 11198063, at *4 (N.D. Ill. Dec. 17, 2018). "However, while 'fees on fees' are generally compensable, the award nevertheless must be judged reasonable by the factfinder." *Nevins v. Med-1 Solutions, LLC*, No. 1:18-cv-763-JMS-MPB, 2018 WL 5118437, at *5 (S.D. Ind. Oct. 22, 2018) (internal citation omitted).

In this case, however, the undersigned has identified numerous and serious deficiencies in the CTA's fee petition, the most concerning of which was the lack of *any* legal argument made to justify the fees sought for *any* of the 17 tasks identified in the petition. The CTA's additional failure to apportion the total amount of fees claimed by the CTA between these tasks compounded that failure, thereby hindering the undersigned's ability to rule on the petition and causing unnecessary work for the Court. *See Favela v. Boyd*, Case No. 15-cv-4028-JES-JEH, 2021 WL 808732, at *7 (C.D. Ill. Mar. 3, 2021) ("Even in Plaintiff's Petition, counsel has caused unnecessary work by failing to provide adequate legal support for all of the fees she requests."). Given the limited utility of the fee petition in resolving these issues, the undersigned recommends that the District Judge decline to award the CTA any fees-on-fees. The undersigned believes that such a result is also consistent with Rule 37(e)(1), under which "[m]uch is entrusted to the court's discretion" when it comes to imposing curative measures. Fed. R. Civ. P. 37(e), Advisory Committee Note, 2015 Amendment. Given that the undersigned has recommended that Pable's case be dismissed with prejudice and that significant attorney's fees and costs be imposed on him and Duffy, the undersigned concludes that, even if the CTA should be awarded some of the fees it incurred in preparing the petition, any award of fees on fees would be "greater than necessary to cure the prejudice" inflicted on the CTA. Fed. R. Civ. P. 37(e)(1).

## Conclusion

For the reasons set forth above, and in accordance with Fed. R. Civ. P. 37(a)(5)(A), the undersigned grants in part and denies in part the CTA's petition for fees and costs relating to its motion to compel a second forensic imaging of Pable's cell phone. The CTA is awarded $21,367.00 in attorney's fees and costs, and such fees and costs shall be paid solely by attorney Timothy Duffy.

In accordance with 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1), the undersigned respectfully recommends that the District Judge grant the petition in part and deny it in part relating to the CTA's Rule 37(e) motion based on spoliation of ESI and award the CTA $75,175.42 in attorney's fees and costs. The District Judge should require that Pable pay one-half of the fee award ($37,587.71) and that Duffy pay the other half of the award ($37,587.71). The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk of the Court within fourteen days after service of a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to file a timely objection will constitute a waiver of objections on appeal. *See Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: August 16, 2023**